**EXHIBIT "B"**

## DEBTOR-IN-POSSESSION LOAN AGREEMENT

**THIS DEBTOR-IN-POSSESSION LOAN AGREEMENT** is entered into as of June 17, 2019, by and between **Benito R. Fernandez**, a resident of the State of New York, as lender (the "Lender"), and **Virginia True Corporation**, a Virginia corporation, as borrower (the "Debtor").

## WITNESSETH:

**WHEREAS**, on May 3, 2019 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Case No. 19-42769 (NHL); and

**WHEREAS**, the Debtor is continuing to manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

**WHEREAS**, the Debtor has immediate cash needs in order to run the day-to-day operations of its business and to otherwise advance its business purpose; and

**WHEREAS**, the Lender is an officer, director and shareholder of the Debtor; and

**WHEREAS**, the Lender has agreed, subject to the terms and conditions set forth herein, to make loans to the Debtor from time to time in order to enable it to fund the payment its ongoing operating expenses and other authorized expenditures.

**NOW, THEREFORE**, in consideration of the premises and the covenants and agreements contained herein, the parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS; CERTAIN TERMS

SECTION 1.1. <u>General Definitions</u>. As used herein, the following terms shall have the meanings herein specified:

"<u>Administrative Claim</u>" means an administrative expense that is entitled to priority treatment under section 503(b) or 507(b) of the Bankruptcy Code.

"<u>Agreement</u>" means this Debtor-In-Possession Loan Agreement, as may be amended, supplemented, or otherwise modified from time to time.

"Chapter 11 Case" means the Debtor's chapter 11 case pending in the Bankruptcy Court, *In re Virginia True Corporation*, Case No. 19-42769 (NHL).

"Commitment" means the commitment of the Lender to make available an amount not to exceed $100,000 to pay Operating Expenses (hereinafter defined).

"Effective Date" means the date on which all of the conditions specified in Article V shall have been satisfied.

"Event of Default" means the occurrence of any of the events specified in Article VIII.

"Financing Order" means an order of the Bankruptcy Court, in form and substance satisfactory to the Lender, approving on a final basis the financing transactions under the Loan Documents.

"GAAP" means Generally Accepted Accounting Principles.

"Lien" means a claim, mortgage, deed of trust, levy, charge, pledge, security interest, or other encumbrance of any kind, whether voluntarily incurred or arising by operation of law or otherwise against any property.

"Loan" means any and all loans and advances not to exceed $100,000 made to the Debtor post-petition pursuant to the terms of this Agreement.

"Loan Documents" means this Agreement, the Note, and all other documents and instruments to be delivered by the Debtor under or in connection with this Agreement, as each of the same may be amended, supplemented or otherwise modified from time to time.

"Maturity Date" means the earlier of (i) the date on which an order of the Bankruptcy Court confirming a chapter 11 plan in the Chapter 11 Case becomes a final order, and (ii) the date of the occurrence of an Event of Default.

"Note" means the promissory note provided for by Section 2.1 for the Loan and any promissory note delivered in substitution or exchange therefor, in each case as the same may be modified and supplemented from time to time, provided, however, that failure to execute a Note shall not in any manner relieve the Debtor of its obligation to repay the Loans as provided under this Agreement.

"Operating and Capital Expenses" means: (a) the ordinary, customary and/or necessary day-to-day expenses of the operation of the Debtor's business; (b) working capital expenditures in furtherance of the Debtor's business purpose; and/or (c) such other and further obligations as the Debtor's management may deem necessary or advisable.

"Person" means any individual, sole proprietorship, partnership, limited liability company, joint venture, trust, unincorporated organization, joint stock company, association, corporation, institution, entity, party or government (including any division, agency or department thereof) or any other legal entity, whether acting in an individual, fiduciary or other capacity, and, as applicable, the successors, heirs and assigns of each.

"Statutory Lien" means such of the following as to which no enforcement, collection, execution, levy, or foreclosure proceeding shall have been commenced and be continuing (unless such enforcement, collection, levy, or foreclosure is being contested by the Debtor in good faith by appropriate proceedings diligently conducted and for which adequate reserves are being maintained in accordance with GAAP): Liens for taxes, assessments, and other governmental charges or levies or the claims or demands of landlords, carriers, warehousemen, mechanics, laborers, materialmen, and other like persons arising by operation of law in the ordinary course of business for sums which are not yet due and payable, and deposits or pledges to secure the payment of bid or performance bonds, or other obligations of a like nature incurred in the ordinary course of business.

SECTION 1.2. _Terms Generally_. The terms used herein shall apply equally to the singular and plural forms. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms. The words "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument, or other document as from time to time amended, supplemented, or otherwise modified (subject to any restrictions on such amendments, supplements, or modifications set forth herein), (b) any reference herein to any entity shall be construed to include such entity's successors and assigns, (c) the words "herein," "hereof," and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Articles and Sections shall be construed to refer to Articles and Sections of this Agreement, and (e) any capitalized terms not defined in this Article shall have the meanings ascribed to them in context.

## ARTICLE II

## THE LOAN

SECTION 2.1. _General Provisions_.

(a)    The Lender agrees, subject to the terms and conditions of this Agreement and the Note (as defined below), if any, and upon the occurrence of the Effective Date, to make one or more Loans to the Debtor upon its request, in one or more advances, in an aggregate principal amount not to exceed the Commitment, at any time during the Loan Term (as defined below).

(b)     The Loan may be evidenced by a promissory note payable to the order of the Lender, substantially in the form of Exhibit "A" annexed hereto, as may be amended, supplemented or otherwise modified from time to time (the "Note"), executed by the Debtor and delivered to the Lender on or after the Effective Date.  The Debtor hereby authorizes the Lender to record on the grid schedule annexed to the Note the date and amount of each advance made by the Lender to the Debtor and all payments made in respect of the Loan, which endorsements shall, in the absence of manifest error, be conclusive as to the amount of the Loan; provided, however, that the failure to make such notation with respect to any Loan or payment shall not limit or otherwise affect the obligations of the Debtor to make a payment when due of any amount owing hereunder or under the Note.

(c)     The aggregate outstanding amount of the Loan, including all principal, interest, costs, expenses and other charges, shall be payable on or before the Maturity Date.

(d)     The Debtor may, at any time and from time to time, prepay the Loan, in whole or in part, without premium or penalty.

SECTION 2.2.  Application of Proceeds.  The proceeds of the Loan shall be used by the Debtor solely to pay Operating and Capital Expenses and for no other purpose.

SECTION 2.3.  Interest.  The outstanding principal balance of the Loan shall bear interest at the rate of nine percent (9%) per annum from the date of each advance until said advance has been fully paid to the Lender.

SECTION 2.4.   Term.   The term of this Agreement shall be for a period from the Effective Date to but not including the Maturity Date unless sooner terminated in accordance with the terms of this Agreement (the "Loan Term").

## ARTICLE III

## ADMINISTRATIVE PRIORITY

SECTION 3.1.  Administrative Priority.  The Loan shall constitute an Administrative Claim.

SECTION 3.3.  No Modification.  The administrative claims, priorities, and other rights and remedies granted to the Lender pursuant to this Agreement shall not be modified, altered, or impaired in any manner by any financing, extension of credit, incurrence of debt, dismissal or conversion of the Chapter 11 Case, any order or by any other act or omission whatsoever.

## ARTICLE IV

## PAYMENTS

SECTION 4.1.  <u>Payments</u>.  The Debtor shall make each payment under the Loan Documents on the day when due, in lawful money of the United States of America and in immediately available funds, to the Lender's account.  Any and all payments received from the Debtor will be applied: (a) first, to the payment of any outstanding costs, expenses and/or fees payable by the Debtor hereunder; (b) second, to the payment of any accrued and unpaid interest payable by the Debtor hereunder; and (c) third, to the payment of any outstanding principal payable by the Debtor hereunder.

## ARTICLE V

## CONDITIONS OF LENDING

SECTION 5.1.  <u>Conditions to the Loan</u>.  The obligation of the Lender to make the Loan is subject to the satisfaction of the following conditions prior to or concurrent with the Loan unless waived:

(a)     The Lender shall have received the following, each dated the date of the Loan or as of an earlier date acceptable to the Lender, in form and substance satisfactory to the Lender:

(i)     the Financing Order, entered by the Bankruptcy Court in the Chapter 11 Case not later than ten days after the hearing before the Bankruptcy Court on the Debtor's request to obtain the Loan, which shall be in full force and effect and shall not have been appealed, vacated, stayed, reversed, modified or amended;

(ii)     authorization by the Court, in the Financing Order, to grant the Lender an Administrative Claim on account of the Loan; and

(iii)     the Note, duly executed by the Debtor and payable to the order of the Lender.

(b)     There shall be no pending or, to the knowledge of the Debtor after due inquiry, threatened litigation, proceeding, inquiry or other action seeking an injunction or other restraining order, damages or other relief with respect to the transactions contemplated by this Agreement or the other Loan Documents.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES

SECTION 6.1. <u>Representations and Warranties of the Debtor</u>. The Debtor represents and warrants as follows (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct in all material respects only as of such specified date):

(a)    <u>Authority</u>. The Debtor has the requisite corporate power and authority to execute, deliver and perform its obligations under each of the Loan Documents to which it is a party. All action necessary for the execution, delivery and performance by the Debtor of the Loan Documents to which it is a party (including the consent of partners of the Debtor where required) has been taken.

(b)    <u>Enforceability</u>. Upon entry of the Financing Order by the Bankruptcy Court in the Chapter 11 Case, this Agreement is and, when executed and delivered, each other Loan Document to which the Debtor is a party will be, the legal, valid and binding obligation of the Debtor enforceable in accordance with its terms, except as enforceability may be limited by (i) bankruptcy, insolvency or similar laws affecting creditors' rights generally and (ii) general principles of equity.

(c)    <u>No Conflict</u>. The execution, delivery and performance by the Debtor of each Loan Document to which it is a party does not and will not contravene (i) upon entry of the Financing Order, any agreement of the Debtor or (ii) any requirement of law (unless the Loan Documents are not approved by the Bankruptcy Court).

(d)    <u>Consents and Filings</u>. No consent, authorization or approval of, or filing with or other act by, any partner of the Debtor, any governmental authority or any other Person is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement or any other Loan Document, the consummation of the transactions contemplated hereby or thereby or the continuing operations of the Debtor following such consummation, except the entry of the Financing Order by the Bankruptcy Court in the Chapter 11 Case.

SECTION 6.2. <u>Survival of Representations and Warranties</u>. All representations and warranties made by the Debtor in this Agreement and in each other Loan Document to which it is a party shall survive the execution and delivery hereof and thereof and the closing of the transactions contemplated hereby and thereby.

## ARTICLE VII

## COVENANTS

SECTION 7.1. <u>Affirmative Covenants</u>.

(a)    <u>Corporate Existence</u>.  The Debtor shall (i) maintain its corporate existence, (ii) maintain in full force and effect all material licenses, bonds, franchises, leases, trademarks, qualifications and authorizations to do business, and all material patents, contracts and other rights necessary or advisable to the conduct of its business, and (iii) continue in, and limit its operations to, the same lines of business as presently conducted by it.

SECTION 7.2. <u>Negative Covenants</u>.

(a)    <u>Liens</u>.  The Debtor will not directly or indirectly, at any time create, incur or assume any Lien on or with respect to any of its assets, other than (i) Statutory Liens, (ii) adequate protection Liens granted by the Bankruptcy Court, and (iii) any Liens granted to secure post-petition financing from any other lender with the prior written consent of Lender.

(b)    <u>Chapter 11 Claims</u>.  Except in connection with, and only to the extent incurred on or after a chapter 11 plan is approved by the Bankruptcy Court, the Debtor shall not apply (or permit the application by any Person) to the Bankruptcy Court for the authority to, directly or indirectly, incur, create, assume, suffer or permit any claim or encumbrance (other than post-Petition Date Statutory Liens) against the Debtor or any of its assets in the Chapter 11 Case to be *pari passu* with, or senior to, the claims of the Lender and granted and arising hereunder and under the Financing Order.

## ARTICLE VIII

## EVENTS OF DEFAULT

SECTION 8.1. <u>Events of Default</u>.  If any of the following Events of Default shall occur and be continuing:

(a)    the failure by the Debtor to pay any amount payable on or before the Maturity Date;

(b)    if the Debtor shall fail to pay, perform or observe any covenant, agreement, term or provision of this Agreement or any other Loan Document;

(c)    if any representation, warranty or other statement of fact herein or in any writing, certificate, report or statement at any time furnished to the Lender pursuant to or in connection

with this Agreement or any other Loan Document shall be false or misleading in any material respect; or

(d)    an order shall have been entered by the Bankruptcy Court (i) appointing a trustee or examiner in the Chapter 11 Case; (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case;

(e)    an order with respect to the Chapter 11 Case shall have been entered by the Bankruptcy Court without the express prior written consent of the Lender to revoke, reverse, stay, modify, supplement or amend the approval of this Agreement or any other Loan Document; or

(f)    any provision hereof shall at any time for any reason (other than pursuant to the express terms hereof) cease to be valid and binding on or enforceable against the Debtor or its estate, or a proceeding shall be commenced seeking to establish the invalidity or unenforceability thereof;

then, and in any such event, the Lender may, by notice to the Debtor   (i) terminate the Commitment, whereupon the Commitment shall terminate immediately, (ii) declare the Loan then outstanding to be accelerated and immediately due and payable, whereupon the Loan and all other amounts payable under this Agreement, including the amounts payable under the Note, shall become due and payable immediately, without further order of, or application to, the Bankruptcy Court, presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Debtor, and/or (iii) may proceed against the Debtor in such manner as the Lender so chooses, having all rights and remedies provided by law or in equity.

## ARTICLE IX

## GENERAL PROVISIONS

SECTION 9.1.  Notices.  All notices and other communications provided for hereunder shall be in writing and shall be mailed, e-mailed, telecopied, or delivered: (a) if to the Debtor, then to Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.; and (b) if to the Lender, then to Benito R. Fernandez, 2689 Pitkin Avenue, Brooklyn, New York 11208, or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties complying as to delivery with the terms of this Section. All such notices and other communications shall be effective: (i) if mailed, when received or three days after deposit in the mails, whichever occurs first; (ii) if e-mailed, upon receipt; (iii) if telecopied, when transmitted and confirmation received; or (iv) if delivered, upon delivery.

SECTION 9.2.  Delays; Partial Exercise of Remedies.  No delay or omission of the Lender to exercise any right or remedy hereunder shall impair any such right or operate as a

8

waiver thereof. No single or partial exercise by the Lender of any right or remedy shall preclude any other or further exercise thereof, or preclude any other right or remedy.

SECTION 9.3.  <u>Amendments and Waivers</u>.  No amendment, modification or waiver of any provision of this Agreement or any other Loan Document shall be effective unless it is pursuant to a written agreement signed by the Debtor and the Lender.

SECTION 9.4.  <u>Severability</u>.  Any provision of this Agreement or any other Loan Document which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 9.5.  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regard to any rule of conflicts of law that would result in the application of the substantive law of any jurisdiction other than the state of New York.

SECTION 9.6.  **<u>WAIVER OF JURY TRIAL</u>.  THE DEBTOR AND THE LENDER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS LOAN AGREEMENT OR ANY OTHER LOAN DOCUMENT OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS LOAN AGREEMENT OR ANY OTHER LOAN DOCUMENT, AND AGREE THAT ANY SUCH ACTION, PROCEEDING, OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

SECTION 9.7.  <u>Assignment</u>.  The Debtor shall not assign this Agreement or any rights or obligations hereunder.

SECTION 9.8.  <u>Counterparts</u>.  This Agreement and any waiver or amendment hereto may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement.  This Agreement and each of the other Loan Documents may be executed and delivered by telecopier, e-mail, or other facsimile transmission all with the same force and effect as if the same were a fully executed and delivered original manual counterpart.

SECTION 9.9.  <u>Entire Agreement; Successors and Assigns</u>.  This Agreement and the other Loan Documents constitute the entire agreement between the parties, supersede any prior written and verbal agreements between them, and shall bind and benefit the parties and their respective successors, heirs, and permitted assigns.

9

SECTION 9.10.  Orders.  To the extent that any term or provision of this Agreement or any other Loan Document is inconsistent with the terms or provisions of the Financing Order, the Financing Order shall govern.

SECTION 9.11.  Legal Fees.  The Debtor shall pay any and all reasonable costs and expenses incurred by the Lender in connection with the enforcement of the Lender's rights under this Agreement including, without limitation, and in addition to all other relief, the costs and expenses of the Lender's attorneys.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their proper and duly authorized officers as of the date first set forth above.

**DEBTOR:**

**VIRGINIA TRUE CORPORATION**

By: _____

Benito R. Fernandez, President

**LENDER:**

_____

Benito R. Fernandez, Individually

10

**EXHIBIT "A" TO DEBTOR-IN-POSSESSION LOAN AGREEMENT
(GRID PROMISSORY NOTE)**

## GRID PROMISSORY NOTE

Up to $100,000.00                                                June 17, 2019

**FOR VALUE RECEIVED**, the receipt and sufficiency of which is acknowledged, the undersigned, Virginia True Corporation, a Virginia corporation (the "Borrower"), hereby promises to pay to the order of Benito R. Fernandez, a resident of the State of New York (the "Lender"), the principal sum of One Hundred Thousand Dollars ($100,000.00) or, if less, the principal amount shown to be due on the grid schedule attached hereto as Exhibit "A" (the "Schedule"), in accordance with the terms and conditions set forth herein and subject to the provisions of that certain Debtor-In-Possession Loan Agreement dated June 17, 2019, a copy of which is attached hereto as Exhibit "B", and as may be amended, modified, restated, consolidated, replaced, or supplemented from time to time (the "Loan Agreement") by and between the Borrower and the Lender. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

1.    *Advances; Use of Proceeds; Records*. At the request of the Borrower, the Lender will advance up to an aggregate of One Hundred Thousand Dollars ($100,000.00) to the Borrower. The proceeds of all advances made hereunder shall be used by the Borrower solely to pay Operating and Capital Expenses and for no other purpose. The holder of this Note is authorized to, and so long as it holds this Note shall, record on the Schedule annexed hereto the date and amount of each advance made by the Lender to the Borrower and all payments of principal amounts made in respect of the Loan; provided, however, that the failure to make any such notation (or any error in such notation) shall not affect the obligations of the Borrower under this Note.

2.    *Interest*. Interest on all principal advances made by the Lender to the Borrower under this Note shall be assessed at the rate of nine percent (9%) per annum from the date of each advance until said advance has been fully paid to the Lender.

3.    *Maturity Date*. The Maturity Date of this Note shall be the earlier of (i) the date on which an order of the Bankruptcy Court confirming a chapter 11 plan in the Chapter 11 Case becomes a final order, and (ii) the date of the occurrence of an Event of Default.

4.    *Payment; Interest; Prepayment*. The aggregate outstanding amount payable by the Borrower under this Note, including all principal (as conclusively evidenced on the Schedule), and along with all interest, costs, expenses and other charges, shall become due and payable on the Maturity Date. The Borrower may prepay the amounts owed hereunder at any time, in whole or in part, without premium or penalty. Any and all payments received from the Borrower will be applied: (a) first, to the payment of any outstanding costs, expenses and/or fees payable by the Borrower hereunder; (b) second, to the payment of any accrued and unpaid interest payable by the Borrower hereunder; and (c) third, to the payment of any outstanding principal payable by the Borrower hereunder.

5.    _Loan_.  This Note is evidence of the Loan made by the Lender to the Borrower contemporaneously herewith, and any subsequent advances made in respect of such Loan, and is executed pursuant to the terms and conditions of the Loan Agreement.  All of the agreements, conditions, covenants, and provisions contained in the Loan Agreement to be kept and performed by the Borrower are hereby incorporated by reference in this Note to the same extent and with the same force and effect as if they were fully set forth in this Note, and the Borrower covenants and agrees to keep and perform the same, or cause the same to be kept and performed, in accordance with their terms.  To the extent there is any conflict between the terms set forth in the Loan Agreement and those set forth in this Note, the Loan Agreement shall control.

6.    _Unsecured Loan_.  The Loan shall not be secured by any lien on or interest in any assets or other collateral; provided however, that any amounts owed by the Borrower to Lender hereunder shall be entitled to treatment as an Administrative Claim in the Chapter 11 Case.

7.    _Default; Loan Acceleration_.  Upon the occurrence of an Event of Default and during the continuance thereof, the Lender may, by notice to the Borrower (i) terminate the Commitment, whereupon the Commitment shall terminate immediately, (ii) declare the Loan then outstanding to be accelerated and immediately due and payable, whereupon the Loan and all other amounts payable under the Loan Agreement, including the amounts payable under this Note, shall become due and payable immediately, without further order of, or application to, the Bankruptcy Court, presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Borrower, and/or (iii) may proceed against the Borrower in such manner as the Lender so chooses, having all rights and remedies provided by law or in equity.

8.    _Legal Fees_.  The Borrower shall pay any and all reasonable costs and expenses incurred by the Lender in connection with the enforcement of the Lender's rights under this Note including, without limitation, and in addition to all other relief, the costs and expenses of the Lender's attorneys.

9.    _Amendments and Waivers_.  This Note may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of the Borrower or the Lender, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

10.    _Successors and Assigns_.  This Note shall bind and benefit the Borrower and the lender and their respective successors and permitted assigns.

11.    _No Waiver; Rights and Remedies Cumulative_.  No failure on the part of the Lender to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The rights and remedies of the Lender provided herein are cumulative and are in addition to, and not exclusive of, any rights or remedies provided by law.

12. *Notices*. All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner specified in the Loan Agreement directed to the parties at their respective addresses as provided therein.

13. *Entire Agreement; Severability*. This Note (inclusive of the terms of the Loan Agreement incorporated herein by reference) sets forth the entire agreement of the Borrower and the Lender with respect to the subject matter thereof and supersedes any and all prior agreements, oral or written, with respect thereto. The provisions of this Note are severable, and if any provision shall be determined invalid or unenforceable in whole or in part, then such invalidity or unenforceability shall not in any manner affect any other provision of this Note.

14. *Loan Agreement*. This Note is the promissory note referred to in the Loan Agreement, and the holder hereof is entitled to the benefits therein.

15. *Governing Law*. This Note shall be governed by and construed in accordance with the law of the state of New York applicable to contracts made and to be performed in the state of New York, without regard to any rule of conflicts of law that would result in the application of the substantive law of any jurisdiction other than the state of New York.

16. ***WAIVER OF JURY TRIAL, ETC.*** THE BORROWER AND LENDER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION PROCEEDING OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS NOTE OR THE LOAN AGREEMENT OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE OR THE LOAN AGREEMENT AND AGREE THAT ANY SUCH ACTION, PROCEEDING OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. THE BORROWER CERTIFIES THAT NO OFFICER, REPRESENTATIVE, AGENT OR ATTORNEY OF THE LENDER HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE LENDER WOULD NOT, IN THE EVENT OF ANY ACTION, PROCEEDING, OR COUNTERCLAIM, SEEK TO ENFORCE THE FOREGOING WAIVERS. THE BORROWER HEREBY ACKNOWLEDGES THAT THIS PROVISION IS A MATERIAL INDUCEMENT TO THE LENDER FOR ENTERING INTO THE LOAN AGREEMENT.

The Borrower has caused this Note to be duly executed on the date first written above.

VIRGINIA TRUE CORPORATION

By: _____
Benito R. Fernandez, President

3

## EXHIBIT "A" – SCHEDULE OF ADVANCES AND PAYMENTS OF PRINCIPAL

| Date of Advance | Amount of Advance | Date of Payment | Amount of Principal Payment | Balance |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

**EXHIBIT "B" – DEBTOR-IN-POSSESSION LOAN AGREEMENT**

## DEBTOR-IN-POSSESSION LOAN AGREEMENT

**THIS DEBTOR-IN-POSSESSION LOAN AGREEMENT** is entered into as of June 17, 2019, by and between **Benito R. Fernandez**, a resident of the State of New York, as lender (the "Lender"), and **Virginia True Corporation**, a Virginia corporation, as borrower (the "Debtor").

## WITNESSETH:

**WHEREAS**, on May 3, 2019 (the "Petition Date"), the Debtor filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), Case No. 19-42769 (NHL); and

**WHEREAS**, the Debtor is continuing to manage its business as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code; and

**WHEREAS**, the Debtor has immediate cash needs in order to run the day-to-day operations of its business and to otherwise advance its business purpose; and

**WHEREAS**, the Lender is an officer, director and shareholder of the Debtor; and

**WHEREAS**, the Lender has agreed, subject to the terms and conditions set forth herein, to make loans to the Debtor from time to time in order to enable it to fund the payment its ongoing operating expenses and other authorized expenditures.

**NOW, THEREFORE**, in consideration of the premises and the covenants and agreements contained herein, the parties hereto agree as follows:

## ARTICLE I

## DEFINITIONS; CERTAIN TERMS

SECTION 1.1. <u>General Definitions</u>. As used herein, the following terms shall have the meanings herein specified:

"<u>Administrative Claim</u>" means an administrative expense that is entitled to priority treatment under section 503(b) or 507(b) of the Bankruptcy Code.

"<u>Agreement</u>" means this Debtor-In-Possession Loan Agreement, as may be amended, supplemented, or otherwise modified from time to time.

"Chapter 11 Case" means the Debtor's chapter 11 case pending in the Bankruptcy Court, *In re Virginia True Corporation*, Case No. 19-42769 (NHL).

"Commitment" means the commitment of the Lender to make available an amount not to exceed $100,000 to pay Operating Expenses (hereinafter defined).

"Effective Date" means the date on which all of the conditions specified in Article V shall have been satisfied.

"Event of Default" means the occurrence of any of the events specified in Article VIII.

"Financing Order" means an order of the Bankruptcy Court, in form and substance satisfactory to the Lender, approving on a final basis the financing transactions under the Loan Documents.

"GAAP" means Generally Accepted Accounting Principles.

"Lien" means a claim, mortgage, deed of trust, levy, charge, pledge, security interest, or other encumbrance of any kind, whether voluntarily incurred or arising by operation of law or otherwise against any property.

"Loan" means any and all loans and advances not to exceed $100,000 made to the Debtor post-petition pursuant to the terms of this Agreement.

"Loan Documents" means this Agreement, the Note, and all other documents and instruments to be delivered by the Debtor under or in connection with this Agreement, as each of the same may be amended, supplemented or otherwise modified from time to time.

"Maturity Date" means the earlier of (i) the date on which an order of the Bankruptcy Court confirming a chapter 11 plan in the Chapter 11 Case becomes a final order, and (ii) the date of the occurrence of an Event of Default.

"Note" means the promissory note provided for by Section 2.1 for the Loan and any promissory note delivered in substitution or exchange therefor, in each case as the same may be modified and supplemented from time to time, provided, however, that failure to execute a Note shall not in any manner relieve the Debtor of its obligation to repay the Loans as provided under this Agreement.

"Operating and Capital Expenses" means: (a) the ordinary, customary and/or necessary day-to-day expenses of the operation of the Debtor's business; (b) working capital expenditures in furtherance of the Debtor's business purpose; and/or (c) such other and further obligations as the Debtor's management may deem necessary or advisable.

"Person" means any individual, sole proprietorship, partnership, limited liability company, joint venture, trust, unincorporated organization, joint stock company, association, corporation, institution, entity, party or government (including any division, agency or department thereof) or any other legal entity, whether acting in an individual, fiduciary or other capacity, and, as applicable, the successors, heirs and assigns of each.

"Statutory Lien" means such of the following as to which no enforcement, collection, execution, levy, or foreclosure proceeding shall have been commenced and be continuing (unless such enforcement, collection, levy, or foreclosure is being contested by the Debtor in good faith by appropriate proceedings diligently conducted and for which adequate reserves are being maintained in accordance with GAAP): Liens for taxes, assessments, and other governmental charges or levies or the claims or demands of landlords, carriers, warehousemen, mechanics, laborers, materialmen, and other like persons arising by operation of law in the ordinary course of business for sums which are not yet due and payable, and deposits or pledges to secure the payment of bid or performance bonds, or other obligations of a like nature incurred in the ordinary course of business.

SECTION 1.2. Terms Generally. The terms used herein shall apply equally to the singular and plural forms. Whenever the context may require, any pronoun shall include the corresponding masculine, feminine, and neuter forms. The words "include," "includes," and "including" shall be deemed to be followed by the phrase "without limitation." The word "will" shall be construed to have the same meaning and effect as the word "shall." Unless the context requires otherwise, (a) any definition of or reference to any agreement, instrument or other document herein shall be construed as referring to such agreement, instrument, or other document as from time to time amended, supplemented, or otherwise modified (subject to any restrictions on such amendments, supplements, or modifications set forth herein), (b) any reference herein to any entity shall be construed to include such entity's successors and assigns, (c) the words "herein," "hereof," and "hereunder," and words of similar import, shall be construed to refer to this Agreement in its entirety and not to any particular provision hereof, (d) all references herein to Articles and Sections shall be construed to refer to Articles and Sections of this Agreement, and (e) any capitalized terms not defined in this Article shall have the meanings ascribed to them in context.

## ARTICLE II

## THE LOAN

SECTION 2.1. General Provisions.

(a)     The Lender agrees, subject to the terms and conditions of this Agreement and the Note (as defined below), if any, and upon the occurrence of the Effective Date, to make one or more Loans to the Debtor upon its request, in one or more advances, in an aggregate principal amount not to exceed the Commitment, at any time during the Loan Term (as defined below).

3

(b)     The Loan may be evidenced by a promissory note payable to the order of the Lender, substantially in the form of Exhibit "A" annexed hereto, as may be amended, supplemented or otherwise modified from time to time (the "Note"), executed by the Debtor and delivered to the Lender on or after the Effective Date.  The Debtor hereby authorizes the Lender to record on the grid schedule annexed to the Note the date and amount of each advance made by the Lender to the Debtor and all payments made in respect of the Loan, which endorsements shall, in the absence of manifest error, be conclusive as to the amount of the Loan; provided, however, that the failure to make such notation with respect to any Loan or payment shall not limit or otherwise affect the obligations of the Debtor to make a payment when due of any amount owing hereunder or under the Note.

(c)     The aggregate outstanding amount of the Loan, including all principal, interest, costs, expenses and other charges, shall be payable on or before the Maturity Date.

(d)     The Debtor may, at any time and from time to time, prepay the Loan, in whole or in part, without premium or penalty.

SECTION 2.2.  Application of Proceeds.  The proceeds of the Loan shall be used by the Debtor solely to pay Operating and Capital Expenses and for no other purpose.

SECTION 2.3.  Interest.  The outstanding principal balance of the Loan shall bear interest at the rate of nine percent (9%) per annum from the date of each advance until said advance has been fully paid to the Lender.

SECTION 2.4.  Term.  The term of this Agreement shall be for a period from the Effective Date to but not including the Maturity Date unless sooner terminated in accordance with the terms of this Agreement (the "Loan Term").

**ARTICLE III**

**ADMINISTRATIVE PRIORITY**

SECTION 3.1.  Administrative Priority.  The Loan shall constitute an Administrative Claim.

SECTION 3.3.  No Modification.  The administrative claims, priorities, and other rights and remedies granted to the Lender pursuant to this Agreement shall not be modified, altered, or impaired in any manner by any financing, extension of credit, incurrence of debt, dismissal or conversion of the Chapter 11 Case, any order or by any other act or omission whatsoever.

## ARTICLE IV

## PAYMENTS

SECTION 4.1.  <u>Payments</u>.  The Debtor shall make each payment under the Loan Documents on the day when due, in lawful money of the United States of America and in immediately available funds, to the Lender's account.  Any and all payments received from the Debtor will be applied: (a) first, to the payment of any outstanding costs, expenses and/or fees payable by the Debtor hereunder; (b) second, to the payment of any accrued and unpaid interest payable by the Debtor hereunder; and (c) third, to the payment of any outstanding principal payable by the Debtor hereunder.

## ARTICLE V

## CONDITIONS OF LENDING

SECTION 5.1.  <u>Conditions to the Loan</u>.  The obligation of the Lender to make the Loan is subject to the satisfaction of the following conditions prior to or concurrent with the Loan unless waived:

(a)    The Lender shall have received the following, each dated the date of the Loan or as of an earlier date acceptable to the Lender, in form and substance satisfactory to the Lender:

(i)    the Financing Order, entered by the Bankruptcy Court in the Chapter 11 Case not later than ten days after the hearing before the Bankruptcy Court on the Debtor's request to obtain the Loan, which shall be in full force and effect and shall not have been appealed, vacated, stayed, reversed, modified or amended;

(ii)    authorization by the Court, in the Financing Order, to grant the Lender an Administrative Claim on account of the Loan; and

(iii)    the Note, duly executed by the Debtor and payable to the order of the Lender.

(b)    There shall be no pending or, to the knowledge of the Debtor after due inquiry, threatened litigation, proceeding, inquiry or other action seeking an injunction or other restraining order, damages or other relief with respect to the transactions contemplated by this Agreement or the other Loan Documents.

## ARTICLE VI

## REPRESENTATIONS AND WARRANTIES

SECTION 6.1. <u>Representations and Warranties of the Debtor</u>. The Debtor represents and warrants as follows (it being understood and agreed that any representation or warranty which by its terms is made as of a specified date shall be required to be true and correct in all material respects only as of such specified date):

(a)    <u>Authority</u>. The Debtor has the requisite corporate power and authority to execute, deliver and perform its obligations under each of the Loan Documents to which it is a party. All action necessary for the execution, delivery and performance by the Debtor of the Loan Documents to which it is a party (including the consent of partners of the Debtor where required) has been taken.

(b)    <u>Enforceability</u>. Upon entry of the Financing Order by the Bankruptcy Court in the Chapter 11 Case, this Agreement is and, when executed and delivered, each other Loan Document to which the Debtor is a party will be, the legal, valid and binding obligation of the Debtor enforceable in accordance with its terms, except as enforceability may be limited by (i) bankruptcy, insolvency or similar laws affecting creditors' rights generally and (ii) general principles of equity.

(c)    <u>No Conflict</u>. The execution, delivery and performance by the Debtor of each Loan Document to which it is a party does not and will not contravene (i) upon entry of the Financing Order, any agreement of the Debtor or (ii) any requirement of law (unless the Loan Documents are not approved by the Bankruptcy Court).

(d)    <u>Consents and Filings</u>. No consent, authorization or approval of, or filing with or other act by, any partner of the Debtor, any governmental authority or any other Person is required in connection with the execution, delivery, performance, validity or enforceability of this Agreement or any other Loan Document, the consummation of the transactions contemplated hereby or thereby or the continuing operations of the Debtor following such consummation, except the entry of the Financing Order by the Bankruptcy Court in the Chapter 11 Case.

SECTION 6.2. <u>Survival of Representations and Warranties</u>. All representations and warranties made by the Debtor in this Agreement and in each other Loan Document to which it is a party shall survive the execution and delivery hereof and thereof and the closing of the transactions contemplated hereby and thereby.

# ARTICLE VII

# COVENANTS

SECTION 7.1. <u>Affirmative Covenants</u>.

(a)   <u>Corporate Existence</u>. The Debtor shall (i) maintain its corporate existence, (ii) maintain in full force and effect all material licenses, bonds, franchises, leases, trademarks, qualifications and authorizations to do business, and all material patents, contracts and other rights necessary or advisable to the conduct of its business, and (iii) continue in, and limit its operations to, the same lines of business as presently conducted by it.

SECTION 7.2. <u>Negative Covenants</u>.

(a)   <u>Liens</u>. The Debtor will not directly or indirectly, at any time create, incur or assume any Lien on or with respect to any of its assets, other than (i) Statutory Liens, (ii) adequate protection Liens granted by the Bankruptcy Court, and (iii) any Liens granted to secure post-petition financing from any other lender with the prior written consent of Lender.

(b)   <u>Chapter 11 Claims</u>. Except in connection with, and only to the extent incurred on or after a chapter 11 plan is approved by the Bankruptcy Court, the Debtor shall not apply (or permit the application by any Person) to the Bankruptcy Court for the authority to, directly or indirectly, incur, create, assume, suffer or permit any claim or encumbrance (other than post-Petition Date Statutory Liens) against the Debtor or any of its assets in the Chapter 11 Case to be *pari passu* with, or senior to, the claims of the Lender and granted and arising hereunder and under the Financing Order.

# ARTICLE VIII

# EVENTS OF DEFAULT

SECTION 8.1. <u>Events of Default</u>. If any of the following Events of Default shall occur and be continuing:

(a)   the failure by the Debtor to pay any amount payable on or before the Maturity Date;

(b)   if the Debtor shall fail to pay, perform or observe any covenant, agreement, term or provision of this Agreement or any other Loan Document;

(c)   if any representation, warranty or other statement of fact herein or in any writing, certificate, report or statement at any time furnished to the Lender pursuant to or in connection

7

with this Agreement or any other Loan Document shall be false or misleading in any material respect; or

      (d)     an order shall have been entered by the Bankruptcy Court (i) appointing a trustee or examiner in the Chapter 11 Case; (ii) converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code; or (iii) dismissing the Chapter 11 Case;

      (e)     an order with respect to the Chapter 11 Case shall have been entered by the Bankruptcy Court without the express prior written consent of the Lender to revoke, reverse, stay, modify, supplement or amend the approval of this Agreement or any other Loan Document; or

      (f)     any provision hereof shall at any time for any reason (other than pursuant to the express terms hereof) cease to be valid and binding on or enforceable against the Debtor or its estate, or a proceeding shall be commenced seeking to establish the invalidity or unenforceability thereof;

then, and in any such event, the Lender may, by notice to the Debtor (i) terminate the Commitment, whereupon the Commitment shall terminate immediately, (ii) declare the Loan then outstanding to be accelerated and immediately due and payable, whereupon the Loan and all other amounts payable under this Agreement, including the amounts payable under the Note, shall become due and payable immediately, without further order of, or application to, the Bankruptcy Court, presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Debtor, and/or (iii) may proceed against the Debtor in such manner as the Lender so chooses, having all rights and remedies provided by law or in equity.

## ARTICLE IX

## GENERAL PROVISIONS

      SECTION 9.1.  <u>Notices</u>.  All notices and other communications provided for hereunder shall be in writing and shall be mailed, e-mailed, telecopied, or delivered: (a) if to the Debtor, then to Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq.; and (b) if to the Lender, then to Benito R. Fernandez, 2689 Pitkin Avenue, Brooklyn, New York 11208, or, as to each party, at such other address as shall be designated by such party in a written notice to the other parties complying as to delivery with the terms of this Section. All such notices and other communications shall be effective: (i) if mailed, when received or three days after deposit in the mails, whichever occurs first; (ii) if e-mailed, upon receipt; (iii) if telecopied, when transmitted and confirmation received; or (iv) if delivered, upon delivery.

      SECTION 9.2.  <u>Delays; Partial Exercise of Remedies</u>.  No delay or omission of the Lender to exercise any right or remedy hereunder shall impair any such right or operate as a

waiver thereof. No single or partial exercise by the Lender of any right or remedy shall preclude any other or further exercise thereof, or preclude any other right or remedy.

SECTION 9.3. <u>Amendments and Waivers</u>. No amendment, modification or waiver of any provision of this Agreement or any other Loan Document shall be effective unless it is pursuant to a written agreement signed by the Debtor and the Lender.

SECTION 9.4. <u>Severability</u>. Any provision of this Agreement or any other Loan Document which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining portions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

SECTION 9.5. <u>Governing Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the state of New York, without regard to any rule of conflicts of law that would result in the application of the substantive law of any jurisdiction other than the state of New York.

SECTION 9.6. **<u>WAIVER OF JURY TRIAL</u>. THE DEBTOR AND THE LENDER HEREBY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING, OR COUNTERCLAIM CONCERNING ANY RIGHTS UNDER THIS LOAN AGREEMENT OR ANY OTHER LOAN DOCUMENT OR ARISING FROM ANY FINANCING RELATIONSHIP EXISTING IN CONNECTION WITH THIS LOAN AGREEMENT OR ANY OTHER LOAN DOCUMENT, AND AGREE THAT ANY SUCH ACTION, PROCEEDING, OR COUNTERCLAIM SHALL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY.**

SECTION 9.7. <u>Assignment</u>. The Debtor shall not assign this Agreement or any rights or obligations hereunder.

SECTION 9.8. <u>Counterparts</u>. This Agreement and any waiver or amendment hereto may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed and delivered shall be deemed to be an original, but all of which taken together shall constitute one and the same agreement. This Agreement and each of the other Loan Documents may be executed and delivered by telecopier, e-mail, or other facsimile transmission all with the same force and effect as if the same were a fully executed and delivered original manual counterpart.

SECTION 9.9. <u>Entire Agreement; Successors and Assigns</u>. This Agreement and the other Loan Documents constitute the entire agreement between the parties, supersede any prior written and verbal agreements between them, and shall bind and benefit the parties and their respective successors, heirs, and permitted assigns.

SECTION 9.10.  Orders.  To the extent that any term or provision of this Agreement or any other Loan Document is inconsistent with the terms or provisions of the Financing Order, the Financing Order shall govern.

SECTION 9.11.  Legal Fees.  The Debtor shall pay any and all reasonable costs and expenses incurred by the Lender in connection with the enforcement of the Lender's rights under this Agreement including, without limitation, and in addition to all other relief, the costs and expenses of the Lender's attorneys.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their proper and duly authorized officers as of the date first set forth above.

**DEBTOR:**

**VIRGINIA TRUE CORPORATION**

By: _____

Benito R. Fernandez, President

**LENDER:**

_____

Benito R. Fernandez, Individually

10