Stephen Z. Starr, Esq.  
STARR & STARR, PLLC  
260 Madison Ave., 17th Floor  
New York, New York 10016  
tel. (212) 867-8165  
fax. (212) 867-8139  
email sstarr@starrandstarr.com  

**Hearing Date/Time**:  
July 11, 2019 at 11:45 a.m.  

**Objection Deadline**:  
July 5, 2019 at 5:00 pm  

*Attorneys for Creditors Domenick Cipollone*  
  *and Anthony Cipollone*  

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  

In re:

VIRGINIA TRUE CORPORATION,

                       Debtor.

Chapter 11 Case No.:

1-19-42769 (NHL)

## DECLARATION OF DOMENICK CIPOLLONE IN SUPPORT OF MOTION BY CREDITORS DOMENICK CIPOLLONE AND ANTHONY CIPOLLONE, TO (I) CHANGE VENUE TO UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF VIRGINIA, OR (II) IN THE ALTERNATIVE TO DISMISS CHAPTER 11 CASE

I, Domenick Cipollone, declare as follows:

1. I am over 18 years of age and am a creditor in the above-referenced chapter 11 bankruptcy case (the "Bankruptcy Case") of Virginia True Corporation (the "Debtor").

2. This declaration is based upon my own personal knowledge, except as to such matters stated upon information and belief, and as to such matters I believe them to be true.

3. This declaration is being submitted in support of the motion ("Motion") seeking entry of an order (a) changing the venue of the Bankruptcy Case pursuant to 28 U.S.C. Sec 1408(a)(1) to the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division), or (b) in the alternative for an order of dismissal pursuant to section 1112(b)(1) of the Bankruptcy Code.

**A.     Background**

4.     I am a member of ADC Construction LLC, which maintains premises at 58-08 48th Street, Maspeth, New York 11378.

5.     ADC Construction is a company engaged in municipal construction, sewer, roadwork and trenching, primarily in the New York City metropolitan area,

6.     My brother, Anthony Cipollone, is also a member of ADC Construction and we work together in managing the business, operations and municipal projects of ADC Construction,

7.     Neither myself, nor my brother Anthony, have a background or personal experience in real estate development or real estate finance.

**B.     General Background re Fones Cliffs in Richmond County, Virginia**

8.     The Debtor is the owner of record of a parcel of consisting of approximately 1,000 acres of real estate in Richmond County, Virginia including an area known as "Fones Cliffs" (the "Real Property Site").

9.     I have been advised and believe to be true that Fones Cliffs located on the Real Property Site is a four-mile cliff formation along the eastern side of the Rappahannock River in Richmond County, Virginia – midway between the Route 301 bridge in Port Royal and the Route 360 bridge in Tappahannock.  I have been advised and believe to be true that Fones Cliffs contain diatomaceous earth which is visible from miles away due to its white color.

10.     I have been advised and believe to be true that Fones Cliffs lies within an area designated by the Audubon Society as an Important Bird Area with "global significance."  I have been further advised and believe to be true that the Fones Cliffs formation is nationally recognized as having one of the highest concentrations of bald eagles on the East Coast and is highlighted in the National Geographic map "Treasured Landscapes of the Chesapeake Bay."

11. I have been advised and believe to be true that Fones Cliffs has historical significance because, among other things, in 1608, the Rappahannock Indians attacked Captain John Smith as he navigated below the cliffs, an event memorialized with the first and only National Water Trail: The Captain John Smith Chesapeake National Historic Trail

**C.    Formation and Investment in the Debtor**

12. In 2017, my brother (Anthony) and I were introduced to Benito R. Fernandez ("Fernandez") and Howard Kleinhendler ("Kleinhendler").

13. We were informed by Fernandez that he was involved in developing at the Real Property Site a golf course and mixed used facility contemplated to include residences and a hotel.

14. I went and personally visited Fones Cliffs with my son and became enthusiastic about the investment potential of the contemplated project.

15. I am informed and believe that on or about March 20, 2017, a Certificate of Incorporation for the Debtor was filed with the Commonwealth of Virginia, State Corporation Commission.

16. After due dilingence, on April 27, 2017, Fernandez, Kleinhendler, my brother and I entered into a written stockholders' agreement (the "Stockholders' Agreement"), a copy of which is attached hereto as **Exhibit A**.

17. Under the Stockholders' Agreement, Virginia True issued 2,600 shares of Common Stock to the four shareholders: Kleinhendler, Fernandez, my brother Anthony and I.

18. Kleinhendler and Fernandez each received 884 shares of Virginia True Common Stock, which collectively comprised a majority percentage (68%) of the issued shares of Virginia True. Neither Kleinhendler or Fernandez paid any money in exchange for their respective shares.

19. My brother Anthony and I each received 416 shares of Virginia True Common Stock, which collectively comprised 32% of the issued shares of Virginia True. Under the Stockholders'

Agreement my brother Anthony and I agreed to pay and did pay $5 million total in exchange for the shares we received.

D.     **Fernandez and Kleinhendler's Mismanagement of Project.**

20.    On May 1, 2017, the Debtor purchased the Real Property Site for $12 million, based on payment of $5 million cash that had been received from my brother Anthony and I and the balance paid by a $7 million unsecured promissory note of the Debtor.

21.    Other than the $5 million in funds received from my brother Anthony and me, Kleinhendler and Fernandez failed to subsequently obtain any additional equity investors or obtain loan financing at any time during the two year period from May 2017 to the present.

22.    With the assistance of its agent and attorney at that time, Robert Smith, Esq., the Debtor sought to pursue the development of the Real Property Site into a golf course and resort.

23.    As negotiated and agreed during the formation of the Debtor and the execution of the Stockholders' Agreement, my bother Anthony and I were silent investors in the Debtor with no control except under certain protective provisions contained in the Shareholders' Agreement.  Fernandez and Kleinhendler were responsible for the day-to-day management of the Debtor and its Real Property Site development efforts.

24.    In the months subsequent to the Debtor's purchase of the Real Property Site, Fernandez and Kleinhendler proved themselves not up to the task of managing the development project for the Real Property Site.

25.    Until January 2018, my brother Anthony and I were kept in the dark regarding Kleinhendler and Fernandez's gross mismanagement and unprofessional business conduct.

26.    On January 15, 2018, my brother Anthony and I became aware of numerous, significant issues with the site development project for the Real Property Site, including, but not limited to, (a) nonpayment and excessive delays in payment of invoices due to vendors and consultants, (b) issuance

of a November 30, 2017 stop work order from Richmond County for violation of Richmond County's Erosion and Sediment Control Ordinance in connection with unauthorized land clearing.

27. On January 17, 2018, my brother Anthony and I, through counsel, sent a demand letter to Fernandez and Kleinhendler in direct reaction to the new and damaging information learned as of January 15, 2018. A copy of the letter is attached hereto as **Exhibit B**.

28. On May 2, 2018, my brother Anthony and I, through counsel, sent a further demand letter to Fernandez and Kleinhendler related to, *inter alia*, their improper conduct in furtherance of the Real Property Site development project, as well as their inadequate responses and false promises related to funding of the project and delivery to my brother and me of the relevant financial information regarding the Debtor required under the Stockholders' Agreement. A copy of the letter is attached hereto as **Exhibit C**.

29. The letter also demanded that Fernandez and Kleinhendler (a) fully comply with all terms of the Stockholders' Agreement, (b) cease and desist any further spending on behalf of or by the Debtor, and (c) immediately negotiate new conditions with my brother and me regarding the structure and management of our business relationship with the Debtor.

30. Fernandez and Kleinhendler never responded to the January 17, 2018 and May 2, 2018 letter.

E. **Kleinhendler and Fernandez's management of the Debtor Results in DEQ Violations and a lawsuit from the Virginia Attorney General**

31. I am informed and believe to be true that on October 10, 2018, Virginia Attorney General Mark Herring filed a lawsuit against the Debtor violations of Virginia environmental laws. It is my information and belief, that in that lawsuit, Attorney General Herring alleges that the Debtor engaged in unpermitted land clearing and land disturbing activities, failed to develop a stormwater management plan, failed to install measures to prevent sediment runoff, failed to stabilize the land it was disturbing, and failed to correct the violations in a timely manner even after being notified.

32. It is my information and belief that the lawsuit explains that the Virginia Department of Environmental Qualify ("DEQ") notified the Debtor of violations in February, April, and August 2018, yet violations continued. It is my information and belief that the suit alleges seventeen counts of illegal actions by the Debtor at the Real Property Site:

    a. Unpermitted land disturbance in violation of the State Water Control Law, the Virginia Stormwater Management Act, the Virginia Erosion and Sediment Control Law, and the Board's regulations;

    b. Failure to Obtain an Approved Stormwater Management Plan Prior to Land Disturbance;

    c. Failure to Obtain Approved Erosion and Sediment Control Plan Prior to Land Disturbance;

    d. Failure to Stabilize Denuded Areas;

    e. Failure to Install Sediment Trapping Controls;

    f. Failure to Maintain, Inspect, and Repair Erosion and Sediment Control Structures;

    g. Unpermitted Discharge;

    h. Failure to Notify the Department of Unpermitted Discharge;

    i. Failure to Post a Copy of Construction General Permit Coverage;

    j. Failure to Maintain a Copy of the Erosion and Sediment Control Plan at a Central Location;

    k. Failure to Maintain a Copy of the Stormwater Management Plan at a Central Location;

    l. Failure to Identify Qualified Personnel;

    m. Failure to Complete Self-Inspection Reports;

    n. Failure to Perform Self-Inspections;

   o. Failure to Design and Construct Cut and Fill Slopes;

   p. Failure to Design and Construct Stormwater Conveyance Channels; and

   q. Failure to Apply Permanent or Temporary Soil Stabilization

33. It is my information and belief that the lawsuit asks the court for an injunction to force the Debtor to comply with environmental laws, for the maximum allowable civil penalties, and for any other relief that the court believes to be appropriate.

**F. My Brother Anthony and I Invoked Our Buy-Out Rights under the Stockholders' Agreement and Filed a Lawsuit for Enforcement of Such Rights**

34. On September 28, 2018, my brother Anthony and I, through counsel, provided written notice to Kleinhendler, Fernandez, and the Debtor of our intent to exercise the put option (*i.e.* buy-out right) set forth in Section 2.6 of the Stockholders' Agreement. A copy of the September 28, 2018 letter serving as such written notice is attached hereto as **Exhibit D**.

35. By exercising the put option in Section 2.6 of the Stockholders' Agreement, my brother Anthony and I thereby demanded that the Debtor purchase all of our shares for $5 million by December 26, 2018 – ninety days from written notice as provided in the Stockholders' Agreement.

36. Neither Kleinhendler, Fernandez, or the Debtor delivered the required $5 million payment to me and my brother for our shares of the Debtor.

37. Subsequently, my brother Anthony and I exercised our alternative rights under Section 2.6 of the Stockholders' Agreement that provided that should Kleinhendler, Fernandez, or the Debtor fail to deliver the $5 million to us by December 26, 2018, we would be entitled to compel the Debtor to issue us a note for $5 million and a mortgage against the Debtor's real estate – the only applicable asset being the Real Property Site. The agreement provided that the note would bear interest at Libor plus three points and would come due four months from the end of the notice period on April 27, 2019.

38. On or about December 4, 2018, my brother Anthony and I, through counsel, filed a lawsuit for specific performance (the "<u>Specific Performance Lawsuit</u>") in the Circuit Court for the County of Richmond captioned as *Anthony Cipollone and Domenick Cipollone vs. Virginia True Corporation* (Case CL18-145). In response to the Specific Performance Lawsuit the Debtor issued a promissory note (a true copy of which is attached hereto as **<u>Exhibit E</u>**) and a mortgage (a true copy of which is attached hereto as **<u>Exhibit F</u>**). My brother Anthony and I also resigned as officers of the Debtor.

G. **<u>The Bankruptcy Case Should be Transferred to the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division)</u>**

39. I have been advised and believe to be true that Section 1408 of Title 28 of the United States Code (entitled "Venue of cases under chapter 11") provides that a chapter 11 bankruptcy case can be filed in the district "in which the domicile, residence, principal place of business in the United States, or principal assets in the United States . . . [are] located."

40. The Debtor is a Virginia corporation. Attached hereto as **<u>Exhibit G</u>** is a true and correct copy of the Debtor's Certificate of Incorporation filed at Richmond, Virginia on March 30, 2017. It provides in paragraph 7 as follows; "The address of the corporation's principal office is The Branch House, 2501 Monument Avenue, Richmond, VA 23220.

41. Attached hereto as **<u>Exhibit H</u>** is a true and correct copy of the Debtor's 2018 Annual Report, dated as of May 23, 2018 and executed by Kleinhendler as Director of the Debtor. It provides in paragraph 3 that the City or County of its Virginia registered office is in "Richmond City" and in paragraph 6 that the principal office address is: "7705 Yolanda Road, Richmond, VA 23229".

42. Attached hereto as **<u>Exhibit I</u>** is a true and correct copy of the Debtor's 2019 Annual Report, dated as of January 31, 2019 and executed by Kleinhendler as Executive Vice President of the Debtor. It provides in paragraph 3 that the City or County of its Virginia registered office is in

"Henrico County" and in paragraph 6 that the principal office address is: "7705 Yolanda Road, Richmond, VA 23229".

43. Attached hereto as **Exhibit J** is a true and correct copy of a "Business Entity Detail" report as downloaded from the Commonwealth of Virginia State Corporation Commission's website regarding the Debtor. It lists the "principal office" of the Debtor as "7705 Yolanda Road, Richmond, VA 23229".

44. The Debtor is not domiciled in the State of New York nor in the Eastern District of New York.

45. The Debtor is not resident in the State of New York nor in the Eastern District of New York.

46. The Debtor has only one asset: the Real Property Site. That is located in Richmond County, Virginia.

47. The Debtor has no income and no current business activity. At this time it is a failed real estate project located in Richmond County, Virginia.

48. For the foregoing reasons, I respectfully submit that the proper venue for the Debtor's Bankruptcy Case and Court in which it should have been commenced is the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division). Accordingly, this Court should order the case moved to that Court.

**H.     Alternatively, the Bankruptcy Case Should be Dismissed**

49. I am advised that section 1112 of Title 11 of the United State Code provides that a Bankruptcy Court may dismiss a chapter 11 bankruptcy case for "cause", including, among other factor "substantial or continuing loss to or diminuition of the estate and the absence of a reasonable likelihood of reorganization" or "gross mismanagement of the estate."

50. The Debtor has no income and no business income. Other than the $5 million in funds received from my brother Anthony and me, Kleinhendler and Fernandez failed to subsequently obtain any additional equity investors or obtain loan financing at any time from May 2017 to the present. There is no reason to realistically expect that if over a two (2) year period they were entirely unable to raise any equity or loan financing, that now they are in chapter 11 bankruptcy and the Debtor has also been the subject of environmental law violations involving the activities at the Real Estate Site, that they will now be able to do so.

51. In the event that the Court does not transfer venue to the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division), I respectfully submit that the Bankruptcy Case should be dismissed.

[SPACE BELOW INTENTIONALLY LEFT BLANK - SIGNATURE ON NEXT PAGE]

**WHEREFORE**, based on the foregoing it is respectfully requested that the Motion be approved and that the Court enter an order (a) changing the venue of the Bankruptcy Case pursuant to 28 U.S.C. Sec 1408(a)(1) to the United States Bankruptcy Court for the Eastern District of Virginia (Richmond Division), or (b) in the alternative for an order of dismissal pursuant to section 1112(b)(1) of the Bankruptcy Code

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true and correct.

Dated: Maspeth, New York
June 20, 2019

By /s/ Domenick Cipollone
Domenick Cipollone