Rishi Kapoor  
VENABLE LLP  
Rockefeller Center  
1270 Avenue of the Americas, 24th Floor  
New York, New York 10020  
Telephone: (212) 307-5500  
Facsimile: (212) 307-5598  
Email: rkapoor@venable.com

Hearing Date: June 27, 2019 at 2:00 p.m.

*Counsel for Diatomite Corporation of America and Allan H. Applestein*

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------x  
:  
In re: : Chapter 11  
:  
Virginia True Corporation, : Case No. 19-42769 (NHL)  
:  
Debtor. :  
:  
-----------------------------------------------------------x

### DIATOMITE CORPORATION OF AMERICA'S OBJECTION TO DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING DEBTOR TO OBTAIN UNSECURED POST-PETITION FINANCING ON AN INTERIM AND FINAL BASIS FROM BENITO R. FERNANDEZ AND GRANTING RELATED RELIEF

Diatomite Corporation of America ("Diatomite") hereby files this Objection (the "Objection") to the above-captioned Debtor's *Motion for Entry of an Order Authorizing Debtor to Obtain Unsecured Post-Petition Financing on an Interim and Final Basis from Benito R. Fernandez and Granting Related Relief* [Doc. 21] (the "DIP Motion"), and respectfully states as follows:

**PRELIMINARY STATEMENT**[1]

1. After six weeks in bankruptcy, Debtor seeks approval, on an interim and expedited basis, to obtain $100,000 of post-petition financing from its president, 50% shareholder, and director Benito Fernandez. While the Debtor claims that it needs immediate access to the requested

---

[1] Capitalized terms in the Preliminary Statement are defined elsewhere in the Objection.

post-petition funding in order to satisfy "urgent cash needs" and prevent irreparable harm to the estate, the DIP Motion fails to bear out these dire warnings.

2.　　Indeed, among other reasons, the Debtor's request for interim relief should be denied because:

- The Debtor does not identify any immediate or irreparable harm that will result in the absence of interim financing;

- Other that generically claims that it needs cash to operate, the Debtor does not describe the purpose or amount of any actual expenses requiring immediate interim funding; and

- Rather than tailoring its interim relief to the minimal amount necessary to avoid irreparable harm before a final hearing can be held, the Debtor seeks the exact same relief on an interim and final basis.

3.　　Moreover, as an insider transaction, the Proposed DIP Loan is subject to heightened scrutiny and the "entire fairness" standard, as opposed to the more deferential business judgment standard. As a result, the Debtor should be required to substantiate its request for post-petition financing on a final basis by providing additional disclosure regarding the need for and its intended use of the Proposed DIP Loan. Among other things, the Debtor should provide an itemized budget, cash flow projections, a business plan, and the means by which it will repay—before the Court considers the DIP Motion on a final basis.

## BACKGROUND

**The Bankruptcy Case**

4.　　On May 3, 2019 (the "Petition Date"), Debtor commenced this bankruptcy case (the "Bankruptcy Case" or "Case") by filing a voluntary petition [Doc. 1] (the "Petition") under Chapter 11 of the Bankruptcy Code. Debtor remains in possession of its property and continues to manage its business and affairs as a debtor-in-possession pursuant to Section 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

5.      Debtor is currently controlled by two shareholders, Benito R. Fernandez ("Fernandez") and Howard Kleinhendler ("Kleinhendler"), who each own a 50% interest in the company. *See* DIP Mot. ¶ 5; Statement of Financial Affairs at 13 & Attachment 5 thereto [Doc. 11]. Fernandez is Debtor's president and Kleinhendler is Debtor's executive vice president. *Id.*; Aff. of Benito Fernandez Pursuant to L.B.R. 1007-4 ¶ 14 ("Fernandez Aff.") [Doc. 2]. Fernandez and Kleinhendler also serve as the only two members of Debtor's board of directors. Fernandez Aff. ¶ 14.

6.      While a committee has not yet been appointed in this Bankruptcy Case, on June 21, 2019, the U.S. Trustee mailed a solicitation to Debtor's largest unsecured creditors regarding the formation of an official committee. The committee solicitation is returnable on July 5, 2019.

7.      Diatomite is Debtor's largest unsecured creditor. *See* 20 Largest Unsecured Claims, Schedule E/F at 2 [Doc 11]. Debtor has scheduled Diatomite's claim in the amount of $7,000,000. *Id.* By way of comparison, the total amount of all other non-insider unsecured claims is less than $400,000. *Id.*

8.      The Section 341 Meeting of Creditors (the "341 Meeting") was held on June 10, 2019. Fernandez testified as Debtor's representative.[2]

**Debtor's Pre-Petition Operations**

9.      Debtor's sole asset consists of a 977-acre parcel of undeveloped land in Virginia (the "Property"). DIP Mot. ¶ 2; *see also* Schedule A/B: Assets—Real and Personal Property at 6, 8 [Doc. 11]. Debtor has no operating revenue or employees, and Fernandez and Kleinhendler are not paid a salary. DIP Mot. ¶ 2; Fernandez Aff. ¶¶ 14, 16.

---

[2]   The undersigned attended the 341 Meeting.

10. Debtor acquired the Property from Diatomite in March 2017.[3] DIP Mot. ¶ 2. At the 341 Meeting, Fernandez testified that Debtor intends to develop the Property into an entertainment and tourist destination with houses, a hotel, a golf course, and various other leisure activities. *Id.* ¶ 3.

11. Fernandez further testified that the development project consists of two phases. Phase 1 was completed in 2015—prior to Debtor's acquisition—during which the Property was rezoned to permit the construction and development of the Property. *Id*. Fernandez explained that "Phase 2" will require Debtor to obtain a number of permits from various government agencies in Richmond County, Virginia, so that it can begin the process of clearing the land and construct the project. He estimated that it will take four to five years to complete Phase 2. Although the DIP Motion claims that Debtor has submitted a Phase 2 "zoning application," Fernandez testified that, at present time, Debtor is not performing any work in connection with Phase 2.

12. Since acquiring the Property in March 2017, Debtor has cleared just 13 acres of land for development. *Id.* However, as Fernandez explained, since October 2018, Debtor has been subject to a lawsuit by the Virginia Department of Environmental Quality and the Virginia State Water Control Board due to numerous environmental violations resulting from Debtor's failure to obtain the requisite government permits and approvals before clearing the 13 acres (the "Virginia Environmental Litigation"). *See David K. Paylor, et al. v. Virginia True Corp.*, CL 18-122 (Va. Cir. Ct., Richmond Cnty.); *see also* Fernandez Aff. ¶ 13.

13. As a consequence of the Virginia Environmental Litigation, Debtor has ceased development activities. Debtor is responsible for the remediation of the environmental damage caused by clearing the 13 acres. Fernandez testified at the 341 Meeting that Debtor's remediation

---

[3] The deed of conveyance as recorded in the Richmond County, Virginia, land records is dated April 27, 2017.

costs are roughly $5,000 per month. *See* Monthly Operating Report at 3 (stating Debtor's projects monthly cash disbursements in June of $5,000) [Doc. 20].

14. Fernandez further testified that Debtor's only ongoing expenses are its remediation obligations of $5,000 per month, and annual real estate taxes of roughly $30,000, payable once a year.

**The DIP Financing Motion**

15. Debtor seeks interim and final approval to obtain as an administrative expense unsecured debtor-in-possession financing from Fernandez of up to $100,000, with interest on the outstanding balance accruing at 9% per annum (the "Proposed DIP Loan"). DIP Mot. ¶¶ 1, 5, 8, 9. The Proposed DIP Loan will fund Debtor's day-to-day operating expenses and be used to make working capital expenditures, which Debtor describes as "paying engineers, surveyors, and the like in connection with the development of the Property." *Id.* ¶¶ 1, 5.

**OBJECTION**

16. Diatomite principally objects to the Proposed DIP Loan on two grounds. ***First***, the Court should deny interim approval of the Proposed DIP Loan because Debtor has not established that the present circumstances warrant interim relief. ***Second***, because the Proposed DIP Loan is subject to heightened scrutiny applicable to insider transactions, Debtor should be required to provide additional disclosure as well as agree to modify the proposed DIP Order to include additional protections before the DIP Motion is considered on a final basis.

**I.    The Court Should Deny Debtor's Request for Interim Financing**

17. Pursuant to Bankruptcy Rule 4001(c)(2), the Court may grant interim relief "only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing." Fed. R. Bank. P. 4001(c)(2). Additionally, the Eastern District's Guidelines for Financing Motions (the "Guidelines") require that motions seeking interim financing (1) "describe

the ***amount and purpose of funds sought*** to be used or borrowed on an . . . interim basis," and (2) "set forth ***facts*** to support a finding that immediate or irreparable harm will be caused to the estate if immediate relief is not granted before the final hearing."  Guidelines ¶ 6 (emphasis added).

18.	Debtor's request for interim financing fails under both Rule 4001(c)(2) and the Guidelines.

19.	In the first instance, while Debtor repeatedly asserts that it has "immediate" and "urgent" "cash needs," *see, e.g.*, DIP Mot. ¶¶ 5, 9, 11, it fails to (1) describe the nature of the obligations requiring interim funding, (2) specify the amount of financing needed until a final hearing can be held, or (3) explain why immediate payment is required.  In fact, the DIP Motion does not cite a single example of an actual post-petition obligation requiring immediate or urgent payment.[4]

20.	Debtor similarly asserts that it will suffer "immediate[] and irreparabl[e] harm[] absent authorization . . . to obtain credit on an interim basis," yet it offers nothing more than conclusory assertions in support of its request for interim relief.  *Id.* ¶ 14; *see also id.* ¶ 9 (asserting without factual support that post-petition financing "is critical . . . to avoid irreparable harm"); *id.* ¶ 14 (asserting without factual support that Debtor's inability to obtain immediate funds to pay post-petition obligations over the short term "could [be] devastating" to "Debtor's business and its estate").  Indeed, Debtor fails to set forth any facts to support a finding that immediate access to interim financing is necessary to prevent immediate and irreparable harm, such as the severe disruption or termination of operations or the loss of a key vendor or supplier.

21.	That Debtor waited six weeks after the filing its bankruptcy petition to seek post-

---

[4]	Debtor's characterization of its urgent cash needs as mere day-to-day operating expenses, *see, e.g.*, DIP Mot. ¶¶ 1, 5, 9, 10, 11, conflicts with Fernandez's testimony at the 341 Meeting a week earlier, in which he stated that Debtor's sole ongoing expense consists of remediation costs of $5,000 per month.

petition financing further undermines its claim that interim funding is necessary to avoid immediate and irreparable harm to the estate. This is particularly so where, as here, Debtor fails to articulate any change in circumstances to account for its delay.

22. At most, Debtor suggests that the availability of interim financing will provide "necessary assurances to third parties of Debtor's ability to meet its near term obligations." *Id.* ¶ 14. But because Debtor does not identify the third parties requiring such assurances or describe the nature of Debtor's relationship to these unidentified third parties, Debtor fails to offer a sufficient factual basis to support a finding that the absence of assurances will irreparably harm the estate.

23. Finally, assuming *arguendo* the DIP Motion established a requisite basis to authorize interim financing (it does not), Bankruptcy Rule 4001(c)(2) mandates that such approval is limited solely to the amount of financing necessary to avoid immediate and irreparable harm to the estate pending a final hearing. Here, however, the proposed interim order fails to reflect any effort to limit the availability or conditions of credit that are absolutely necessary to avoid immediate and irreparable harm. The Court should deny interim relief on this basis alone. *See In re The Colad Grp., Inc.,* 324 B.R. 208, 218 (Bankr. W.D.N.Y. 2005) (finding the proposed interim DIP order to be "unacceptable" where "the proposed order would have approved an interim loan agreement with terms essentially identical to those contemplated for the final loan agreement . . . [w]ithout a showing of any compelling reason for identical terms . . . .").

**II.   The Insider Nature of the Proposed DIP Loan Transaction Warrants Additional Disclosure From Debtor and the Inclusion of Appropriate Safeguards Before Considering the DIP Motion on a Final Basis.**

Because Debtor is seeking post-petition financing from its president, 50% shareholder, and director, the Proposed DIP Loan is not entitled to the usual deference of Debtor's business judgment. Rather, the transaction is subject to "rigorous scrutiny" applicable to insider

transactions, and Debtor must show the "entire fairness" of the proposed DIP funding. *See Pepper v. Litton*, 308 U.S. 295, 306 (1939) (finding that a dominant or controlling shareholder is a fiduciary, whose "dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts or engagements with the corporation is challenged the burden is on the . . . stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation and those interested therein."); *see also In re Winstar Cmmcn's, Inc.*, 554 F.3d 382, 412 (3d Cir. 2009) ("A claim arising from the dealings between a debtor and an insider is to be rigorously scrutinized by the courts.") (citation and internal quotation marks omitted); *WHBA Real Estate Ltd. P'ship v. Lafayette Hotel P'ship (In re Lafayette Hotel P'ship)*, 227 B.R. 445, 454 (S.D.N.Y. 1998) ("[S]ince there is an incentive and opportunity to take advantage . . . insiders' loans in a bankruptcy must be subject to rigorous scrutiny."), *aff'd*, 198 F.3d 234 (2d Cir. 1999); *Citicorp Venture Capital, Ltd. v. Comm. of Creditors Holdings Unsecured Claims (In re Papercraft Corp.)*, 211 B.R. 813, 823 (W.D. Pa. 1997) ("[I]nsider transactions are subjected to rigorous scrutiny and when challenged, the burden is on the insider not only to prove the good faith of a transaction but also to show the inherent fairness from the viewpoint of the corporation and those with interests therein."), *aff'd*, 160 F.3d 982 (3d Cir. 1998).

24. Despite claiming it has "immediate cash needs," DIP Mot. ¶ 5, Debtor does not provide a budget or any other meaningful disclosure regarding the specific operating expenses or capital expenditures for which the Proposed DIP Loan will be used.[5] Absent an itemized budget, cash flow projections, and a business plan justifying the proposed expenses, the Debtor cannot establish that the Proposed DIP Loan transaction comports with the sound business judgment

---

[5] Following a recent request for a schedule of expenses that Debtor intends to pay using the proposed DIP Loan, Debtor's counsel provided the following response: "The $100k is to be used for general purposes. 1. $10,000 a month in project manager/ property maintenance. 2. Consultant to assist with financing and reorganization .$25,000-$50,000."

standard, let alone the rigorous scrutiny applied to insider transactions. Debtor should also be required to disclose its principals' pre-petition capital contributions and other amounts expended in connection with the company, together with an explanation of how the proceeds were spent.[6] *See* Schedule E/F at 2-3 [Doc 11] (characterizing pre-petition sums contributed by Fernandez in the amount of $950,000, and Kleinhendler in the amount of $188,000, as "Loans").

25. Moreover, given that the Property has no operating revenue nor any prospect of having operating revenue in the foreseeable future, it is incumbent on Debtor to explain in reasonable detail how it intends to repay the Proposed DIP Loan—whether through exit financing, a sale of Debtor's assets, or otherwise—and demonstrate the feasibility of such approach, prior to accessing any post-petition funding.

26. Debtor has also failed to establish the good faith of Proposed DIP Loan transaction or the inherent fairness to the estate. Debtor's mere assertions of good faith in its motion papers are insufficient to meet its burden, particularly given that they are unsupported by a factual declaration explaining the circumstances under which the Proposed DIP Loan was negotiated, the steps taken to ensure the fairness of the transaction, or the basis for the 9% interest rate.

27. In the event the Court authorizes post-petition financing, additional safeguards should be also imposed over Debtor's use of the Proposed DIP Loan proceeds and the terms of financing, for the benefit of all estate constituencies. While the DIP Motion specifies that the Proposed DIP Loan is intended to be used solely for operating expenses and working capital, the Loan Agreement's definition of "Operating and Capital Expenses," is not so narrowly circumscribed. In addition to authorizing payments for operating expenses and working capital

---

[6] At the 341 Meeting, the U.S. Trustee directed Debtor to provide a schedule of all loans and capital contributions made to the company by Fernandez and Kleinhendler, with an explanation of how the proceeds were used on or before July 8, 2019.

expenditures, it allows DIP Loan proceeds to be used for "such other and further obligations as Debtor's management may deem necessary or advisable." Loan Agreement §§ 1.1, 2.2. In light of Debtor's pre-petition burn rate, spending over one million dollars in roughly two years, *see supra* ¶ 24, and the issues stemming from the environmental violations at the Property, *supra* ¶¶ 10-12, the open-ended nature of the Loan Agreement is troubling. Nor should Fernandez, as the Proposed DIP Loan lender, be permitted to proceed against Debtor upon an event of default, without first having to seek relief from the automatic stay. Loan Agreement § 8.1.

28. Finally, in light of the potential formation of a creditors' committee, the Court should allow sufficient time for the committee to get up to speed on the issues in this Case and provide meaningful input on the Motion before setting the hearing to consider the DIP Motion on a final basis.

## RESERVATION OF RIGHTS

29. This Objection is without prejudice to, and Diatomite fully reserves, its right to raise additional arguments in respect of the DIP Motion and the Proposed DIP Loan or in connection with any final hearing to consider the same. Nothing contained herein operates as a waiver or limitation on any rights, remedies, claims, interests, objections, or defenses of Diatomite or Allan H. Applestein.

## CONCLUSION

WHEREFORE, based upon the foregoing and the entire record before the Court, Diatomite respectfully requests that the Court (i) deny interim approval of the DIP Motion; (ii) schedule the final hearing no earlier than 30 days after the interim hearing; and (iii) grant such other and further relief consistent with this Objection and as is just and appropriate under the circumstances of this Case.

Dated: New York, New York
       June 26, 2019                         VENABLE LLP

                                       By:  */s/ Rishi Kapoor*
                                            Rishi Kapoor
                                            Rockefeller Center
                                            1270 Avenue of the Americas, 24th Floor
                                            New York, New York 10020
                                            Telephone:  (212) 307-5500
                                            Facsimile: (212) 307-5598
                                            Email: rkapoor@venable.com

                                            *Attorney for Diatomite Corporation of America and Allan H. Applestein*