Peter S. Partee, Sr.                                        **Hearing Date:  August 15, 2019 at 11:30 a.m.**
Robert A. Rich
Michael S. Legge
**HUNTON ANDREWS KURTH LLP**
200 Park Avenue
New York, New York 10166
(212) 309-1000
ppartee@huntonak.com
rrich2@huntonak.com
mlegge@huntonak.com

*Attorneys for Robert C. Smith, PLC and Robert C. Smith*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| VIRGINA TRUE CORPORATION, | ) |
| | ) |
| Debtor. | ) |
| | ) |

Chapter 11

Case No. 19-42769 (NHL)

## <u>RESPONSE TO DEBTOR'S OBJECTION TO PROOFS OF CLAIM</u>

Robert C. Smith, PLC ("<u>Smith PLC</u>") and Robert C. Smith ("<u>Smith</u>" and, together with Smith PLC, the "<u>Claimants</u>") hereby submit this response (the "<u>Response</u>") to Debtor's *Motion to Object/Reclassify/Reduce/Expunge Claims* [Docket No. 50], including all exhibits thereto (the "<u>Objection</u>").  In support of the Response, the Claimants submit the affidavit of Robert C. Smith dated August 8, 2019 (the "<u>Smith Affidavit</u>"), attached as **<u>Exhibit A</u>**;[1] the complaint (the "<u>Nonsuited Complaint</u>") filed in Case No. CL18-58 in Richmond County Virginia (the "<u>Nonsuited Litigation</u>"), attached as **<u>Exhibit  B</u>**; an order of nonsuit entered by the Richmond County Circuit

---

[1]  By reference, the Smith Affidavit incorporates the Affidavit of Robert C. Smith dated June 26, 2019, which was previously attached as Exhibit 1 to the *Objection Filed by Robert Coleman Smith on Behalf of Robert C. Smith, PLC* [Docket No. 40] (the "<u>June Smith Affidavit</u>").

Court on July 15, 2019 in the Nonsuited Litigation (the "Order of Nonsuit"), attached as **Exhibit C**. In support of this Reply, and in further support of the Response, Claimants submit as follows:

1.      On June 26, 2019, Claimant filed a proof of claim (Claim 2-1).

2.      In Claim 2-1, Claimants assert a claim against the Debtor in the sum of $201,338.21 as a result of non-payment by the Debtor of fees due to Claimants for services rendered prior to the Debtor's bankruptcy filing.  Claimants attached to Claim 2-1 documentation in support of the claim, including the June Smith Affidavit, a summary of monthly invoices billed to and payments received from Virginia True Corporation ("Virginia True"), a mechanic's lien dated March 19, 2018, a Lis Pendens Notice dated July 19, 2018, and a certain settlement agreement by and among Virginia True, Robert C. Smith, PLC and Robert C. Smith, Esq., Virginia True Corporation, Benito R. Fernandez, and Howard Kleinhendler dated August 9, 2018 (the "Settlement Agreement") attached respectively as Exhibits A, B, C, D, E, and F to Robert C. Smith's supporting affidavit to Claim 2-1.

3.      On June 26, 2019, Claimants filed a proof of claim (Claim 3-1).

4.      In Claim 3-1, Claimants assert a claim against the Debtor in the sum of $555,680.07 relating to causes of actions as described in the Nonsuited Complaint.  Claimants attached to Claim 3-1 the same supporting documentation that was attached to Claim 2-1.

5.      On June 26, 2019, Claimants filed a proof of claim (Claim 4-1), also appending the same supporting documentation as attached to Claim 2-1 and Claim 3-1.  Claim 4-1 was filed in parallel with Claim 3-1 to reflect the fact that the Nonsuited Complaint includes both Smith PLC and Smith as plaintiffs, and, accordingly out of an abundance of caution, two proofs of claim were filed with respect to the underlying state law causes of action.

6.      In the Objection, the Debtor seeks to disallow or "expunge" Claim 2-1, Claim 3-1 and Claim 4-1 pursuant to 11 U.S.C. § 502(b).

7.      For the reasons set forth below, Claimants request that the Court overrule the Objection and to allow Claim 2-1 and Claim 3-1 (together the "Proofs of Claim") in their respective amounts.

## Factual Background

8.      Smith, through his firm, and Smith PLC were engaged by Diatomite Corporation of America ("Diatomite") through its principle and owner Alan Applestein pursuant to an engagement letter dated January 14, 2014 (the "Diatomite Engagement Letter"), attached as Exhibit A to Claim 2-1, to engage in the rezoning of the "Diatomite Property" (as described therein).  Smith Affidavit ¶ 3.

9.      Virginia True bought the Diatomite Property on or around May 1, 2017.  Upon sale of the Diatomite Property to Debtor, Smith and Smith PLC were engaged by Debtor and its shareholders to represent the Debtor in a myriad of matters relating to the continued zoning and development of the Diatomate Property.  *Id.* ¶¶ 4, 6.

10.      In consideration for Smith PLC's services, the Debtor's engagement of Smith and Smith PLC provided for payment at the same hourly rate as provided for in the Diatomite Engagement Letter.  *Id.* ¶ 6.

11.      As a further inducement to engage Smith and Smith PLC to work for Debtor, Debtor's officers, Benito R. Fernandez and Howard Kleinhendler, undertook to pay all outstanding invoices owed to Smith PLC by Diatomite, *id.* ¶¶ 5, 9, and to engage Smith and Smith PLC.  *Id.* ¶ 4.

12.     For almost a year, Claimants provided valuable services to the Debtor, *id.* ¶¶ 5, 7, and Debtor received monthly invoices from Smith PLC.  Smith Affidavit ¶ 3; Claim 2-1 Exhibit B.

13.     The services contemplated by Debtor's engagement of Smith PLC were performed with the expectation of payment, as confirmed by Claimants' repeated requests for payment by the Debtors and the documents and correspondence both before and relating to the Settlement Agreement.  Smith Affidavit ¶¶ 3, 7-13.

14.     During the time Smith and Smith PLC performed professional services for Debtor, at no time did the Debtor or its operating officers ever express any displeasure with Smith's work, or ever suggest that Smith did not deserve the full amounts billed.  *Id.* ¶ 8.  None of the invoices summarized in the annex to Claim 2-1 were ever disputed, and, as late as January 13, 2018, Fernandez had been praising Smith's work to the Cipollones and their counsel.  *Id.*

15.     Immediately after Debtor closed on the Diatomite Property, problems began to emerge with Debtor inducing consultants, contractors and other professionals to work for the company by making false promises.  So embarrassed that Debtor mistreated vendors by not paying them, Smith even paid a portion of Debtor's outstanding delinquent debts.  June Smith Affidavit ¶ 40.

16.     Smith represented Debtor zealously; however, Smith threatened to withdraw and cease his relationship with the Debtor on several occasions due to what he perceived to be dishonest acts initiated by Debtor.  *See, e.g.*, Nonsuited Compliant p. 65.

17.     On January 15, 2018, Smith sent an email to the Debtor's Board of Directors, delivered by email on January 15, 2018, stating his need to withdraw and detailing the dishonest and potentially fraudulent conduct of Fernandez and Kleinhendler.  Smith Affidavit ¶ 7.

18.     Smith and Smith PLC withdrew as counsel on January 31, 2018. *Id.* On March 22, 2018, Smith submitted paperwork to the Virginia State Corporation Commission to resign as registered agent for Debtor. *Id.* ¶ 9. On April 2, 2018, Claimants filed suit against Debtor, Kleinhendler and Fernandez for unpaid bills of $153,432, other debts owed, as well as for fraud, business conspiracy and other matters, and to secure the obligations owed under the suit, Smith PLC also filed mechanic's liens in the aggregate amount of $121,802. *Id.*

19.     Smith and Smith PLC sent the Nonsuited Complaint to the Debtor and filed the Nonsuited Complaint on April 2, 2018. *Id.* In response, on August 9, 2018, Claimants executed the Settlement Agreement with Debtor, Kleinhendler and Fernandez, where Claimants agreed to release all defendants upon the payment of $153,000. *Id.* ¶ 10.

20.     Under the Settlement Agreement, Debtor anticipated borrowing $153,000 against the Diatomite Property. *Id.* ¶ 11. The Settlement Agreement was not contingent upon obtaining financing pursuant to the agreement. Debtor had on hand sufficient funds to pay Claimants, but refused to honor its commitments under the Settlement Agreement. Indeed, Debtor's statement of loans made to the company clearly shows $194,167 as available to the Debtor through company borrowed funds from August 16, 2018 through December 24, 2018. Exhibit B to *Diatomite Corporation of America's Supplemental Objection to Debtor's Motion for Entry of an Order Authorizing Debtor to Obtain Unsecured Post-petition Financing on an Interim and Final Basis from Benito R. Fernandez and Granting Related Relief* [Docket No. 62].

21.     Debtor never objected to any of Claimants' invoices or those amounts as underlying the terms of the Settlement Agreement. Smith Affidavit ¶ 15.

22.     Additionally, paragraph 13 of the Settlement Agreement, clearly states that Claimants are entitled to their attorney's fees against Debtor and other party defendants for their

"reasonable expenses incurred to enforce the terms of this Agreement, including without limitation all costs, arbitration fees, attorneys' fees, expert fees and expenses."

## ARGUMENT[2]

23.    Under section 502(b)(1) of the Bankruptcy Code, a claim may be disallowed to the extent that it is unenforceable against the Debtor. *See* 11 U.S.C. § 502(b)(1).

24.    Pursuant to section 502(a) of the Bankruptcy Code, a filed proof of claim is deemed allowed unless a party in interest objects. *See* 11 U.S.C. § 502(a). The filing of an objection results in a "contested matter," which must be resolved after notice and opportunity for hearing on a motion for relief. Bankruptcy Rule 9014.

25.    As stated in Bankruptcy Rule 3001(f), a properly filed proof of claim is *prima facie* evidence of validity and amount of claim. *In re Friedman*, 184 B.R. 883, 887 (Bankr. N.D.N.Y. 1994), *aff'd*, 184 B.R. 890 (N.D.N.Y. 1995); *In re The Medicine Shoppe*, 210 B.R. 310, (Bankr. N.D. Ill. 1997) (a "[r]ebuttable presumption of validity arises from properly filed claim."). On objection, "[t]o overcome this prima facie evidence, the objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak (In re Reilly)*, 245 B.R. 768, 773 (2d Cir. BAP 2000) (citing *In re Allegheny Int'l, Inc.*, 954 F.2d 167 (3d Cir.1992)). A properly filed proof of claim provides some evidence as to a claim's validity and amount, and is "strong enough to carryover a mere formal objection, without more." *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035 (9th Cir. 2000) (quoting *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991)).

---

[2] Claimants filed the Proofs of Claim *pro se*. Potentially, after the filing of this Response, Claimants, through counsel, may move to amend the Proofs of Claim as may be necessary or appropriate, including to add other theories of recovery.

26.     It is the Debtor's burden to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves," *In re Holm*, 931 F.2d at 623, and a proof of claim "cannot be defeated by mere formal objection and the sworn proof is to be treated as some evidence even when it is denied." *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010) (quoting *In re Sabre Shipping Corp.,* 299 F.Supp. 97, 99 (S.D.N.Y.1969)). If an objection refuting at least one of the claim's essential allegations is asserted, the claimant will then have the burden to demonstrate the validity of the claim to prove by a preponderance of the evidence that the claim should be allowed. *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009) *aff'd*, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (objecting party must produce "evidence equal in force to the *prima facie* case….").  However, "[i]f the objector does not "introduce[ ] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the validity and the amount of the claim." *In re Minbatiwalla*, 424 B.R. at 111 (quoting 4 COLLIER ON BANKRUPTCY 502.03[3][f] (rev. ed. 2007)).

27.     The entirety of the Debtor's objection rests on three grounds: (1) a failure to serve the Nonsuited Complaint within one year of the commencement of the action, as required by Virginia Code § 8.01-277(b), Objection ¶¶ 9-10; (2) improper classification due to alleged defects in Claimants' asserted liens, Objection ¶¶ 11-12; and (3) conclusory assertions that the amounts of the Proofs of Claim are disputed.  Objection ¶ 14.  Each of these arguments is unavailing for the reasons that follow.

### A.    Virginia Code Section 8.01-277(b) is inapplicable.

28.    Virginia Code Section 8.01-277(B) is now inapplicable because the Order of Nonsuit was entered in the Nonsuited Litigation.    Consequently, the portion of the Debtor's objection has no basis.    The full text of the applicable Virginia Code section follows:

> A person, upon whom process has not been served within one year of commencement of the action against him, may make a special appearance, which does not constitute a general appearance, to file a motion to dismiss. Upon finding that the plaintiff did not exercise due diligence to have timely service and sustaining the motion to dismiss, the court shall dismiss the action with prejudice. Upon finding that the plaintiff did exercise due diligence to have timely service and denying the motion to dismiss, the court shall require the person filing such motion to file a responsive pleading within 21 days of such ruling. *Nothing herein shall prevent the plaintiff from filing a nonsuit under § 8.01-380 before the entry of an order granting a motion to dismiss pursuant to the provisions of this section.…*

Va. Code Ann. § 8.01-277(B) (emphasis added).

29.    Dismissal with prejudice pursuant to Section 8.01-277(B) requires three things.    A defendant must file a motion to dismiss, the court must make a finding that the plaintiff did not exercise due diligence and the plaintiff to the action must not have filed a nonsuit under Virginia Code Section 8.01-380 "before the entry of an order granting a motion to dismiss."  *Id.*

30.    It is undisputed that there was no motion to dismiss the Nonsuited Litigation and no order entered with the requisite findings dismissing the Nonsuited Litigation, with or without prejudice.    Smith and Smith PLC moved for a nonsuit pursuant to Virginia Code Section 8.01-380, no party filed a timely objection to the nonsuit motion and the Circuit Court of Richmond County, Virginia entered the Order of Nonsuit.

31.    Now that the Order of Nonsuit has been entered, the Virginia state law claims that were asserted in the Nonsuited Litigation are no longer subject to dismissal with prejudice, and the claims may be asserted in a future complaint.  *See Bowman v. Concepcion*, 283 Va. 552, 564, 722 S.E.2d 260, 267 (2012) (noting that where plaintiff failed to perfect service of process upon

defendant within twelve months, "as permitted by Code § 8.01–277(B), [plaintiff] could have taken a nonsuit as a matter of right pursuant to Code § 8.01–380 and refiled her complaint in accord with the provisions of Code § 8.01–229(E)(3)"); *see also* VA. CODE ANN. § 8.01-229 ("If a plaintiff suffers a voluntary nonsuit as prescribed in § 8.01-380, the statute of limitations with respect to such action shall be tolled by the commencement of the nonsuited action, regardless of whether the statute of limitations is statutory or contractual, and the plaintiff may recommence his action …."). Consequently, Claim 3-1 and Claim 4-1 are no longer subject to objection pursuant to Bankruptcy Code Section 502(b)(1). *In re Residential Capital, LLC*, No. 12-12020 (MG), 2016 WL 4487635, at *5 (Bankr. S.D.N.Y. Aug. 25, 2016) ("To determine whether a claim is allowable by law, bankruptcy courts look to "applicable nonbankruptcy law."") (quoting *In re W.R. Grace & Co.*, 346 B.R. 672, 674 (Bankr. D. Del. 2006)).

**B.    The Priority of the Proofs of Claims is not Disputed.**

32.    Claimants concede that the Proofs of Claim are not entitled to secured priority.

**C.    The Debtor Has Not Shifted the Burden of Proof with Respect to the Amount of the Proof of Claims.**

33.    The Claimants have produced account summaries and related supporting affidavits and documentation as the *prima facie* evidence of the amounts asserted in the Proofs of Claim. The Debtor now, as the objecting party to the Proofs of Claim, bears the initial burden of persuasion and clearly fails to sustain this burden.

34.    While the Debtor does dispute the amounts of the Proofs of Claim, this portion of the Objection is wholly without argument, analysis, particularity, or supporting evidence. Objection ¶ 14. The supporting declaration to the Objection contains a single statement in support of a purported dispute over amounts, asserting that "it is submitted that all the claim amounts and the allegations supporting them are disputed." *Declaration in Support of Debtor's Motion for an*

*Order Expunging the Claims Asserted Against the Debtor by Robert C. Smith, PLC (Claim Nos. 2, 3 and 4)* ¶ 4. This is a textbook example of a conclusory statement. Black's Law Dictionary 329 (9th ed. 2009) (defining "conclusory" as "[e]xpressing a factual inference without stating the underlying facts on which the inference is based").

35.    Parties submit statements in an affidavit for specific purposes and must state the facts necessary to allow a fact finder to draw the legal conclusions that the submitting party seeks to establish. To this purpose, affidavits must set forth facts rather than mere conclusory statements, and statements that are mere conclusions, opinions or ultimate facts are insufficient as competent evidence. *See, e.g.*, *United Steelworkers v. United States*, 361 U.S. 39, 76 n.12 (1959) (Douglas, J., dissenting) (opinion "stated in an affidavit . . . is conclusional only"); *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980) ("The litigant opposing summary judgment, therefore, `may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial.") (citations omitted); *Charvat v. Charvat*, 2013 ND 145, 835 N.W.2d 846 (N.D. 2013) (Affidavits are not competent if they fail to show a basis for actual personal knowledge, or if they state conclusions without the support of evidentiary facts); *Greenwood v. Wierdsma*, 741 P.2d 1079, 1086 (Wyo. 1987) ("We have previously ruled that conclusory affidavits which do not contain facts to support the conclusions have little or no weight").

36.    The Debtor's single sentence objection, supported by the single sentence in the supporting affidavit clearly falls far short of the requirement to offer equivalent evidence as was offered to establish the *prima facie* validity of the amount[s] claimed in Claim 2-1 and Claim 3-1. *See In re Minbatiwalla*, 424 B.R. at 111 (Bankr. S.D.N.Y. 2010) (noting that a "mere formal objection" is insufficient to support a claim objection.) *In re Minbatiwalla*, 424 B.R. 104, 111 (Bankr. S.D.N.Y. 2010); *In re Holm*, 931 F.2d at 623.

37.    Consequently, the Objection's conclusory statement that the outstanding fee portion of the amounts claimed in the Proofs of Claims are disputed, without more, clearly does not constitute competent evidence "as to the validity of the claim or to the excessiveness of its amount," and, consequently, the Claimants "need offer no further proof of the merits of the validity and the amount of the claim."  *In re Minbatiwalla*, 424 B.R. at 111.

### D.    The Outstanding Fees Underling the Proofs of Claim are Constitute Accounts Stated that are Uncontestable by the Debtor

38.    The outstanding fees owed by the Debtor to Smith and Smith PLC constitute "accounts stated" under Virginia law, and, consequently, Debtor has waived any right to contest the amounts or the quality of the underlying services.  *See Buchanan v. Higginbotham*, 123 Va. 662, 97 S.E. 340, 341 (1918) ("While the doctrine as to accounts stated may originally have had its origin in transactions between merchants, it has quite generally been extended to all cases where the relation of debtor and creditor exists.") (citation omitted).

39.    Under Virginia Law, the standard for an "account stated" follows:

> An account stated is where the accounts between the parties have been either actually settled, or are presumed to be so from the circumstance of a party's retaining, for a long time, without objection, the account of the other party, which has been presented to him. showing a balance against him. By the settlement (or implied admission which is considered equivalent) it has become an ascertained debt. All intricacy of account, or doubt as to which side the balance may fall, is at an end; and thus the case is neither within the letter nor the spirit of the exception,

*Ellison v. Weintraub,* 139 Va. 29, 34–35 (1924) (cited by *Landfill Consulting, L.L.C. v. Virginia State Univ.*, 90 Va. Cir. 38 (2015).).

40.    It is uncontested that, Debtor has made no request for any review of the underlying invoices or has otherwise contested the amounts either before or during the pendency of the case. *See, e.g.*, *In re Derby*, 2019 WL 2850973, at *3 (Bankr. E.D. Va. July 1, 2019) (discussing the "law of accounts, under which "when you get the account statement, the account statement is

presumed to be valid unless there is an objection raised within a reasonable period of time.""");[3] *see also* 1A C.J.S. Account Stated § 65 ("A prima facie case is also made in the absence of an objection to a rendered account within a reasonable time, such as where the defendant does not offer evidence that it ever objected to the statements").

41.     Prior to the bankruptcy, the Debtor had the opportunity and more than a reasonable time to investigate or otherwise contest the amounts owed to Smith and Smith PLC.  *James River Bldg. Supp. Co. v. Diversified Dev., Inc.,* 2 Va. Cir. 28, 31 (Henrico County, 1980) (noting that a cause of action under the account stated doctrine is predicated "the express reaching of a balance, and agreement thereon between the parties ... or on retention of a statement by the other party, without objection made, for more than a reasonable time for its investigation.").  Having made no objection, the Debtor has waived the right to contest the amounts owed, and the invoiced amounts are recoverable in full.

**E.     The Outstanding Fees Underling the Proofs of Claim are Recoverable Under Contract or Quantum Meruit.**

42.     The correspondence and documentation of Debtor's engagement of Smith PLC as evidenced the Robert Smith Affidavit must be interpreted as to give meaning to the parties' agreement as a whole.  *E.I. du Pont de Nemours & Co., Inc. v. Shell Oil Co.,* 498 A.2d 1108, 1113

---

[3] As more fully explicated therein:

The "law of account stated" is found in the Restatement of Contracts, § 282:

(1) An account stated is a manifestation of assent by debtor and creditor to a stated sum as an accurate computation of an amount due the creditor. A party's retention without objection for an unreasonably long time of a statement of account rendered by the other party is a manifestation of assent.

(2) The account stated does not itself discharge any duty but is an admission by each party of the facts asserted and a promise by the debtor to pay according to its terms.

*In re Derby*, 2019 WL 2850973, at *3 (quoting RESTATEMENT (SECOND) OF CONTRACTS Ch. 12, topic 2 § 282.).

(Del.1985) ("In upholding the intentions of the parties, a court must construe the agreement as a whole, giving effect to all provisions therein.").

43.      Even if the correspondence and documentation exchanged between the Debtor and Smith and Smith PLC did not give rise to an enforceable contract, Claimants' claims for payment for those services rendered to the Debtor remains valid and enforceable against the Debtor under the doctrine of quantum meruit.   Quantum meruit allows a party to recover in the absence of an express agreement.   To prove a claim for quantum meruit, a party must establish the following elements: "(1) The plaintiff had a reasonable expectation of payment; (2) The defendant should have reasonably expected to pay; or (3) Society's reasonable expectations of security of persona and property would be defeated by non-payment."   *T&M Elec., Inc. v. ProLogis Tr.*, 70 Va. Cir. 403 (2006) (quoting *Nossen v. Hoy,* 750 F.Supp. 740, 744 (E.D.Va.1990)); *Hughes v. Cole*, 251 Va. 3, 25, 465 S.E.2d 820, 834 (1996) (surveying "factors that should be considered in determining the *quantum meruit* value of attorneys' fees" under Virginia law); *C & C Drywall Contractor, Inc. v. Milford Lodging, LLC,* 2010 WL 1178233 at * 3 (Del. Super. Jan. 13, 2011); *Seth Rubenstein, P.C. v. Ganea*, 41 A.D.3d 54, 64, 833 N.Y.S.2d 566, 573 (2007) (law firm's failure to obtain a written retainer agreement did not preclude firm from seeking to recover in quantum meruit under New York law).

44.      Here, Claimants provided to the Debtor the exact type of services it desired.   For nearly a year, and for almost four years prior to the acquisition of the underlying project by the Debtor, Claimants made their extensive legal and industry expertise, contacts and professional relationships available to the Debtor as requested.   It is apparent that Claimants provided services with the expectation of payment by the Debtor.   Smith PLC provided monthly invoices to the Debtor and repeatedly followed up to request payment of outstanding fees, including filing a suit

related to non-payment and negotiating a potential settlement of the fee dispute with the Debtor. The Debtor never challenged Smith PLC's entitlement to the invoiced fees, and, in fact, paid some of those fees, reflecting the Debtor's understanding that Claimants services were not gratuitous. It would be entirely unjust for the Debtor to claim that Smith and Smith PLC are not entitled to payment for the services requested by the Debtor in the amounts that were invoiced. The Debtor never disputed the invoices as to the contemplated scope of work or contested the amounts sought. Thus, under the doctrine of quantum meruit, Claimants are entitled to the value of the services rendered.

## **RESERVATION OF RIGHTS**

45. Claimants further respectfully requests the opportunity to conduct discovery with respect to the issues raised in the Objection. In this regard, Claimants respectfully requests that the hearing on the Objection presently scheduled for August 15, 2019 go forward as a status conference, the court enter a scheduling order permitting discovery and schedule a further hearing with respect to the Objection.

46. Claimants further requests permission of the Court to submit additional briefing on the issues raised in the Objection or at hearing after discovery or further hearings on the Objection have concluded, as may be necessary or appropriate.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for all of the foregoing reasons Claimants respectfully request that the Court overrule the Objection as to Claimants' Proofs of Claim and to allow such claims in accidence with the amounts provided therein, and grant such other relief as the Court deems just and equitable.

Dated: August 8, 2019
      New York, New York

                                    */s/ Michael S. Legge*
                                    Peter S. Partee, Sr.
                                    Robert A. Rich
                                    Michael S. Legge
                                    **HUNTON ANDREWS KURTH LLP**
                                    200 Park Avenue
                                    New York, New York 10166
                                    (212) 309-1000
                                    ppartee@huntonak.com
                                    rrich2@huntonak.com
                                    mlegge@huntonak.com

                                    *Attorneys for Robert C. Smith, PLC*
                                    *and Robert C. Smith*

070127.0000073 EMF_US 71354314v1