<table>
<tr><td>

Rishi Kapoor<br>
VENABLE LLP<br>
Rockefeller Center<br>
1270 Avenue of the Americas, 24th Floor<br>
New York, New York 10020<br>
Telephone: (212) 307-5500<br>
Facsimile: (212) 307-5598<br>
Email: rkapoor@venable.com

</td><td>

Of Counsel:<br>
Caroline P. Gately<br>
(not admitted in New York)<br>
VENABLE LLP<br>
600 Massachusetts Avenue, N.W.<br>
Washington, DC  20001<br>
Telephone: (202) 344-4744<br>
Facsimile: (202) 344-8300<br>
Email: cpgately@venable.com

</td></tr>
</table>

*Counsel for Plaintiff Diatomite Corporation of America*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

In re:                                                              :     Chapter 11
                                                                       :
VIRGINIA TRUE CORPORATION,              :     Case No. 19-42769 (NHL)
                                                                       :
                              Debtor.                       :
                                                                       :
------------------------------------------------------------ x
                                                                       :
DIATOMITE CORPORATION OF AMERICA, :     Adversary Proceeding No.:
                                                                       :     21-_____ (NHL)
                              Plaintiff,                    :
                                                                       :
                                                                       :
vs.                                                               :
                                                                       :
ANTHONY CIPOLLONE and                       :
DOMENICK CIPOLLONE,                          :
                                                                       :
                              Defendants.                 :
------------------------------------------------------------ x

## ADVERSARY COMPLAINT

Plaintiff Diatomite Corporation of America ("Diatomite" or "Plaintiff") files this Adversary Complaint against Defendants Domenick Cipollone and Anthony Cipollone (the "Cipollones" or the "Defendants"), stating as follows:

## INTRODUCTION[1]

1.      In 2017, the Cipollones invested $5 million in Virginia True and received a 32% ownership interest, two seats on Virginia True's Board of Directors, and a contractual right to convert their equity into secured debt at their whim.

2.      Just months before the Petition was filed, while Virginia True was insolvent, inadequately capitalized, and unable to pay its debts as they came due, the Cipollones converted their equity into secured debt. In exchange for their equity interests, the Cipollones received a $5 million promissory note secured by a first-priority mortgage lien on the real property that is Virginia True's sole valuable asset, the purchase of which would not have occurred without the $7 million purchase money loan from Diatomite. At the Cipollones' sole discretion, overnight they went from being an equity investor to a creditor senior to the purchase money lender whose property made the Cipollones' investment possible, Diatomite.

3.      At that time, although the Cipollones only owned 32% of Virginia True, they held two of four director seats and had the contractual right to prevent Virginia True from incurring debt in excess of $500,000.

4.      The effect of the Cipollones' equity-for-debt conversion was to prioritize recovery of the Cipollones' equity investment above the claim of Diatomite, Virginia True's purchase money lender and largest creditor, to the detriment of Diatomite, in breach of Virginia True's pre-existing contractual obligations to Diatomite and in violation of Virginia corporate law.

5.      After converting their equity to secured debt, the Cipollones resigned as directors of Virginia True.

---

[1]   Capitalized terms in this section are defined elsewhere in this Adversary Complaint.

6.      The Cipollone Note came due four months later.  Virginia True was unable pay the Cipollone Note, and filed its bankruptcy Petition a week later.

7.      Plaintiff seeks to (i) subordinate the Cipollones' claims below Diatomite's unsecured claim, pursuant to 11 U.S.C. § 510, and/or (ii) re-characterize the Cipollones' claims as equity interests, pursuant to 11 U.S.C. § 105(a).

8.      Plaintiff further seeks damages directly from the Cipollones under the Virginia Stock Corporation Act, Va. Code Ann. §§ 13.1-653 and 13.1-692.

## JURISDICTION

9.      This is an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure.

10.     This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334, as well as under the standing Order of reference dated December 5, 2012, *In re The Referral of Matters to Bankruptcy Judges*, Administrative Order 601 (E.D.N.Y. Dec. 5, 2012) (Amon, C.J.).

11.     Plaintiff consents to entry of final orders or judgments by the Court with respect to the claims asserted in this Adversary Complaint.

12.     Venue is proper under 28 U.S.C. §§ 1408 and 1409 because of the chapter 11 case pending before the Court.

## PROCEDURAL HISTORY

13.     On May 3, 2019 (the "Petition Date"), Virginia True Corporation ("Virginia True" or the "Debtor") commenced this bankruptcy case (the "Bankruptcy Case" or "Case") by voluntary petition [Bankr. Doc. 1] (the "Petition") under chapter 11 of title 11 of the United States Code, (the "Bankruptcy Code").

14.     Debtor's Bankruptcy Case is a "single asset real estate" case under Section 101(51B) of the Bankruptcy Code.

15.     Debtor remains a debtor-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code.

## PARTIES

16.     Plaintiff Diatomite Corporation of America is a Maryland corporation and the Debtor's largest unsecured creditor.  *See* 20 Largest Unsecured Claims, Schedule E/F at 2 [Bankr. Doc. 11].

17.     Diatomite holds an unsecured claim that is allowable under Section 502 of the Bankruptcy Code.  Diatomite filed a proof of claim, designated as Claim Nos. 8-1 on the ECF Claims Register, for repayment of the Diatomite Note (defined below) and for damages resulting from breach of the Side Letter (defined below) and Diatomite Note.

18.     Defendant Domenick Cipollone was a shareholder and director of Debtor from April 2017 to mid-December 2018.

19.     On information and belief, Domenick Cipollone is and has been a New York resident at all relevant times.

20.     Defendant Anthony Cipollone was a shareholder and director of Debtor from April 2017 to mid-December 2018.

21.     On information and belief, Anthony Cipollone is and has been a New York resident at all relevant times.

22.     Domenick Cipollone and Anthony Cipollone have jointly asserted a single $5 million secured claim against Debtor's estate.

## FACTUAL BACKGROUND

**I.      In 2017, Virginia True purchased the Fones Cliffs Property from Diatomite for $12 million, financed by a $7 million unsecured purchase money loan from Diatomite and the Cipollones' $5 million equity investment.**

23.      On or around March 30, 2017, Virginia True was formed for the purpose of acquiring a 977-acre parcel of undeveloped land located within the environmentally-protected Fones Cliffs area in Richmond County, Virginia (the "Property") from Diatomite.

24.      Virginia True's Articles of Incorporation identify four directors: Benito R. Fernandez ("Fernandez"), Howard Kleinhendler ("Kleinhendler"), and the Cipollones.

25.      A true and correct copy of the Articles of Incorporation is attached as **Exhibit 1**.

26.      At all relevant times, Fernandez served as Virginia True's President.

27.      At all relevant times, Kleinhendler served as Virginia True's Executive Vice President and Secretary.

28.      Virginia True sought to develop the Property into an expansive tourist and entertainment destination.

29.      Virginia True planned to construct hundreds of housing units, a hotel and resort, golf course, retail space, facilities for leisure activities, and an entertainment center.

30.      On or around April 27, 2017, Virginia True purchased the Property from Diatomite for $12 million.

31.      A true and correct copy of the recorded deed transferring title to the Property to Virginia True, which specifies that the "consideration" was $12 million, is attached as **Exhibit 2**.

32.      Virginia True paid Diatomite $5 million of the purchase price in cash.

33.      Virginia True financed the remaining $7 million through a purchase money note, dated April 27, 2017, made by Virginia True and payable to Diatomite (the "Diatomite Note").

34.      A true and correct copy of the Diatomite Note is attached as **Exhibit 3.**

35.     In lieu of a purchase money deed of trust securing repayment of the Diatomite Note, on or around April 27, 2017, Virginia True and Diatomite entered into a Side Letter agreement (the "Side Letter") providing that, among other things, "Virginia True shall not transfer any portion of the assets of Virginia True or encumber the Property, without the prior written consent of" Diatomite's owner, Allan Applestein ("Applestein").

36.     A true and correct copy of the Side Letter is attached as **Exhibit 4**.

## II.     The Cipollones participate in the development project as equity owners and directors, paying $5 million to purchase a 32% equity stake in Virginia True.

37.     Without Diatomite or Applestein's knowledge, on or around April 27, 2017, Virginia True, Fernandez, Kleinhendler, and the Cipollones entered into a Stockholders' Agreement (the "Stockholders' Agreement").

38.     A true and correct copy of the Stockholders' Agreement is attached as **Exhibit 5**.

39.     In connection with the Stockholders' Agreement, the Cipollones made a $5 million capital contribution to Virginia True in exchange for 32% of the company's shares of common stock, two of four director seats, and the contractual right to prevent Virginia True from incurring debt in excess of $500,000.

40.     Virginia True used the $5 million equity investment from the Cipollones to pay the cash portion of the purchase price of the Property.

41.     At the time the Cipollones made their equity investment, the Cipollones were aware or should have been aware that:

      a.     Virginia True had no capital other than the Cipollones' equity investment;

      b.     the Cipollones' equity investment would fund the cash portion of the purchase price of the Property;

        c.       the $7 million balance of the purchase price was owed to Diatomite, as the

               seller; and

        d.       the Property was the sole valuable asset of Virginia True.

42.     The Cipollones were shareholders and directors of Virginia True from no later than April 27, 2017 until December 11, 2018, when they surrendered their stock and resigned as directors upon their election to convert their equity to debt.

**III.    The Cipollones file a lawsuit showing that they are aware of Virginia True's "severe financial status" and fearful that they will not recover their $5 million equity investment.**

43.     In or around 2018, the Cipollones learned of facts that demonstrated or suggested that they would not recover their $5 million equity investment, which caused them to file a lawsuit against Virginia True and its officers alleging Virginia True's "severe financial status" and attributing it to mismanagement.

44.     Virginia True's plans to develop the Property require, among other things, rezoning approval, site planning and building permit approval by County and State governmental authorities, which in turn requires public hearings and legislative approval, among other conditions such as ensuring compliance with environmental laws and regulations.

45.     Virginia True has been unable to secure rezoning approval and has been unable to develop the Property.

46.     In or around November 2017, Virginia True began clearing a 13-acre portion of the Property (the "Site").

47.     On November 30, 2017, Richmond County issued a stop work order for the Site.

48.     On December 20, 2017, a separate agency, the Virginia Department of Environmental Quality ("DEQ"), issued a Warning Letter (the "Warning Letter") to Virginia True.

49.    DEQ conducted additional inspections of the Site on or around February 2, 2018, February 16, 2018, March 23, 2018, March 30, 2018, April 11, 2018, and May 22, 2018.

50.    DEQ issued Notices of Violation (each, a "Notice of Violation" or "NOV") to Virginia True on or around February 15, 2018 (NOV No. 2018-02-PRO-201), April 4, 2018 (NOV No. 2018-04-PRO-201), and August 3, 2018 (NOV No. 2018-08-PRO-201).

51.    On or around October 9, 2018, Virginia Attorney General Mark Herring filed a lawsuit on behalf of DEQ and the Virginia State Water Control Board ("WCB") against Virginia True in the Circuit Court of Richmond County, Virginia, captioned *David K. Paylor, et al. v. Virginia True Corporation*, Case No. CL180000122-00 (the "DEQ Litigation").

52.    DEQ alleges that Virginia True is liable for injunctive relief and civil penalties of up to $32,500 per day for each violation.

53.    On or about September 28, 2018, the Cipollones demanded that Virginia True purchase their stock for $5 million cash or $5 million of secured debt under the Stockholders' Agreement.

54.    Virginia True did not initially do so. Then, on December 4, 2018, the Cipollones filed an action against Virginia True in Richmond County, Virginia, captioned *Cipollone et al. v. Virginia True Corporation*, Case No. CL18-145 (the "Cipollone Litigation"), seeking to enforce the Stockholders' Agreement and compel Virginia True to convert the Cipollones' equity interests to secured debt.

55.    A true and correct copy of the Complaint (the "Cipollone Complaint") filed in the Cipollone Litigation is attached as **Exhibit 6**.

56.    The Cipollone Complaint alleged mismanagement and the "severe financial status" of Virginia True.  Among other things, the Cipollones complain about: (a) Virginia True's inability

8

to develop the Property; (b) the environmental violations and DEQ Litigation described above; (c) delays and failure in paying vendors and consultants for work completed at the Property, including $250,000 in unpaid trade debts; and (d) a failure to obtain any third-party financing.

57.    The Cipollone Complaint alleged that Virginia True lacked "the liquid assets or overall financial ability" to "satisfy the required $5 million buy-out payment in response to the Cipollones' written demand."

## IV.    Knowing Virginia True was unable to pay its debts, the Cipollones forced Virginia True to convert their equity to secured debt.

58.    The Cipollone Complaint demanded the conversion of equity to debt issued by Virginia True in the form of a $5 million promissory note with a four-month maturity, secured by a deed of trust against the Property.

59.    Two days after the Cipollones filed their lawsuit, Virginia True assented to the Cipollones' demands.

60.    On December 6, 2018, Virginia True issued a $5 million promissory note payable to the order of the Cipollones (the "Cipollone Note") and a deed of trust (the "Cipollone Deed of Trust") granting a first priority lien in favor of the Cipollones upon the Property.

61.    True and correct copies of the Cipollone Note and Deed of Trust are attached as **Exhibit 7** and **Exhibit 8**, respectively.

62.    The Cipollone Deed of Trust was recorded in the Clerk's Office of Richmond County Circuit Court on December 11, 2018.

63.    Virginia True issued and delivered the Cipollone Note or Cipollone Deed of Trust without informing Diatomite or Applestein and without seeking or obtaining Applestein's consent.

64.    On December 11, 2018, after securing a superior debt position in front of Virginia True's creditors, the Cipollones surrendered their stock and resigned as directors of Virginia True.

9

65.     True and correct copies of the Cipollones' notices of resignation as Virginia True directors are attached as **Exhibit 9**.

66.     At the time of the transfers, Virginia True was insolvent.

67.     Alternatively, as a result of the transfers, Virginia True became insolvent.

68.     The Cipollone Note matured on April 27, 2019, at which time Virginia True was required to pay the $5 million principal balance, plus all accrued and unpaid interest and other charges.

69.     No payments have been made on the Cipollone Note.

## V.    The Debtor was inadequately capitalized, was unable to obtain financing, and did not generate operating revenue.

70.     Virginia True does not have and has never had operating revenue or other income.

71.     Other than the $7 million of seller financing from Diatomite, Virginia True attempted but was unable to obtain financing from third-party lenders prior to its bankruptcy filing.

72.     Prior to the filing of the Bankruptcy Case, Virginia True did not have working capital to fund its operations or development efforts.

73.     Prior to its bankruptcy filing, despite its attempts to raise capital to fund operations and its development efforts, Virginia True was unable to obtain any financing from third party lenders or investors.

74.     On information and belief, based on the Debtor's representations in its Bankruptcy Case, the Cipollones threatened to refuse and/or refused to consent to any third-party financing to fund Virginia True's development efforts or to pay its day-to-day expenses.

75.     Prior to its bankruptcy filing, Virginia True relied exclusively on monies from its officers, Fernandez and Kleinhendler, to pay for portions its ongoing operating expenses to its vendors, consultants, and professionals.

76.     Between mid-November 2018 and the end of December 2018, Fernandez made seven deposits to Virginia True totaling $130,000, and Kleinhendler made one deposit of $970.79.

77.     In 2019, prior to the Petition Date, Fernandez made five deposits to Virginia True totaling $45,500, and Kleinhendler made two deposits totaling $6,123.16.

78.     At all relevant times, Virginia True was inadequately capitalized.

79.     Debtor filed its Petition because it could not pay the Cipollone Note on its April 27, 2019 maturity date.

80.     As of the Petition Date, Debtor's liquid assets consisted of $2,452.00 of cash and cash equivalents, $27,000 in a "Cash Bond With Richmond County, Virginia Re: Stabilization of 13 Acres of Cleared Land," and $1,100 of office furnishing and equipment.

81.     As of the Petition Date, Debtor had no accounts receivable, inventory, or investments.

82.     As of the Petition Date, the Debtor's liabilities were in excess of $13.5 million.

83.     The Property, in its "as-is" condition, was worth less than Virginia True's debts at the time of and/or as a result of the Cipollones' stock-for-secured debt conversion.

**FIRST CAUSE OF ACTION**
Subordination of the Cipollones' Claims
Under 11 U.S.C. § 510(a), (c)

84.     Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Adversary Complaint as if fully restated herein.

85.     Under Section 510(a) of the Bankruptcy Code, a subordination agreement is enforceable to the same extent that such agreement is enforceable under non-bankruptcy law. Section 6.7 of the Stockholders' Agreement contains the Cipollones' agreement to subordinate repayment of loans until the company satisfies certain financial thresholds.

86.     Under Section 510(c) of the Bankruptcy Code, the Court may subordinate a claimant's claim to all or part of another allowed claim when the claimant has engaged in inequitable conduct that has resulted in an injury to creditors or provided an unfair advantage to the claimant, so long as subordination is not inconsistent with the Bankruptcy Code.  The equities under the circumstances dictate that the Cipollones' claims be equitably subordinated below Diatomite's claim.

87.     As alleged above, the Cipollones, as directors and shareholders of Virginia True, engaged in inequitable conduct by threatening to refuse and/or refusing to consent to any third-party financing to fund Virginia True's development efforts or to pay its day-to-day expenses and by converting their equity to secured debt, in breach of the Side Letter, to the detriment of Diatomite, as a creditor of Virginia True, and to the Cipollones' benefit.

88.     The Cipollones' stock, if it had any value at all, was worth far less than $5 million of secured debt issued to the Cipollones.

89.     As alleged above, the Cipollones were directors and therefore were fiduciaries of Virginia True and statutory insiders under Section 101(31)(B)(i) of the Bankruptcy Code.

90.     At the time the Cipollones converted their equity to secured debt, Virginia True was either insolvent, or, in the alternative, was rendered insolvent by the Cipollones' actions.

91.     At the time of and/or as a result of the conversion, the "as is" value of the Property was worth less than Virginia True's debts.

92.     In their capacities as insiders, the Cipollones were aware of the severe challenges facing Virginia True—including the pending DEQ Litigation, the inability to proceed with any development efforts, and that Debtor was insolvent, inadequately capitalized and/or unable to pay its debts as they came due.

93.     As directors, the Cipollones owed fiduciary duties to Virginia True.

94.     Nevertheless, the Cipollones' decision to demand the equity-for-secured debt conversion was based on their non-public knowledge of financial, operational, and legal challenges facing Virginia True.

95.     The Cipollone Note and Deed of Trust were issued two days after the Cipollone Litigation was filed, before Virginia True was served with the Cipollone Complaint.

96.     The issuance of the Cipollone Deed of Trust without the consent of Applestein is inequitable as a clear breach of Virginia True's obligations to Diatomite under the Side Letter.

97.     Upon information and belief, the Cipollones were aware of Virginia True's obligations under the Side Letter.

98.     The issuance of the Cipollone Note and Deed of Trust are further inequitable as violations of the Virginia Stock Corporation Act, Va. Code Ann. § 13.1-653, because, after giving effect to the transaction, Virginia True was unable to make any payments on the Cipollone Note before or after it matured on April 27, 2019, and was not able to pay its debts as they became due.

99.     Even if the Cipollones' equity investment could be considered a loan (which it cannot), repayment would be subordinated to the claim of Diatomite because Virginia True never had annual retained earnings and cash or cash equivalents necessary to permit the company to repay any such investment to the Cipollones under Section 6.7 of the Stockholders' Agreement.

100.     The issuance of the Cipollone Note and Deed of Trust violated Section 6.7 of the Stockholders' Agreement, which does not permit the Company to repay loans from Major Stockholders (as defined in the Stockholders' Agreement) unless "the Company's annualized annual retained earnings and cash or cash equivalents shall each exceed the amount of the loan by a 2:1 ratio." The Cipollones were Major Stockholders under the Stockholders' Agreement.

101.    At no time did Virginia True meet the Section 6.7 thresholds.

102.    Equitable subordination of the Cipollones' claims is not inconsistent with the Bankruptcy Code.  To the contrary, it is consistent with the absolute priority rule, which dictates that that equity holders share in the distribution of the estate's assets only after legitimate creditors recover in full.

103.    As a result of the foregoing, the Cipollones' claims should be contractually subordinated below the claim of Diatomite under Section 510(a) of the Bankruptcy Code and/or equitably subordinated below the claim of Diatomite under Section 510(c)(1) of the Bankruptcy Code.

104.    Under Section 510(c)(2) of the Bankruptcy Code, upon subordination of the Cipollones' claims, the Deed of Trust securing their claims should be transferred to the estate.

## SECOND CAUSE OF ACTION
Recharacterization of the Cipollones' Claims
Under 11 U.S.C. § 105(a)

105.    Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Adversary Complaint as if fully restated herein.

106.    Under Section 105(a) of the Bankruptcy Code, the Cipollones' claims should be recharacterized from a secured debt to an equity interest.

107.    The circumstances underlying the transactions giving rise to the Cipollones' claims establish that recharacterization is warranted and appropriate.

108.    The Cipollones' purported claims arose not from a loan but from a clear intent to make an equity contribution *ab initio.*

109.    At the time of the Cipollones' $5 million equity investment, no "certificate of indebtedness," promissory note, or other debt instrument was issued, nor were there any other hallmarks of a debt transaction such as a maturity date, interest rate, or schedule of payments.

110. At all times Virginia True was inadequately capitalized and had no income, access to capital, or source of funding from which it could repay the Cipollones' equity investment.

111. Even if the Cipollones' equity investment could be considered a loan (which it cannot), repayment would be subordinated to the claim of Diatomite because Debtor never had the annual retained earnings and cash or cash equivalents necessary to permit the company to repay any such investment to the Cipollones under Section 6.7 of the Stockholders' Agreement.

112. As a result of the foregoing, the Cipollones' claims should be recharacterized as an equity interest in Virginia True.

## THIRD CAUSE OF ACTION
Violation of Virginia Stock Corporation Act, Va. Code Ann. §§ 13.1-653 and 13.1-692

113. Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Adversary Complaint as if fully restated herein.

114. The Virginia Stock Corporation Act, Va. Code Ann. § 13.1-653, provides that:

C. No distribution may be made if, after giving it effect:

1. The corporation would not be able to pay its debts as they become due in the usual course of business; or

2. The corporation's total assets would be less than the sum of its total liabilities plus (unless the articles of incorporation permit otherwise) the amount that would be needed, if the corporation were to be dissolved at the time of the distribution, to satisfy the preferential rights upon dissolution of shareholders whose preferential rights are superior to those receiving the distribution.

115. The Cipollone Note and Deed of Trust constitute a distribution in violation of Va. Code Ann. § 13.1-653.

116. Under Va. Code Ann. § 13.1-692, "A director who votes for or assents to a distribution [made in violation of the Virginia Stock Corporation Act] is personally liable to the

corporation and its creditors for the amount of the distribution that exceeds what could have been distributed without violating [the Act]."

117.     The Cipollones, acting as insiders, Major Stockholders, and directors of Virginia True, assented to the distribution to themselves of the Cipollone Note and Deed of Trust in violation of the Virginia Stock Corporation Act and Virginia True's obligations to Diatomite, and are personally liable to Diatomite in an amount to be determined.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests the following relief:

(a)     On the First Cause of Action,  under Section 510(a), (c)(1)-(2) of the Bankruptcy Code, subordination of the Cipollones' claims below the claim of Diatomite; and upon subordination thereof, transfer of the Deed of Trust securing the Cipollone Note to the Debtor's estate;

(b)     On the Second Cause of Action, under Section 105(a) of the Bankruptcy Code, re-characterization of the Cipollones' claims as equity interests in Debtor;

(c)     On the Third Cause of Action, under the Virginia Stock Corporation Act, Va. Code Ann. §§ 13.1-653 and 13.1-692, damages in an amount to be determined;

(d)     An award of reasonable attorneys' fees and costs; and

(e)     Such other and further relief as the Court may deem appropriate.

Dated: New York, New York
       July 12, 2021

                           VENABLE LLP

               By:   */s/ Rishi Kapoor*
                     Rishi Kapoor
                     Rockefeller Center
                     1270 Avenue of the Americas, 24th Floor
                     New York, New York 10020
                     Telephone: (212) 307-5500
                     Facsimile: (212) 307-5598
                     Email: rkapoor@venable.com

                     Of Counsel:
                     Caroline P. Gately
                     (not admitted in New York)
                     600 Massachusetts Avenue, N.W.
                     Washington, DC  20001
                     Telephone: (202) 344-4744
                     Facsimile: (202) 344-8300
                     Email: cpgately@venable.com

                     *Counsel for Plaintiff Diatomite*
                     *Corporation of America*