Douglas J. Pick  
Eric C. Zabicki  
**PICK & ZABICKI LLP**  
Counsel to the Debtor  
369 Lexington Avenue, 12th Floor  
New York, New York 10017  
(212) 695-6000

Hearing Date: April 26, 2022  
Time: 4:00 p.m.

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
----------------------------------------------------------x  
In re:  
VIRGINIA TRUE CORPORATION,

Chapter 11  
Case No. 19-42769 (NHL)

Debtor.  
----------------------------------------------------------x

### AMENDED NOTICE OF DEBTOR'S MOTION FOR AN ORDER ESTABLISHING BIDDING AND NOTICING PROCEDURES, AND SETTING DATES, IN CONNECTION WITH THE DEBTOR'S SALE OF ITS REAL PROPERTY AND GRANTING RELATED RELIEF

**PLEASE TAKE NOTICE**, that upon the application, dated March 28, 2022, and the exhibits annexed thereto, copies of which were previously served upon you, Virginia True Corporation, the debtor and debtor-in-possession herein (the "Debtor"), by and through its undersigned counsel, will move this court at a telephonic hearing before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, on April 26, 2022 at 4:00 p.m., or as soon thereafter as counsel may be heard, for entry of an Order, pursuant to Rules 2002, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Bankruptcy Rules"), establishing bidding and noticing procedures, and scheduling auction and hearing dates, in connection with the Debtor's proposed sale of its real property, and granting related relief, and along with such other and further relief as this Court may deem just and proper (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the Motion shall (i) be made in writing, (ii) conform to the Bankruptcy Rules and the Local Bankruptcy Rules, (iii) set forth the name of the objecting party, the nature and amount of any claim or

interest held or asserted against the Debtor's estate or property, the basis for the objection and the specific grounds therefor, (iv) be filed with the Court with a copy to the chambers of Honorable Nancy H. Lord, together with proof of service thereof, and (v) be served in a manner so as to be received by Pick & Zabicki LLP, 369 Lexington Avenue, 12th Floor, New York, New York 10017, Attn: Douglas J. Pick, Esq., not less than seven (7) days prior to the hearing date.

**PLEASE TAKE FURTHER NOTICE**, that to appear telephonically at the hearing on the Motion, parties shall call: (888) 363-4734, and enter access code: 4702754#, and shall observe the additional instructions set forth on the Court's website at http://www.nyeb.uscourts.gov/content/judge-nancy-hershey-lord.

**PLEASE TAKE FURTHER NOTICE** that all parties are asked to use *eCourt Appearances* to register their hearing appearances not later than 24 hours in advance of the hearing. Attorneys with a CM/ECF account may find the program under the "Utilities" menu after logging on to CM/ECF. Those without CM/ECF accounts may access the program on the Court's website at https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl. For more information on *eCourt Appearances*, including a tutorial on how to use the program, please go to https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances.

Dated: New York, New York
      March 29, 2022

                                            **PICK & ZABICKI LLP**
                                            Counsel to the Debtor

                              By: _____
                                            Eric C. Zabicki, Esq.
                                            369 Lexington Avenue, 12th Floor
                                            New York, New York 10017
                                            (212) 695-6000

Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                    Chapter 11
VIRGINIA TRUE CORPORATION,                                Case No. 19-42769 (NHL)

                        Debtor.
---------------------------------------------------------x

## DEBTOR'S APPLICATION FOR AN ORDER ESTABLISHING BIDDING AND NOTICING PROCEDURES, AND SETTING DATES, IN CONNECTION WITH THE DEBTOR'S SALE OF ITS REAL PROPERTY AND GRANTING RELATED RELIEF

TO THE HONORABLE NANCY HERSHEY LORD,
UNITED STATES BANKRUPTCY JUDGE:

        Virginia True Corporation, the debtor and debtor-in-possession herein (the "Debtor"), as and for its application (the "Application") for the entry of an Order, substantially in the form attached hereto as *Exhibit "A"* (the "Bidding Procedures Order"), and pursuant to Rules 2002, 6004 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 6004-1 of the Local Bankruptcy Rules for the Eastern District of New York (the "Local Bankruptcy Rules"), establishing bidding and noticing procedures, and scheduling auction and hearing dates, in connection with the Debtor's proposed sale of its real property, and granting related relief, respectfully represents and alleges as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief sought herein are Bankruptcy Rules 2002, 6004 and 9006 and Local Bankruptcy Rule 6004-1.

## BACKGROUND

2.      The familiarity of the Court, the Debtor's creditors and other parties-in-interest with the facts and circumstances underlying this case is presumed for purposes of the Motion.

3.      Briefly, the Debtor is a Virginia corporation formed in March 2017 for the purpose of acquiring and developing a parcel of land located in Richmond County, Virginia (the "Property"). The Property consists of approximately 964.11 acres of undeveloped land, in three (3) separate parcels (identified in the Richmond County tax records as tax parcels 4-1, 4-2 and 5-30), commonly known as "Fones Cliffs".[1] According to an appraisal prepared by Christian P. Kaila & Associates (of Fredericksburg, Virginia), the Property has an estimated "as is" fair market value of $4,000,000 as of December 17, 2021. A copy of that appraisal has been shared with all counsel involved in this case and is available for inspection by interested parties upon request.

---

[1] Prior to the Debtor's acquisition of the Property, and in 2015, the Property was granted "Phase I" rezoning so as to permit the construction of 718 residential homes/units, a 160-room hotel, an 18-hole golf course and 30,000 square feet of retail space. Upon its acquisition of title to the Property, the Debtor continued with rezoning by submitting a "Phase II" zoning application and obtaining a necessary wetlands delineation approved by the U.S. Army Corps of Engineers and other relevant studies. The Property is located within a designated "Opportunity Zone" which was created pursuant to the changes made to the federal tax laws in 2017 to offer tax incentives for long term investments in areas deemed to have high poverty rates and sluggish job and business growth.

4. On May 3, 2019 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the Bankruptcy Code with this Court and an Order for Relief was entered. The Debtor remains in possession of its property and has continued to manage its business and affairs as a debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner or committee has been appointed. The Debtor's case is a "single asset real estate" case pursuant to § 101(51B) of the Bankruptcy Code.

5. The Debtor acquired title to the Property from Diatomite Corporation of America ("Diatomite") by way of a Deed dated April 27, 2017 for the sum of $12,000,000. In consideration thereof, Diatomite was paid the sum of $5,000,000 at closing (funded by a capital contribution to the Debtor made by Anthony Cipollone and Domenick Cipollone (collectively, the "Cipollones")) and was provided with an unsecured promissory note in the principal amount of $7,000,000. The Cipollones have filed Proofs of Claim in this case (collectively, the "Cipollone Claims") on account of the aforementioned $5,000,000 capital contribution the repayment of which the Cipollones allege is secured by a lien against the Property pursuant to the Deed of Trust. Both the Debtor and Diatomite have sought (among other relief with respect to the Cipollone Claims) to avoid any lien asserted against the Property by the Cipollones as a fraudulent conveyance and/or to subordinate the Cipollone Claims to claims of other creditors of the Debtor (*see Virginia True Corporation v. Cipollone*, Adv. Proc. No. 19-01118 (NHL) and *Diatomite Corporation of America v. Cipollone*, Adv. Proc. No. 21-01059 (NHL)).[2]

---

[2] Other than the Deed of Trust purportedly securing the $5,000,000 Cipollone Claims, there are no other know liens, claims or encumbrances against the Property. However, as this Court is aware, the Property is the subject of an environmental enforcement action commenced in 2018 in the Circuit Court of Richmond County (Virginia) entitled *David K. Paylor, Director of the Department of Environmental Quality and the State Water Control Board v. Virginia True Corporation*, Case No. CL18-122. Immediately prior to the Petition Date, the Debtor had been in the process of negotiating a settlement of the environmental claims with the plaintiffs in the aforementioned action. Those negotiations continued subsequent to the Petition Date and, ultimately, led to a resolution of the environmental claims upon the terms

6.	The Debtor will shortly be filing a proposed Chapter 11 Plan of Liquidation (the "Plan") which will be implemented through a sale of the Property to the highest bidder at an auction (the "Auction") which will be conducted with the assistance of Auction Advisors in accordance with Court-approved bid procedures with the proceeds of the sale being paid to creditors under the Plan in order of statutory priority. In furtherance thereof, the Debtor has entered into a proposed Purchase and Sale Agreement (the "PSA", a copy of which is attached hereto as *Exhibit "B"*) with Fones Cliff Development, LLC (the "Proposed Purchaser") pursuant to which, and among other things, the Proposed Purchaser has agreed to purchase the Property for the sum of $4,200,000, subject to any higher or better offers made at the Auction. For the purpose of disclosure, the Proposed Purchaser's ownership consists of: (a) Pan American Claim Investors LLC ("Pan American") as majority member[3]; and (b) Benito R. Fernandez and Howard Kleinhendler (who are also the Debtor's sole shareholders) as minority members.

7.	Simultaneously with the filing of the instant Application, the Debtor is filing separate motions seeking the entry of Orders: (a) pursuant to §§ 105(a) and 363(b), (f) and (m) of the Bankruptcy Code and Bankruptcy Rule 6004, approving the Debtor's proposed sale of the

---

of a proposed Consent Decree. A motion seeking approval of said resolution is pending before this Court. (*See* ECF Doc. No. 161). The Debtor's attempted development of the Property has also been extensively opposed by environmentalists.

[3] The Court may recall that Pan American had a tentative agreement to purchase the Cipollone Claims (*see* ECF Doc. No. 270) which, as more fully discussed below, was thwarted by the actions of Diatomite. As this Court was advised, the Cipollones had apparently made a decision to resolve the endless litigation in this case by assigning their claims to Pan American. Unfortunately, the assignment of the Cipollone Claims was conditioned on the Cipollones being totally indemnified from any and all future claims or litigation. When it became aware of this element of the agreement, and in addition to filing an objection to the Debtor's motion for approval of the agreement (*see* ECF Doc. No. 270), Diatomite immediately commenced an action against the Cipollones entitled *Diatomite Corporation of America v. Cipollone*, Adv. Proc. No. 21-01059 (NHL). (*See* ECF Doc. No. 281). Upon information and belief, Pan American had also made an (alternative) proposal to acquire Diatomite's claim which was rejected by Diatomite.

Property to the Proposed Purchaser, free and clear of all liens, encumbrances and interests, pursuant to the terms of the PSA, but subject to any higher or better offers made at the Auction; and (b) pursuant to § 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014, authorizing the Debtor's retention and employment of Auction Advisors as its auctioneer to market and sell the Property at the Auctions.

## RELIEF REQUESTED

8. By this Motion, the Debtor seeks the entry of the Bidding Procedures Order establishing and approving the bidding and noticing procedures (as more fully discussed below), and scheduling auction and hearing dates, in connection with the sale of the Property.

**A.  Proposed Bidding Procedures**

9. The Debtor respectfully requests approval of the following bidding procedures in connection with the proposed sale of the Property:

(a) the Proposed Purchaser's $4,200,000 offer for the Property and the PSA be approved as to form;[4]

(b) any competing offer for the Property (a "Competing Offer"), and any person or entity submitting a Competing Offer (a "Competing Offeror"), must satisfy and comply with the following terms and conditions:

(i) provide for a purchase price of at least $260,000 more than the purchase price as provided for in the PSA (constituting a $50,000 initial overbid plus a $210,000 topping fee), *i.e.*, a total Competing Offer of at least $4,460,000;

(ii) be on substantially the same terms and conditions of the PSA;

---

[4] The Court may recall the constant refrain from Diatomite throughout this case that the (allegedly) secured Cipollone Claims "easily should be avoided, subordinated, or recharacterized, leaving the Cipollones or their assignee to recover only after the Debtor's true creditors have been paid in full." (*See, e.g.*, ECF Doc. No. 282 at ¶6). Thus, it is presumed that Diatomite will not object to any proposed sale of the Property on the basis that the stalking horse bid amount should be higher than the $5,000,000 amount of the Cipollone Claims.

5

    (iii) not be contingent upon the receipt of financing necessary to its consummation, and the Competing Offeror shall have demonstrated evidence of its ability to conclude the transaction upon the terms and conditions of the PSA, without delay and in cash;

    (iv) not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror;

    (v) in order to qualify to bid at the Auction, the Competing Offeror shall, by not later than the Qualification Deadline (defined below), provide to the Debtor's counsel, Pick & Zabicki LLP: (a) a certified check made payable to "Pick & Zabicki, LLP as Attorneys", in the sum of $223,000 (representing 5% of the initial $4,460,000 minimum Competing Offer amount) as a down payment; and (b) a completed and executed copy of a sale agreement, in the form provided by the auctioneer and posted on the auctioneer's website (or one redlined against such), which contains terms that are no worse than the terms of the Proposed Purchaser's PSA, as determined by the Debtor in consultation with its professionals, and shall be for the amount of the initial Competing Bid (the "Competing PSA");

    (vi) in the case of any subsequent Competing Offer (a "Subsequent Competing Offer") received from any party, which may, include, without limitation, the Proposed Purchaser (after a prior Competing Offer has been received), which satisfies the conditions set forth above, such Competing Offer shall provide for an aggregate consideration at least $25,000 in excess of that provided by the prior better offer and shall otherwise comply with all conditions of the PSA (*i.e.*, each incremental bid must be not less than $25,000 in excess of the Competing Offer, and not less than $25,000 in excess of each bid following the first Competing Offer); and

    (vii) if determined to be the highest bidder for the Property (the "Successful Bidder"): (a) provide a topping deposit to bring the down payment amount up to ten percent (10%) of the final successful bid amount within one (1) business day; and (b) re-execute a final PSA that conforms to the Competing PSA at the final purchase price bid before the close of business on the date of the Auction;

(c)    all bids shall be "firm offers" for the Property on an "as is" basis;

(d)    any sale shall be subject to approval by order of this Court; and

(e)    no break up or topping fee will be required to be separately paid by the Successful Bidder; *provided however*, that in the event that it is not the Successful Bidder, the Proposed Purchaser will receive a fee of $210,000

(representing 5% of its $4,200,000 stalking horse offer for the Property) directly from the Debtor at closing (said topping fee being incorporated within the $260,000 initial overbid amount).

10. With respect to the proposed topping fee, the Proposed Purchaser has expended a significant amount of time and expenses (including the payment of counsels' fees) in conducting its due diligence regarding the Property and in negotiating the terms of the PSA. Thus, the Proposed Purchaser has insisted upon the inclusion of the proposed $210,000 topping fee (again representing 5% of its $4,200,000 stalking horse offer for the Property) in connection with the solicitation of higher or better offers (*see* Section 21.2 of the PSA). Again, the Debtor has structured the proposed topping fee so that it is encompassed in the $260,000 initial overbid amount and will not be separately payable by the Successful Bidder.

11. The Debtor respectfully submits that any chilling effect that the inclusion of the topping fee in within the initial overbid amount may have on potential bids is a "necessary evil" and is mitigated by the substantial nature of the Proposed Purchaser's "as is", cash offer for the Property. A good deal of case law supports the payment of a "break-up" fee in bankruptcy, which has become an established practice. *See, e.g.*, In re 995 Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (bidding incentives may be "legitimately necessary to convince a white knight to enter the bidding by providing some form of compensation for the risks it is undertaking") (citation omitted); In re Integrated Resources Inc., 135 B.R. 746 (Bankr. S.D.N.Y), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992). The Debtor believes that a relatively modest topping fee is fair and reasonable and compensates the Proposed Purchaser for the time and expense in negotiating the PSA and agreeing to serve as a "stalking horse" bidder, without unduly interfering with the Debtor's ability to realize maximum possible value for the Property.

12. Respectfully, the proposed bidding procedures are reasonable and are designed to maximize the value of the Property.

**B.    Auction and Hearing Dates and Proposed Notice Thereof**

13. Pursuant to Bankruptcy Rules 2002(a)(2) and 6004(a), creditors are entitled to twenty-one (21) days' notice in connection with a proposed sale "unless the court for cause shown shortens the time or directs another method of giving notice." Bankruptcy Rule 2002(c)(1) governs the content of the notice of proposed sale and requires that notice include, *inter alia*, the terms and conditions of any sale and the time fixed for objections. A general description of the assets to be sold is also required.

14. The Debtor hereby requests that the Court direct that:

(a) the Auction be conducted, virtually, by Auction Advisors on a date and at a time established by the Court in consultation with the Debtor and Auction Advisors;

(b) any entity wishing to bid at the Auction qualify to do so (as provided under the Bidding Procedures Order) by not later than 12:00 p.m. on the date prior to the Auction (the "Qualification Deadline");

(c) that in the event that no Competing Offeror qualifies to bid at the Auction by the Qualification Deadline, the Auction may be cancelled without further notice; and

(d) a hearing with regard to the Sale Motion so as to consider the approval of the sale of the Property to the successful bidder be scheduled for the Court's earliest available date after the date of the Auction.

15. The Debtor proposes to serve a Notice, substantially in the form attached to the Bidding Procedures Order as *Exhibit "A"*, together with the Debtor's motion to approve the proposed sale of the Property, upon: (a) all known creditors of the Debtor or their counsel if known; (b) the holders of the interests in the Debtor; (c) all counterparties to executory contracts or leases with the Debtor; (d) the United States Trustee; (e) the Dept. of Treasury - Internal Revenue Service;

(f) the New York State Dept. of Taxation and Finance; (g) the New York City Dept. of Finance; (h) the County of Richmond, Virginia; (i) counsel to the Proposed Purchaser; (j) all persons who have filed notices of appearance in the Debtor's case; and (k) any person or entity known to the Debtor which has shown any interest in acquiring the Property, by first class mail, within three (3) business-days following the entry of the Bidding Procedures Order. The Debtor believes that the Notice provides sufficient information relating to the proposed sale of the Property to permit a party to be fully informed of the nature and terms of the proposed transaction in accordance with Bankruptcy Rule 2002(c)(1).

16. The Debtor further proposes to: (a) request that Auction Advisors post a listing on its internet website, and to send one (1) or more e-mail "blasts" and/or direct mail flyers to its list of potential real estate purchasers, incorporating the material provisions of the Notice; and (b) publish a notice, substantially in the form attached to the proposed Bidding Procedures Order as *Exhibit "B"*, in the *Northern Neck News* (a weekly newspaper published in Warsaw, Virginia which is the county seat of Richmond County) not less than one (1) time on a date that is not less than seven (7) days prior to the auction.

17. Under the facts and circumstances presented, the Debtor submits that the proposed notice procedures would provide parties in interest with ample notice and opportunity to be heard as to the relief requested and also afford potential competing bidders sufficient time to formulate any bids for the Property.

## CONCLUSION

18. Based upon the foregoing, it is respectfully requested that this Application be granted in its entirety along with such other and further relief as may be just and proper.

Dated: New York, New York
March 28, 2022

                                          **PICK & ZABICKI LLP**
                                          Counsel to the Debtor

                              By: _____
                                  Douglas J. Pick
                                  369 Lexington Avenue, 12th Floor
                                  New York, New York 10017
                                  (212) 695-6000