UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:
VIRGINIA TRUE CORPORATION,

Debtor.
-----------------------------------------------------------x

Chapter 11
Case No. 19-42769 (NHL)

**ORDER ESTABLISHING BIDDING AND NOTICING PROCEDURES, AND SETTING DATES, IN CONNECTION WITH THE DEBTOR'S SALE OF ITS REAL PROPERTY AND GRANTING RELATED RELIEF**

**UPON** the motion (the "Motion") of Virginia True Corporation, the debtor and debtor-in-possession herein (the "Debtor"), dated March 28, 2022, and the exhibits annexed thereto, for entry of an Order establishing bidding and noticing procedures, and scheduling sale and hearing dates, in connection with the Debtor's proposed sale of its real property (the "Property"); and upon all the pleadings and proceedings had in this case; and upon the record of the hearings held on April 26, 2022, May 10, 2022, June 14, 2022, July 12, 2022 and August 4, 2022, with regard to the Motion; and after due deliberation and sufficient cause appearing therefor; it is

**ORDERED**, that a public sale (the "Public Sale"), if necessary be conducted, virtually, on Thursday, November 3, 2022, commencing at 12:00 p.m. (Eastern Time) with the assistance of its broker, Auction Advisors (the "Broker"), at which the Debtor will offer the Property for sale to potential bidders, if any, interested in placing an offer(s) for the Property which is higher or better than the offer submitted by Fones Cliff Development LLC (the "Proposed Purchaser"), as set forth below, and in compliance with the bidding terms set forth in this Order; and it is further

**ORDERED**, that the Broker, shall, as soon hereafter as reasonably practicable, implement and continue through the date of the Public Sale, the marketing campaign and other matters set forth in the "Listing Plan/Proposed Scope of Service" memorandum dated May 12, 2022, attached hereto as *Exhibit "A"* (the "Marketing Plan"); and it is further

**ORDERED,** that the notice, substantially in the form annexed hereto as *Exhibit "B"* (the "Notice"), is hereby approved as to form and shall be served, together with a conformed version of the Debtor's motion to approve the proposed sale of the Property to the Successful Bidder (hereinafter defined) at the Public Sale, upon: (a) all known creditors of the Debtor or their counsel if known; (b) the holders of the interests in the Debtor; (c) all counterparties to executory contracts or leases with the Debtor; (d) the United States Trustee; (e) the Dept. of Treasury - Internal Revenue Service; (f) the New York State Dept. of Taxation and Finance; (g) the New York City Dept. of Finance; (h) the County of Richmond, Virginia; (i) counsel to the Proposed Purchaser; (j) all persons who have filed notices of appearance in the Debtor's case on or prior to the date hereof; and (k) any person or entity known (and to the broker for such person or entity, if known) to the Debtor which has shown any interest in acquiring the Property, by first class mail and e-mail if available, within ten (10) calendar days following the entry of this Order; and it is further

**ORDERED**, the Broker, shall, as soon hereafter as reasonably practicable, post a copy of the Notice on its internet website; and it is further

**ORDERED**, that the Debtor shall publish an additional notice concerning the Public Sale substantially in the form annexed hereto as *Exhibit "C"*, and which notice is hereby approved as to form, in: (a) the *Northern Neck News*; and (b) either the national edition of the *Wall Street Journal* or the national edition of the *Washington Post*, not less than one (1) time at least

thirty (30) days prior to the Qualification Deadline (hereinafter defined), the costs of such publication the Debtor is hereby authorized to pay (and is further authorized to borrow the funds to pay such costs from Benito R. Fernandez, at no interest and as an administrative expense, under the existing debtor-in-possession financing facility); and it is further

**ORDERED**, that service and publication in accordance with the provisions of this Order shall constitute good and sufficient notice of the relief sought and that no other or further notice need be given; and it is further

**ORDERED,** that any competing bids for the Property shall be subject to compliance with the following requirements:

(a) the Proposed Purchaser's $4,200,000.00 offer for the Property and the Purchase and Sale Agreement executed by the Proposed Purchaser (the "PSA") is hereby approved as to form;

(b) any competing offer for the Property (a "Competing Offer"), and any person or entity submitting a Competing Offer (a "Competing Offeror"), must satisfy and comply with the following terms and conditions:

(i) provide for a purchase price of at least $50,000.00 more than the purchase price as provided for in the PSA, *i.e.*, a total Competing Offer of at least $4,250,000.00;

(ii) be on substantially the same terms and conditions of the PSA;

(iii) not be contingent upon the receipt of financing necessary to its consummation, and the Competing Offeror shall have demonstrated evidence of its ability to conclude the transaction upon the terms and conditions of the PSA and in cash;

(iv) not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror or any other party or entity;

(v) in order to qualify to bid at the Public Sale, the Competing Offeror shall, by not later than 3:00 p.m. on October 31, 2022 (the "Qualification Deadline"), provide to the Debtor's counsel, Pick & Zabicki LLP: (a) a certified check, cashier's check or wire transfer made payable to "Pick & Zabicki, LLP as Attorneys", in the sum of $212,500.00 (representing 5% of the initial $4,250,000.00 minimum Competing Offer amount) as the Downpayment, as defined in the PSA or the Competing PSA (as the

case may be) (the "Qualifying Deposit"); and (b) a completed and executed copy of a sale agreement (the "Competing PSA"), in the form provided by the Broker and posted on the Broker' website (or one redlined against such), with the purchase price in the amount of the Competing Offer, which contains terms that are no worse than the terms of the Proposed Purchaser's PSA, as determined by the Debtor in consultation with its professionals, and after consultation with counsel for Diatomite Corporation of America ("Diatomite") and counsel for Anthony Cipollone and Domenick Cipollone (together, the "Cipollones") (*provided however*, that the ultimate determination as to the highest and/or best offer received at the Public Sale and any objection to the Debtor's rejection or refusal to qualify any Competing Offer received shall be determined by the Court at or before the Hearing (hereinafter defined));

(vi) in the case of any subsequent Competing Offer received from any party, which may include, without limitation, the Proposed Purchaser (after a prior Competing Offer has been received), which satisfies the conditions set forth herein, such subsequent Competing Offer shall provide for an aggregate consideration at least $25,000.00 in excess of that provided by the prior highest or best offer and shall otherwise comply with all conditions of the Competing PSA submitted by such party (*i.e.*, each incremental bid must be not less than $25,000.00 in excess of the Competing Offer, and not less than $25,000.00 in excess of each bid following the first Competing Offer); and

(vii) if determined to be the bidder that submitted the highest and/or best offer for the Property at the Public Sale (the "Successful Bidder"): (a) provide an additional deposit by certified or cashier's check or wire transfer to bring the Downpayment, as defined in the PSA or the Competing PSA (as the case may be), to an amount of ten percent (10%) of the final successful bid amount (the "PSA Deposit") within two (2) business days of the Public Sale; and (b) re-execute a final sale agreement that conforms to the Competing PSA at the final purchase price bid before the close of business within two (2) business days of the Public Sale (which final sale agreement shall be countersigned by the Debtor within (1) business day thereafter);

(c) all bids shall be "firm offers" for the Property on an "AS IS", "WHERE IS", and "WITH ALL FAULTS" basis;

(d) any sale shall be subject to approval by order of this Court;

(e) no break up or topping fee will be required to be separately paid by the Successful Bidder or any other party in interest, including but not limited to the Debtor;

(f) The Court, prior to the closing on the sale of the Property to the Successful Bidder (the "Closing"), shall enter an Order confirming the sale to the Successful Bidder;

(g) Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Successful Bidder, or its assigns (which shall be wholly or directly or indirectly owned by the Successful Bidder), shall be responsible solely and shall pay any and all applicable real property transfer taxes incurred by the transfer of the Property by Debtor's estate at the Closing, unless this sale is conducted pursuant to a confirmed plan of reorganization;

(h) Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Closing shall take place within thirty (30) days after the entry of an Order approving the sale to the Successful Bidder;

(i) Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, in connection with the Closing and the date thereof, the Successful Bidder, or its assigns, is hereby given notice that Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the date of the Closing, will result in the Debtor retaining the PSA Deposit as liquidated damages and the termination of the Successful Bidder's, or its assign's, right to acquire the Property under the PSA or the Competing PSA (as the case may be) with the Successful Bidder;

(j) Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Successful Bidder, or its assigns, shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligations under the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder or these terms and conditions of sale other than the Debtor's inability to deliver insurable title to the Property;

(k) The Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Debtor or the Court, as the case may be, evidence of his, her, or its ability to conclude the transaction upon the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder. The

Debtor, in consultation with its professionals, and after consultation with counsel for Diatomite and counsel for the Cipollones, reserves the right to reject any bidder/offeror who the Debtor reasonably believes is not financially capable of consummating the purchase of the Property (*provided however*, that the ultimate determination as to any objection to the Debtor's rejection or refusal to qualify any Competing Offer received shall be determined by the Court at or before the Hearing (hereinafter defined));

(l) Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Debtor or the Debtor's professionals, be liable or responsible for, or pay, such expenses;

(m) In the event that the Successful Bidder for the Property, or its assigns, fails to tender the balance of the purchase price on the date of the Closing, or otherwise perform his, her, or its, obligations under the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Debtor shall immediately negotiate the Qualifying Deposit of the bidder which submitted the second highest and/or best offer for the Property at the Public Sale (the "Backup Bidder"), as determined by the Debtor in consultation with its professionals, and after consultation with counsel for Diatomite and counsel for the Cipollones, and shall be further authorized to sell the Property to the Backup Bidder or its assigns, without any further notice or approval of the Court (other than those notices and approvals regarding the sale to the Backup Bidder that were and/or would have been required with respect to the original Successful Bidder), without giving credit to the Backup Bidder for the PSA Deposit forfeited by the Successful Bidder. Should the Backup Bidder, or its assigns, fail to close on the Property within twenty (20) calendar days of receiving from the Debtor, notice, TIME OF THE ESSENCE, that said Backup Bidder is now deemed the Successful Bidder, then the Debtor shall be: (a) authorized to keep the Qualifying Deposit of the Backup Bidder as liquidated damages; and (b) subject to the terms and conditions herein, authorized to sell the Property to the bidder which submitted the next highest and/or best offer for the Property at the Public Sale, as determined by the Debtor in consultation with its professionals and counsel for Diatomite and counsel for the Cipollones;

(n) The Property is being sold and delivered "AS IS", "WHERE IS", "WITH ALL FAULTS", and, unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of sale in such order and

priority as they existed immediately prior to the sale date, and subject to, among other things: (a) any state of facts that an accurate survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof except as set forth in the PSA or the Competing PSA (as the case may be) with the Successful Bidder; (e) environmental conditions; and (f) subject to all deed restrictions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they and/or their agents or contractors have had the opportunity to review and physically inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. All bidders acknowledge that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, or the Debtor's retained professionals.

(o) The Debtor, the Broker and the Debtor's retained professionals have not made and do not make any representations or warranties with respect to the permissible uses of the Property, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Property or the sale, that might be pertinent to the purchase of the Property, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Property, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Property to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment in the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance of the Property with environmental laws and the presence or absence of underground fuel

storage tanks, any asbestos or other hazardous materials anywhere in the Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. The Debtor and its retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtor or any real estate broker, agent, employee, servant or other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in the PSA or other signed writing by the Debtor or its professionals;

(p) The Debtor shall convey the Property by delivery of a deed as specified in the PSA or the Competing PSA (as the case may be). It is the Debtor's intention that the quality of title shall be that which a reputable title insurance company doing business in the Commonwealth of Virginia is willing to approve and insure at regular rates. At the Debtor's option, it may arrange for the issuance of a title insurance policy by a reputable title company at regular rates, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder;

(q) Nothing contained in the PSA or the Competing PSA (as the case may be) with the Successful Bidder shall supersede or alter any provisions of Title 11, United States Code (the "Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Court. To the extent of any conflict between the Bankruptcy Code, the Bankruptcy Rules, and/or this Order, on the one hand, and the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder, on the other hand, the Bankruptcy Code, the Bankruptcy Rules, and this Order, in that order of priority, shall govern. All of the terms and conditions set forth herein are subject to modification as may be directed by the Court. The Debtor reserves the right, in consultation with its professionals, and after consultation with counsel for Diatomite and counsel for the Cipollones, to modify the terms and conditions of sale at the Public Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Court;

(r) Neither the Debtor, the Broker nor the Debtor's retained professionals are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Court;

(s) The relevant terms and conditions of sale will be read into the record, or specifically incorporated by reference at the Public Sale of the Property. By making a bid for the Property, all bidders shall be deemed to have acknowledged having read, and understand, these terms and conditions of

sale and have agreed to be bound by them;

(t) Notwithstanding anything to the contrary set forth in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, if the Debtor is unable to deliver title to the Property in accordance with the terms and conditions of sale for any reason whatsoever, its only obligation will be to refund the PSA Deposit to the Successful Bidder (or the Qualifying Deposit to the Backup Bidder) and upon such refund the Successful Bidder (or Backup Bidder) will have no recourse or claim against the Debtor or its retained professionals;

(u) Any disputes concerning the sale shall be determined by this Court. By participating in the Public Sale, all bidders consent to the jurisdiction of this Court to determine such disputes arising in the Debtor's pending case; and

(v) Nothing herein shall affect any party's right to file and pursue confirmation of a Plan of Reorganization containing terms that differ, in whole or in part, from the terms of this Order; and

(w) Except as may be otherwise expressly provided for herein, to the extent of a conflict between the relevant PSA and the terms of this Order, the terms of this Order shall control.

**ORDERED**, that, notwithstanding anything to the contrary in the PSA or in any Competing PSA, the PSA and any Competing PSAs shall be governed by and construed in accordance with the domestic laws of the State of New York, without regard to conflict of law principles; and it is further

**ORDERED**, that the Debtor shall share with counsel for Diatomite and counsel for the Cipollones by e-mail any and all Competing Offers, and any material documents and information provided in connection with such Competing Offers (including, without limitation, the Competing PSAs relating to such Competing Offers), (i) within one (1) business day of receiving such Competing Offer or material information (as the case may be) if received prior to the Public Sale, notwithstanding whether such Competing Offer is rejected or deemed not to be a qualifying bid, and (ii) as soon as possible and prior to identifying the Successful Bidder, if received during the Public Sale; *provided however*, that Diatomite, the Cipollones and their

respective counsel are prohibited from contacting any Competing Offeror without the prior written approval of the Debtor and are further prohibited from otherwise interfering with the negotiation, submission, consummation and the like of any Competing Offer; and it is further

**ORDERED**, that in the event that no Competing Offeror qualifies to bid at the Public Sale by the Qualification Deadline, the Debtor shall file a statement to the docket within one (1) business day after the Qualification Deadline specifying that no qualifying Competing Offers were received, and the Public Sale may be cancelled without further notice; and it is further

**ORDERED**, that within one (1) business day after the conclusion of the Public Sale, the Debtor will file a statement reflecting the name of the Successful Bidder and the purchase price and/or other material economic terms of the Successful Bidder's winning bid; and it is further

**ORDERED**, that within two (2) business days after the conclusion of the Closing, the Debtor will file a statement reflecting the name of the purchaser of the Property and the price received for the Property in accordance with Fed. R. Bankr. P. 6004(f)(1); and it is further

**ORDERED**, that a hearing (the "Hearing") be held on November 9, 2022, at 10:30 a.m. before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, to consider the approval of the sale of the Property to the Successful Bidder, together with such other and further relief as the Court may deem just and proper pursuant to Fed. R. Bankr. P. 6004(a); and it is further

**ORDERED**, that at least two (2) days before the date of the Hearing, the Debtor shall submit a proposed order approving the sale of the Property to the Successful Bidder (the "Proposed Sale Order"), the form of which shall be drafted in consultation with counsel for Diatomite, counsel for the Cipollones, counsel for such Successful Bidder (as applicable), and the United States Trustee, and nothing contained herein shall be understood to affect the rights of any

party in interest to object to approval of the sale or the form of the Proposed Sale Order, including but not limited to objections on the basis of any findings related to good faith or releases of any form in favor of the Successful Bidder, the Debtor, or any other party in interest contained in such Proposed Sale Order; and it is further

**ORDERED**, that objections if any, to the approval of the sale or the form of the Proposed Sale Order shall: (a) be made in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of New York, (c) set forth the basis for the objection and the specific grounds therefor, (d) identify the party objecting and its alleged interest in the Debtor's chapter 11 case; (e) be filed with the Court, together with proof of service thereof, and (e) be served in a manner so as to be received by Pick & Zabicki LLP, not later than November 8, 2022; and it is further

**ORDERED**, that any disputes concerning the sale shall be determined by the Court.




**Dated: August 19, 2022**
**Brooklyn, New York**

**Nancy Hershey Lord**
**United States Bankruptcy Judge**