# EXHIBIT "A"



## Listing Plan/Proposed Scope of Service



**Prepared by:** AuctionAdvisors, May 12, 2022
RE: 964.11 Acres (Fones Cliffs) Carter's Wharf Road
Richmond County, Virginia

### Introduction

*AuctionAdvisors'* Real Estate Sales Program uses accelerated marketing methods to attract buyer interest that results in competitive bidding and, ultimately, a sale of property at the highest achievable value. Our unique process couples the activities typically associated with real estate brokerage, together with those typically performed by an auctioneer for a very effective result.

By hiring AuctionAdvisors you will benefit from the expertise we have developed through having implemented hundreds of successful auction sales as well as brokerage transactions. This includes a great many bankruptcy sales as well as sales of raw land for development. We are not only experienced as auctioneers, but we are licensed conventional real estate brokers in 4 States. Integral to the quality of our service is our commitment to providing a high-level of personal attention to client needs and the direct involvement of our company's principals in all aspects of the project from planning and execution to post marketing follow-through. AuctionAdvisors "cradle to grave" approach will enable you to reach your goals with greater comfort and efficiency.

We are strongly positioned to undertake this assignment. Key points of consideration:

- *Industry-leading marketing materials.*
- *Track record of igniting bidding wars and achieving maximum values for properties sold.*
- *Recognized creativity in designing effective conventional marketing, as well as guerrilla marketing, campaigns.*
- *Customer relations management system outreaches to extensive network of over 35,000 buyers, brokers, and market participants.*
- *Personable sales agents, experienced as brokers & auctioneers at creating momentum in the sales process.*
- *National and international resources and reputation, coupled with strong regional presence and credibility.*
- *Experience with the bankruptcy process and ensuring an equitable and transparent process is followed.*



## Accelerated Marketing Program

A principal driver of our success has been our ability to implement a very strong and highly customized Accelerated Marketing Program for each project. *This entails an intense diversified marketing campaign incorporating direct mail, newspaper, website postings, e-mails and highly targeted publications (printed and online), as well as press releases to drive additional media exposure. The elements of this campaign are described further below.* The process is designed to (i) attract buyer inquiries, (ii) assure such inquiries become informed bidders, (iii) develop a rapport with such potential buyers, (iv) foster competitive bidding among auction participants and, ultimately, and (v) realize the highest achievable sales price for the property in a compressed time period. We recognize that time to market is critical, so this proposal anticipates a 12-week marketing program, from the date we have finalized the engagement details until the auction date.

Although much of our marketing will be broad based, designed to attract the largest potential bidder base, the focus of our efforts will be to reach out and cultivate target prospects. These target prospects would include members of the following groups:

- *Real Estate Investors/Developers*
- *High Net Worth Individuals*
- *Conservation Groups*
- *Real Estate Brokers*
- *Select buyers within our database whose information we have acquired during other campaigns*

The marketing materials associated with the approaches described below are all prepared with the goal of enticing buyer prospects and driving them to request additional information either by phone to our toll-free number or via our website. In either case, buyers must provide us with additional contact information, allowing us the opportunity to build a rapport and follow-up. The following is an overview of the various components of our marketing campaign:

### a. Print Advertising

We will prepare and place attractive high-impact advertisements in print media local, regional and national newspapers and real estate journals. Local journals could include: **Northern Neck Sentinel & Northern Neck News**; Regional could include: **Virginia Business, InsideNOVA & the MidAtlantic Real Estate Journal** and National could include: **the Wall Street Journal & Washington Post** (given proximity).

### b. Customized Brochures

We will create a customized color brochure/marketing flyer highlighting the offering.

### c. Online Advertising

We will place "premium" ads/listings on the major commercial real estate website, as well as those focused exclusively on land sales. These include primarily **Loopnet, Crexi & CoStar and LandsofAmerica.com, LandWatch.com & Landflip.com**, though we may also post on residential sites



like *Zillow, Trulia, Realtor.com, Multiple Listing Service (MLS)*, Auctioneer Association Websites, as well as other targeted related sites. The property will be listed in detail on the AuctionAdvisors website and when a property is posted on the AuctionAdvisors website, it is automatically linked with up to 40 additional websites. In addition, we will investigate the possibility of listings on local websites in order to create awareness of the sale in the community.

### d. Email Notification
AuctionAdvisors has its own proprietary list of potential bidders and may try to access additional names via a number of services to target buyers who are in the marketplace, and real estate agents and brokers who can register their clients for the sale.

### e. Social Media
AuctionAdvisors will promote the sale on relevant social media sites such as **Google** (through Google AdWords), **Facebook, Twitter, LinkedIn, Instagram, Twitter, Youtube** and others. Leveraging the impact of social media has been a cornerstone to raising awareness on our upcoming sales.

### f. Secure Data Room/Due Diligence
AuctionAdvisors will collate property and auction information necessary for buyers to conduct due diligence on the property. This will be accessible to potential bidders through a secure data room. The data room will contain all information on the offering (maps, studies, surveys etc.) as well as a complete copy of the terms and conditions of the sale, necessary forms for bidding, and any other related and relevant documents. The documents will be available in paper and electronic downloadable formats.

### g. Telemarketing
One of the most effective methods of keeping buyers involved with the sale process is to proactively stay in touch with inquirers who respond to the advertising campaign. We telephone all inquirers to assess their interest and financial commitment to the property, answer specific questions about the auction process, provide additional information as necessary, and learn as much as possible about the bidder's opinion of value for the property.

### h. Direct Outreach to Other Brokers
In addition, we will conduct a campaign to directly outreach to fellow real estate brokers who cater to specific buyers that may be interested in the property.

### i. Public Relations
Working cooperatively, we will issue a press release establish an appropriate "marketing message" which explains the highlights of the sale. Higher profile properties like this one will no doubt garner interest from the press and we hope to have news of the auction spread significantly via various press releases and news outlets.



## Other Related Services

In addition to the marketing campaign and broker outreach set forth above, Auction Advisors will otherwise fulfil the host of activities typically performed by a real estate broker, including, without limitation the following (to the extent not otherwise covered above):

(i) Listing the property on MLS and other seller-broker listing sites (to the extent otherwise not covered per "Online Advertising" above);
(ii) Positioning and messaging (in addition to "Public Relations" described above);
(iii) Coordinating showings of the property, as necessary;
(iv) Coordination of professional visits and third party reports, as necessary;
(v) Communications with potential buyers/interested parties including walking potential buyers through Data Room that will be set up;
(vi) Updating Due Diligence & regular communications with potential buyers.
(vii) Buyer Hand-holding and familiarizing potential buyers with the process,
(viii) Serve as sounding board and authority for Valuations and Comps;
(ix) Liaise with local municipal agencies, as needed;
(x) Verify credibility of potential Buyers;
(xi) Coordinate with Debtors and Debtor professionals on process and documentation.

**EXHIBIT "B"**

Douglas J. Pick, Esq.
Eric C. Zabicki, Esq.
**PICK & ZABICKI, LLP**
Counsel to the Debtor
369 Lexington Avenue, 12th Floor
New York, New York 10017
(212) 695-6000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
In re:                                                     Chapter 11
VIRGINIA TRUE CORPORATION,                                 Case No. 19-42769 (NHL)

                        Debtor.
---------------------------------------------------------x

### NOTICE OF PUBLIC SALE, HEARING AND BIDDING PROCEDURES PROCEDURES IN CONNECTION WITH THE SALE OF REAL PROPERTY

**PLEASE TAKE NOTICE**, that pursuant to an Order (the "Bidding Procedures Order") entered by the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court") on August ___, 2022 in connection with the above-captioned chapter 11 case, a public sale (the "Public Sale") will be conducted, virtually, on **November 3, 2022 commencing at 12:00 p.m.**, at which debtor Virginia True Corporation (the "Debtor"), with the assistance of Auction Advisors as its broker, will offer the its real property consisting of approximately 964.11 acres of undeveloped land, in three (3) separate parcels (identified in the Richmond Count tax records as tax parcels 4-1, 4-2 and 5-30), commonly known as "Fones Cliffs" (the "Property"), to potential bidders, if any, interested in placing an offer(s) for the Property which is higher or better than the existing offer submitted therefor.

**PLEASE TAKE FURTHER NOTICE** that any entity wishing to place a bid for the Property shall be subject to the following terms as set forth in the Bidding Procedures Order:

(a) a $4,200,000 offer for the Property made by Fones Cliff Development LLC (the "Proposed Purchaser") and the corresponding Purchase and Sale Agreement between Fones Cliff Development and the Debtor (the "PSA") have been approved by the Bankruptcy Court as to form;

(b) any competing offer for the Property (a "Competing Offer"), and any person or entity submitting a Competing Offer (a "Competing Offeror"), must satisfy and comply with the following terms and conditions:

(i) provide for a purchase price of at least $50,000.00 more than the purchase price as provided for in the PSA, *i.e.*, a total Competing Offer of at least $4,250,000.00;

(ii) be on substantially the same terms and conditions of the PSA;

(iii) not be contingent upon the receipt of financing necessary to its consummation, and the Competing Offeror shall have demonstrated evidence of its ability to conclude the transaction upon the terms and conditions of the PSA and in cash;

(iv) not be conditioned upon the outcome of unperformed due diligence by the Competing Offeror or any other party or entity;

(v) in order to qualify to bid at the Public Sale, the Competing Offeror shall, by not later than 3:00 p.m. on October 31, 2022 (the "Qualification Deadline"), provide to the Debtor's counsel, Pick & Zabicki LLP: (a) a certified check, cashier's check or wire transfer made payable to "Pick & Zabicki, LLP as Attorneys", in the sum of $212,500.00 (representing 5% of the initial $4,250,000.00 minimum Competing Offer amount) as the Downpayment, as defined in the PSA or the Competing PSA (as the case may be) (the "Qualifying Deposit"); and (b) a completed and executed copy of a sale agreement (the "Competing PSA"), in the form provided by the Broker and posted on the Broker' website (or one redlined against such), with the purchase price in the amount of the Competing Offer, which contains terms that are no worse than the terms of the Proposed Purchaser's PSA, as determined by the Debtor in consultation with its professionals, and after consultation with counsel for Diatomite Corporation of America ("Diatomite") and counsel for Anthony Cipollone and Domenick Cipollone (together, the "Cipollones") (*provided however*, that the ultimate determination as to the highest and/or best offer received at the Public Sale and any objection to the Debtor's rejection or refusal to qualify any Competing Offer received shall be determined by the Bankruptcy Court at or before the Hearing (hereinafter defined));

(vi) in the case of any subsequent Competing Offer received from any party, which may include, without limitation, the Proposed Purchaser (after a prior Competing Offer has been received), which satisfies the conditions set forth herein, such subsequent Competing Offer shall provide for an aggregate consideration at least $25,000.00 in excess of that provided by the prior highest or best offer and shall otherwise comply with all conditions of the Competing PSA submitted by such party (*i.e.*, each incremental bid must be not less than $25,000.00 in excess of the Competing Offer, and not less than $25,000.00 in excess of each bid following the first Competing Offer); and

(vii) if determined to be the bidder that submitted the highest and/or best offer for the Property at the Public Sale (the "Successful Bidder"): (a) provide an additional deposit by certified or cashier's check or wire transfer to bring the Downpayment, as defined in the PSA or the Competing PSA (as the case may be), to an amount of ten percent (10%) of the final successful bid amount (the "PSA Deposit") within two (2) business days of the Public Sale; and (b) re-execute a final sale agreement that conforms to the Competing PSA at the final purchase price bid before the close of business within two (2) business days

       of the Public Sale (which final sale agreement shall be countersigned by the Debtor within (1) business day thereafter);

(c)    all bids shall be "firm offers" for the Property on an "AS IS", "WHERE IS", and "WITH ALL FAULTS" basis;

(d)    any sale shall be subject to approval by order of the Bankruptcy Court;

(e)    no break up or topping fee will be required to be separately paid by the Successful Bidder or any other party in interest, including but not limited to the Debtor;

(f)    The Bankruptcy Court, prior to the closing on the sale of the Property to the Successful Bidder (the "Closing"), shall enter an Order confirming the sale to the Successful Bidder;

(g)    Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Successful Bidder, or its assigns (which shall be wholly or directly or indirectly owned by the Successful Bidder), shall be responsible solely and shall pay any and all applicable real property transfer taxes incurred by the transfer of the Property by Debtor's estate at the Closing, unless this sale is conducted pursuant to a confirmed plan of reorganization;

(h)    Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Closing shall take place within thirty (30) days after the entry of an Order approving the sale to the Successful Bidder;

(i)    Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, in connection with the Closing and the date thereof, the Successful Bidder, or its assigns, is hereby given notice that Time is of the Essence against the Successful Bidder, or its assigns, and the failure of the Successful Bidder, or its assigns, to close for any reason whatsoever (except as otherwise provided below) including his, her, or its, failure to pay the balance of the Purchase Price on the date of the Closing, will result in the Debtor retaining the PSA Deposit as liquidated damages and the termination of the Successful Bidder's, or its assign's, right to acquire the Property under the PSA or the Competing PSA (as the case may be) with the Successful Bidder;

(j)    Unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Successful Bidder, or its assigns, shall be obligated to close title to the Property and there is no contingency of any kind or nature that will permit the Successful Bidder, or its assigns, to cancel or avoid his, her, or its, obligations under the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder or these terms and conditions of sale other than the Debtor's inability to deliver insurable title to the Property;

(k)    The Successful Bidder, or its assigns, must demonstrate, to the satisfaction of the Debtor or the Bankruptcy Court, as the case may be, evidence of his, her, or its

        ability to conclude the transaction upon the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder. The Debtor, in consultation with its professionals, and after consultation with counsel for Diatomite and counsel for the Cipollones, reserves the right to reject any bidder/offeror who the Debtor reasonably believes is not financially capable of consummating the purchase of the Property (*provided however*, that the ultimate determination as to any objection to the Debtor's rejection or refusal to qualify any Competing Offer received shall be determined by the Bankruptcy Court at or before the Hearing (hereinafter defined));

(l)      Expenses incurred by the Successful Bidder, or its assigns, or any competing bidder concerning the performance of any due diligence, such as obtaining title reports or environmental inspections, shall be the sole financial responsibility of such bidder and under no circumstances shall the Debtor or the Debtor's professionals, be liable or responsible for, or pay, such expenses;

(m)     In the event that the Successful Bidder for the Property, or its assigns, fails to tender the balance of the purchase price on the date of the Closing, or otherwise perform his, her, or its, obligations under the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder, the Debtor shall immediately negotiate the Qualifying Deposit of the bidder which submitted the second highest and/or best offer for the Property at the Public Sale (the "Backup Bidder"), as determined by the Debtor in consultation with its professionals, and after consultation with counsel for Diatomite and counsel for the Cipollones, and shall be further authorized to sell the Property to the Backup Bidder or its assigns, without any further notice or approval of the Bankruptcy Court (other than those notices and approvals regarding the sale to the Backup Bidder that were and/or would have been required with respect to the original Successful Bidder), without giving credit to the Backup Bidder for the PSA Deposit forfeited by the Successful Bidder.  Should the Backup Bidder, or its assigns, fail to close on the Property within twenty (20) calendar days of receiving from the Debtor, notice, TIME OF THE ESSENCE, that said Backup Bidder is now deemed the Successful Bidder, then the Debtor shall be: (a) authorized to keep the Qualifying Deposit of the Backup Bidder as liquidated damages; and (b) subject to the terms and conditions herein, authorized to sell the Property to the bidder which submitted the next highest and/or best offer for the Property at the Public Sale, as determined by the Debtor in consultation with its professionals and counsel for Diatomite and counsel for the Cipollones;

(n)      The Property is being sold and delivered "AS IS", "WHERE IS", "WITH ALL FAULTS", and, unless otherwise provided in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, without any representations, covenants, guarantees or warranties of any kind or nature whatsoever, and free and clear of all monetary liens, claims and encumbrances of whatever kind or nature, such liens, claims, interests and encumbrances, if any, to attach to the proceeds of sale in such order and priority as they existed immediately prior to the sale date, and subject to, among other things: (a) any state of facts that an accurate

survey may show; (b) any covenants, restrictions and easements of record; (c) any state of facts a physical inspection may show; (d) any building or zoning ordinances or other applicable municipal regulations and violations thereof except as set forth in the PSA or the Competing PSA (as the case may be) with the Successful Bidder; (e) environmental conditions; and (f) subject to all deed restrictions. By delivering their respective Qualifying Deposits, all bidders acknowledge that they and/or their agents or contractors have had the opportunity to review and physically inspect the Property, the state of title thereof and laws, rules and regulations applicable thereto, and will rely solely thereon and on their own independent investigations and inspections of the Property in making their bids. All bidders acknowledge that they have conducted their own due diligence in connection with the Property, and are not relying on any information provided by the Debtor, or the Debtor's retained professionals.

(o) The Debtor, the Broker and the Debtor's retained professionals have not made and do not make any representations or warranties with respect to the permissible uses of the Property, the physical condition, rents, leases, expenses, operations, value of the land or buildings thereon, number of building lots, use or any other matter or thing affecting or related to the Property or the sale, that might be pertinent to the purchase of the Property, including, without limitation: (a) the current or future real estate tax liability, assessment or valuation of the Property; (b) the potential qualification of the Property for any and all benefits conferred by or available under federal, state or municipal laws, whether for subsidies, special real estate tax treatment, insurance, mortgages, or any other benefits, whether similar or dissimilar to those enumerated; (c) the compliance or non-compliance of the Property, in its current or any future state, with applicable current or future zoning ordinances or other land use law or regulation, or the ability of the owner of the Property to obtain a change in the zoning or use, or a variance in respect to the Property; (d) the availability of any financing for the purchase, alteration, rehabilitation or operation of the Property from any source, including, but not limited to, any state, city, local government or federal government or institutional lender; (e) the current or future use of the Property; (f) the present and future condition and operating state of any and all machinery or equipment in the Property and the present or future structural and physical condition of any building thereon or its suitability for rehabilitation or renovation; (g) the ownership or state of title of any personal property in the Property; (h) the presence or absence of any laws, ordinances, rules or regulations issued by any governmental authority, agency or board and any violations thereof; (i) any present or future issues concerning subdivision or non-subdivision of the Property; or (j) the compliance or non-compliance of the Property with environmental laws and the presence or absence of underground fuel storage tanks, any asbestos or other hazardous materials anywhere in the Property. Each bidder hereby expressly agrees and acknowledges that no such representations have been made. The Debtor and its retained professionals shall not be liable or bound in any manner by expressed or implied warranties, guaranties, promises, statements, representations or information pertaining to the Property, made or furnished by the Debtor or any real estate broker, agent, employee, servant or

        other person or professional representing or purporting to represent the Debtor unless such warranties, guaranties, promises, statements, representations or information are expressly and specifically set forth in the PSA or other signed writing by the Debtor or its professionals;

(p)     The Debtor shall convey the Property by delivery of a deed as specified in the PSA or the Competing PSA (as the case may be). It is the Debtor's intention that the quality of title shall be that which a reputable title insurance company doing business in the Commonwealth of Virginia is willing to approve and insure at regular rates. At the Debtor's option, it may arrange for the issuance of a title insurance policy by a reputable title company at regular rates, if the Successful Bidder is unable to do so, at the sole cost and expense of the Successful Bidder;

(q)     Nothing contained in the PSA or the Competing PSA (as the case may be) with the Successful Bidder shall supersede or alter any provisions of Title 11, United States Code (the "Bankruptcy Code") and/or of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or otherwise interfere with the jurisdiction of the Bankruptcy Court. To the extent of any conflict between the Bankruptcy Code, the Bankruptcy Rules, and/or the Bidding Procedures Order, on the one hand, and the terms of the PSA or the Competing PSA (as the case may be) with the Successful Bidder, on the other hand, the Bankruptcy Code, the Bankruptcy Rules, and Bidding Procedures Order, in that order of priority, shall govern. All of the terms and conditions set forth herein are subject to modification as may be directed by the Bankruptcy Court. The Debtor reserves the right, in consultation with its professionals, and after consultation with counsel for Diatomite and counsel for the Cipollones, to modify the terms and conditions of sale at the Public Sale, or thereafter, to maintain consistency with the provisions of the Bankruptcy Code, Bankruptcy Rules, and/or orders of the Bankruptcy Court;

(r)     Neither the Debtor, the Broker nor the Debtor's retained professionals are liable or responsible for the payment of fees of any broker or agent that has not been retained by an order of the Bankruptcy Court;

(s)     The relevant terms and conditions of sale will be read into the record, or specifically incorporated by reference at the Public Sale of the Property. By making a bid for the Property, all bidders shall be deemed to have acknowledged having read, and understand, these terms and conditions of sale and have agreed to be bound by them;

(t)     Notwithstanding anything to the contrary set forth in the PSA or the Competing PSA (as the case may be) with the Successful Bidder, if the Debtor is unable to deliver title to the Property in accordance with the terms and conditions of sale for any reason whatsoever, its only obligation will be to refund the PSA Deposit to the Successful Bidder (or the Qualifying Deposit to the Backup Bidder) and upon such refund the Successful Bidder (or Backup Bidder) will have no recourse or claim against the Debtor or its retained professionals; and

  (u) Any disputes concerning the sale shall be determined by the Bankruptcy Court. By participating in the Public Sale, all bidders consent to the jurisdiction of the Bankruptcy Court to determine such disputes arising in the Debtor's pending case.

  **PLEASE TAKE FURTHER NOTICE**, that in the event that no Competing Offeror qualifies to bid at the Public Sale by the Qualification Deadline, the Public Sale may be cancelled without further notice; and

  **PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures Order and all other documents with regard to the proposed sale of the Property may be obtained by contacting the Debtor's undersigned counsel at (212) 695-6000 and/or at dpick@picklaw.net, by visiting Auction Advisors' website at www.auctionadvisors.com, or by accessing the Bankruptcy Court's website at www.nyeb.uscourts.gov**;** and

  **PLEASE TAKE FURTHER NOTICE** a virtual hearing (the "Hearing") has been scheduled to be held on _____**, 2022 at _____ a.m./p.m.** before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge, to consider the approval of the sales of the Property to the successful bidder therefor at the Public Sale, together with such other and further relief as the Bankruptcy Court may deem just and proper; and

  **PLEASE TAKE FURTHER NOTICE** to appear at the Hearing, parties must register their appearance by utilizing the Bankruptcy Court's *eCourt Appearances* tool located on the Bankruptcy Court's website (https://ecf.nyeb.uscourts.gov/cgi-bin/nyebAppearances.pl). Attorneys with a CM/ECF account may also access *eCourt Appearances* under the "Utilities" menu after logging on to CM/ECF. For more information on *eCourt Appearances*, including a tutorial on how to use the program, please go to https://www.nyeb.uscourts.gov/registering-remote-hearing-appearance-using-ecourt-appearances. Once registered, the participant will receive an email 48 hour prior to the hearing with the applicable telephonic or videoconferencing information necessary to join the hearing; and

  **PLEASE TAKE FURTHER NOTICE** that objections if any, to the approval of the proposed sale shall (a) be made in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Eastern District of New York, (c) set forth the basis for the objection and the specific grounds therefor, (d) identify the party objecting and its alleged interest in the Debtor's chapter 11 case; (e) be filed with the Bankruptcy Court with a copy to the chambers of the Honorable Nancy Hershey Lord, together with proof of service thereof, and (f) be served in a manner so as to be received by the Debtor's undersigned counsel not later than _____**, 2022 at 5:00p.m.**

7

Dated: New York, New York
       August ___, 2022

                                       **BY ORDER OF THE BANKRUPTYCY COURT:**

                                       **PICK & ZABICKI LLP**
                                       Counsel to the Debtor
                                       369 Lexington Avenue, 12th Floor
                                       New York, New York 10017
                                       (212) 695-6000

## EXHIBIT "C"

## BANKRUPTCY SALE – UNDEVELOPED LAND

Pursuant to an Order entered by the U.S. Bankruptcy Court, E.D.N.Y. on August ___, 2022 in In re Virginia True Corporation, No. 22-42769, a public sale will be conducted, virtually, on November 3, 2022 commencing at 12:00 p.m. at which debtor Virginia True Corporation, by Auction Advisors, will offer approximately 964.11 acres of undeveloped land, in 3 separate parcels (tax parcels 4-1, 4-2 and 5-30), located on Carter's Wharf Road, Richmond County, Virginia, commonly known as "Fones Cliffs", for sale at auction to potential bidders interested in placing an offer which is higher or better than the existing $4,200,000 offer submitted therefor. Bidding and sale terms and other information can be obtained by contacting the Debtor's counsel, Douglas J. Pick, Esq., at (212) 695-6000 or by e-mail at dpick@picklaw.net, by visiting Auction Advisors website at www.auctionadvisors.com, or by accessing the Bankruptcy Court's website at www.nyeb.uscourts.gov.