**PACK LAW**
51 Northeast 24th Street, Suite 108
Miami, Florida 33137
Joseph A. Pack, Esq.
212-949-9300

*Counsel for Diatomite Corporation of America*

**LAW OFFICES OF AVRUM J. ROSEN, PLLC**
38 New Street
Huntington, New York 11743
Avrum J. Rosen, Esq.
Nico G. Pizzo, Esq.
631-423-8527

*Co-Counsel to Anthony Cipollone and Domenick Cipollone*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Virginia True Corporation,<br><br>               Debtor. | Chapter 11<br><br>Case No. 19-42769 (NHL) |

---

**DIATOMITE CORPORATION OF AMERICA,**
**ANTHONY CIPOLLONE, AND DOMENICK CIPOLLONE'S JOINT**
**THIRD AMENDED CHAPTER 11 CREDITOR PLAN OF REORGANIZATION**

---

Dated:  August 31, 2022

## TABLE OF CONTENTS

**SECTION 1.     DEFINITIONS AND INTERPRETATION** ..................................................... 1

**SECTION 2.     TREATMENT OF UNCLASSIFIED CLAIMS** ........................................... 8

    **2.1.     Administrative Expense Claims** .................................................................. 8

    **2.2.     Compensation and Reimbursement Claims** ............................................. 9

    **2.3.     Priority Tax Claims** .................................................................................. 10

    **2.4.     United States Trustee Fees** ....................................................................... 10

**SECTION 3.     CLASSIFICATION OF CLAIMS AND INTERESTS** ........................... 10

**SECTION 4.     TREATMENT OF CLAIMS AND INTERESTS** ..................................... 11

    **4.1.     Secured Claims (Class 1)** ......................................................................... 12

    **4.2.     General Unsecured Claims (Class 2(a))** ................................................. 12

    **4.3.     Plan Proponents' Unsecured Claims (Class 2(b))** ................................ 13

    **4.4.     Subordinated Allowed Insider Claims (Class 3)** ................................... 14

    **4.5.     Interests (Class 4)** ..................................................................................... 14

**SECTION 5.     ACCEPTANCE OR REJECTION OF THE CREDITOR PLAN** .......... 15

    **5.1.     Impaired Classes** ...................................................................................... 15

    **5.2.     Acceptance by a Class** ............................................................................. 15

    **5.3.     Claims and Interests Not Entitled to Vote** ............................................ 15

**SECTION 6.     IMPLEMENTATION OF THIS CREDITOR PLAN** ............................. 15

    **6.1.     Implementation** ........................................................................................ 15

    **6.2.     General Settlement of Claims and Interests** ......................................... 16

    **6.3.     Continued Corporate Existence** ............................................................. 16

    **6.4.     Vesting of Assets in the Reorganized Debtor** ....................................... 16

    **6.5.     Sources for Creditor Plan Distributions** ............................................... 16

    **6.6.     Transfer Taxes** ......................................................................................... 17

    **6.7.     Preservation of Causes of Action** .......................................................... 17

    **6.8.     Execution of Documents** .......................................................................... 17

    **6.9.     Filing of Documents** ................................................................................. 17

    **6.10.     Cancelling of Existing Securities and Agreements** ........................... 18

    **6.11.     Exemption from Registration Requirements** ..................................... 18

    **6.12.     Directors and Officers of the Reorganized Debtor** ........................... 18

**SECTION 7.     DISTRIBUTIONS** ................................................................................... 19

    **7.1.     Disbursing Agent** ..................................................................................... 19

7.2.   Distribution Record Date ................................................................................ 19

7.3.   Date of Distributions .................................................................................... 19

7.4.   No Distributions Pending Allowance ........................................................... 19

7.5.   Postpetition Interest on Claims .................................................................... 20

7.6.   Powers of Disbursing Agent ......................................................................... 20

7.7.   Surrender of Instruments .............................................................................. 20

7.8.   Delivery of Distributions .............................................................................. 20

7.9.   Manner of Payment ...................................................................................... 20

7.10.  Setoffs .......................................................................................................... 20

7.11.  Allocation of Distributions Between Principal and Interest .......................... 21

7.12.  Distributions Free and Clear ........................................................................ 21

SECTION 8.       PROCEDURES FOR DISPUTED CLAIMS ........................... 21

8.1.   Allowance of Claims and Interests ............................................................... 21

8.2.   Objections to Claims .................................................................................... 21

8.3.   Estimation of Claims .................................................................................... 22

8.4.   Distributions Relating to Disputed Claims ................................................... 22

8.5.   Distributions after Allowance ...................................................................... 22

8.6.   Preservation of Rights to Settle Claims ........................................................ 22

8.7.   Disallowed Claims ....................................................................................... 23

SECTION 9.       EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................. 23

SECTION 10.      CONDITIONS PRECEDENT TO THE EFFECTIVE DATE ................. 23

10.1.  Conditions Precedent .................................................................................... 23

10.2.  Waiver of Conditions ................................................................................... 24

10.3.  Effect of Failure of Conditions .................................................................... 24

SECTION 11.      EFFECT OF CONFIRMATION .................................................. 24

11.1.  Binding Effect .............................................................................................. 24

11.2.  Discharge of Claims and Termination of Interests ........................................ 24

11.3.  Compromise and Settlement of Claims, Interests, and Controversies .......... 25

11.4.  Injunction .................................................................................................... 25

11.5.  Terms of Injunctions or Stays ...................................................................... 25

11.6.  Injunction Against Interference with Creditor Plan ...................................... 26

11.7.  Debtor Releases ........................................................................................... 26

11.8.  Releases by Holders of Claims and Interests ................................................ 26

11.9.  Exculpation .................................................................................................. 27

ii

| | | |
|---|---|---|
| **11.10.** | **Release of Liens** | 28 |
| **SECTION 12.** | **RETENTION OF JURISDICTION** | 28 |
| **SECTION 13.** | **MISCELLANEOUS PROVISIONS** | 29 |
| **13.1.** | **Payment of Statutory Fees** | 29 |
| **13.2.** | **Substantial Consummation** | 30 |
| **13.3.** | **Operations Between the Confirmation Date and the Effective Date** | 30 |
| **13.4.** | **Amendments** | 30 |
| **13.4.1.** | **Modifications to Creditor Plan and Plan Supplement** | 30 |
| **13.4.2.** | **Other Amendments** | 30 |
| **13.5.** | **Revocation or Withdrawal of the Creditor Plan** | 30 |
| **13.6.** | **Severability** | 31 |
| **13.7.** | **Governing Law** | 31 |
| **13.8.** | **Time** | 31 |
| **13.9.** | **Binding Effect of Creditor Plan** | 31 |
| **13.10.** | **Entire Agreement** | 31 |
| **13.11.** | **Section 1125(e) Good Faith Compliance** | 32 |

Diatomite Corporation of America ("<u>Diatomite</u>") and Anthony and Domenick Cipollone (the "<u>Cipollones</u>") (collectively, the "<u>Plan Proponents</u>") hereby propose the following Third Amended Joint Creditor Plan of Reorganization (the "<u>Creditor Plan</u>"), pursuant to chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"):

# SECTION 1.  DEFINITIONS AND INTERPRETATION

Unless otherwise specified, all section or exhibit references in this Creditor Plan are to the respective section in, or exhibit to, this Creditor Plan, as the same may be amended, waived, or modified from time to time.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Creditor Plan as a whole and not to any particular section, subsection, or clause contained therein.  A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code.  The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to this Creditor Plan.  The headings in this Creditor Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Unless otherwise provided, any reference in this Creditor Plan to an existing document, exhibit, or schedule means such document, exhibit, or schedule as it may have been amended, restated, revised, supplemented or otherwise modified.  If a time or date is specified for any payment or other Distribution under this Creditor Plan, it shall mean on or as soon as reasonably practicable thereafter.  Further, where appropriate from a contextual reading of a term, each term includes the singular and plural form of the term, regardless of how the term is stated, and each stated pronoun is gender neutral.  In computing any period of time prescribed or allowed by this Creditor Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

The following terms used herein shall have the respective meanings defined below:

**1.1.    Administrative Expense Claim** means any Claim, pursuant to Bankruptcy Code Sections 503(b) and 507(a)(1), arising from actual, necessary costs or expenses of the administration of the Chapter 11 Case and preservation of Debtor's Estate.

**1.2.    Adversary Proceeding** means that certain adversary proceeding entitled *Virginia True Corporation et al. v. Anthony Cipollone and Domenick Cipollone*, No. 19-01118-NHL, pending in the Bankruptcy Court.

**1.3.    Allowed** means, *with respect to any Claim*, (i) a Claim against Debtor which has been listed on Debtor's Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed or no timely objection to allowance or request for estimation has been interposed, (ii) any Claim for which a Proof of Claim was properly and timely filed in accordance with any order of the Bankruptcy Court, the Creditor Plan, the Bankruptcy Code, and the Bankruptcy Rules, as to which no objection to allowance has been interposed by a party in interest (whether via an adversary proceeding, contested matter, or equivalent proceeding) or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective Holder, or (iii) any Claim expressly allowed by a Final Order or pursuant to this Creditor Plan.  Any Claim that has been or is hereafter listed in the Schedules as Contingent, unliquidated or Disputed, and for which no Proof of Claim has been timely filed, is not considered Allowed.

**1.4.    Allowed** means, *with respect to any Interest*, an Interest in Debtor that has not been disallowed and is not a Disputed Interest with respect to which (i) a Proof of Interest has been timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed by the Debtor in its Schedules.

**1.5.    Available Cash** means, at any time, the aggregate amount of available Cash held by the Disbursing Agent.

**1.6.    Avoidance Actions** means any and all causes of action and rights to recover or avoid transfers or to avoid any lien under chapter 5 of the Bankruptcy Code or applicable state law or otherwise, including, but not limited to, Sections 502, 506, 510, 522, 541, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code, and the proceeds thereof, or otherwise to exercise the avoidance powers provided under the Bankruptcy Code, including any of Debtor's or the Estate's claim, counterclaim, setoff or offset rights.

**1.7.    Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of New York.

**1.8.    Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**1.9.    Business Day** means any day of the calendar week, except Saturday, Sunday, a "legal holiday," as defined in Bankruptcy Rule 9006(a), or any day on which commercial banks are authorized or required by law to close.

**1.10.    Cash** means legal tender of the United States of America.

**1.11.    Chapter 11 Case** means the above-captioned case commenced in the Bankruptcy Court by Debtor, pursuant to chapter 11 of the Bankruptcy Code.

**1.12.    Cipollones** means creditors Anthony and Domenick Cipollone.

**1.13.    Cipollone Adversary Proceeding** means that certain adversary proceeding entitled *Anthony Cipollone and Domenick Cipollone v. Diatomite Corporation of America*, No. 21-01042-NHL, pending in the Bankruptcy Court.

**1.14.    Cipollone Claim** means the Claim in the amount of $5 million asserted jointly by the Cipollones as a Secured Claim, pursuant to Proofs of Claim No. 9-1 and 10-1, which Claim is subject to the Adversary Proceeding.  The Cipollone Claim is partially Allowed under this Creditor Plan and is subject to the treatment hereunder.  For the avoidance of doubt, the $2 million reduction in the Allowed Secured Claim of the Cipollones is contingent on the occurrence of the Effective Date of the Creditor Plan.

**1.15.    Cipollone Deed** means the $5 million Deed of Trust on the Property dated December 6, 2018 and issued to the Cipollones by Debtor as security for the Cipollone Note.

**1.16. Cipollone Note** means the promissory note issued by the Debtor to the Cipollones in the full amount of their $5 million investment in Debtor.

**1.17. Cipollone Virginia Action** means that civil action entitled *Anthony Cipollone and Domenick Cipollone v. Allan Applestein, et al.*, No. 1:20-cv-01614-FB-MMH, pending in the United States District Court for the Eastern District of New York. Under this Creditor Plan, the Cipollones would dismiss their claims in that action against Diatomite and Applestein with prejudice.

**1.18. Claim** means a "claim," as that term is described in Bankruptcy Code Section 101(5), against Debtor.

**1.19. Class** means any group of Claims or Interests classified herein, pursuant to Bankruptcy Code Section 1122.

**1.20. Compensation and Reimbursement Claim** means a Claim for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date, pursuant to Bankruptcy Code Sections 327, 328, 329, 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5), including, but not limited to, Claims of any Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date or Claims seeking compensation for services rendered by other professionals, or reimbursement of expenses, for making a substantial contribution in this Chapter 11 Case.

**1.21. Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

**1.22. Confirmation Order** means the order entered by the Bankruptcy Court on the docket of the Chapter 11 Case confirming the Creditor Plan.

**1.23. Contingent Claim** means any contingent or unliquidated Claim asserted or which may be asserted against Debtor.

**1.24. Creditor Plan** means this Creditor Plan of Reorganization under chapter 11 of the Bankruptcy Code, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, or the terms hereof, as the case may be.

**1.25. Creditor Plan Funding** means sums used to effectuate the terms of this Creditor Plan from sums contributed by Diatomite. Such funds shall be in an amount sufficient to cover all Allowed Administrative Expense Claims, the $2,000,000.00 payment to be made on account of the Cipollone Claim pursuant to the treatment of the same in Class 1, and the treatment of Allowed General Unsecured Claims pursuant to the treatment of the same in Class 2(a), *provided, however,* that the Creditor Plan Funding shall not exceed the aggregate amount of $3,250,000.00.

**1.26. Debtor** means Virginia True Corporation.

**1.27.    DEQ Claim** means the $200,000 non-priority unsecured Claim asserted by the Commonwealth of Virginia evidenced by Proof of Claim No. 13-1, in connection with and in full satisfaction of a pending governmental enforcement action against Debtor for alleged environmental violations on the Property, notwithstanding any obligation of the Debtor pursuant to the proposed resolution thereof in connection with the pending motion pursuant to Bankruptcy Rule 9019 for approval to enter into a draft consent decree filed with this Court by Debtor.  The DEQ Claim is Allowed under this Creditor Plan and is subject to the treatment hereunder.

**1.28.    Diatomite** means Diatomite Corporation of America, Debtor's largest creditor.

**1.29.    Diatomite Adversary Proceeding** means that certain adversary proceeding entitled *Diatomite Corporation of America v. Anthony Cipollone and Domenick Cipollone*, No. 21-01059-NHL, pending in the Bankruptcy Court.

**1.30.    Diatomite Note** means the purchase money promissory note, dated April 27, 2017, in the original principal amount of $7,000,000, made by Debtor and payable to Diatomite.

**1.31.    Diatomite Claim** means the $7,280,000 Claim asserted by Diatomite, pursuant to the Diatomite Note, and Diatomite's separate unliquidated Claim for breach of the Side Letter, as evidenced by Proof of Claim No. 8-1.  The Diatomite Unsecured Claim is Allowed under this Creditor Plan and is subject to the treatment hereunder.

**1.32.    Disbursing Agent** means one or more of the Plan Proponents, as the Plan Proponents may determine.

**1.33.    Disclosure Statement** means that certain disclosure statement relating to the Creditor Plan, as amended or modified from time to time, including, among other things, all exhibits and schedules thereto.

**1.34.    Disputed Claim** means (i) either (A) a Claim in a particular Class, as to which a proof of claim has been filed or scheduled or is deemed to have been filed under applicable law, or (B) an Administrative Expense Claim, and in either case, as to which an objection (including via a contested matter, adversary proceeding, or equivalent proceeding) has been or is filed in accordance with the Creditor Plan, the Bankruptcy Code, or the Bankruptcy Rules, which objection has not been withdrawn or determined by a Final Order; and (ii) prior to any objection being filed, any Claim with respect to which (A) the amount of the Claim specified in a Proof of Claim that exceeds the amount of any corresponding Claim scheduled by Debtor; (B) any corresponding Claim scheduled by Debtor has been scheduled as Disputed, Contingent or unliquidated, irrespective of the amount scheduled; or (C) no corresponding Claim has been scheduled by the Debtor—provided, however, that a Disputed Claim shall not include any portion of such Claim that is an Allowed Claim.

**1.35.    Distribution** means Cash, property, interests in property or other value distributed to Holders of Allowed Claims, or their designated agents, under this Creditor Plan.

**1.36.    Distribution Record Date** means five Business Days prior to the Confirmation Date.

**1.37.    Effective Date** means the first Business Day after the Confirmation Date on which the conditions precedent specified herein have been either satisfied or waived.

**1.38.    Effective Date Distributions** means all the Distributions required to be made on the Effective Date under this Creditor Plan to the Holders of Claims that are Allowed as of the Effective Date.

**1.39.    Entity** means an "entity" as defined in Section 101(15) of the Bankruptcy Code.

**1.40.    Estate** means the estate created in Debtor's chapter 11 bankruptcy case, containing all property and other interests of Debtor, pursuant to Bankruptcy Code Section 541.

**1.41.    Estate Claims** means (1) the Avoidance Actions; (2) direct or derivative claims or causes of action against any and all current and former officers, directors, shareholders, members, mangers, employees, affiliates or Insiders of Debtor, including but not limited to for breach of fiduciary duty or aiding and abetting breach of fiduciary duty, or under and pursuant to any primary director and officer liability, employment practices liability, or fiduciary liability insurance policies (including for bad faith) maintained by Debtor; (3) the right to seek a determination by the Bankruptcy Court of any tax, fine or penalty relating to a tax, or any addition to a tax, under Section 505 of the Bankruptcy Code; and (4) all other rights, claims or causes of action held by the Estate.

**1.42.    Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Case, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or Bankruptcy Rule 9024, or Bankruptcy Rule 8002(d)(1)(B), may be filed relating to such order shall not cause such order to not be a Final Order.

**1.43.    General Unsecured Claim** means any pre-petition unsecured Claim against the Debtor's Estate that is not an Administrative Expense Claim, Compensation and Reimbursement Claim, a Priority Tax Claim, Secured Claim, or a Subordinated Claim.

**1.44.    Holder** means the legal or beneficial holder of a Claim or Interest.

**1.45.    Impaired** means, with respect to a Claim or Interest, that such Class of Claims or Interests is impaired within the meaning of the Bankruptcy Code Section 1124.

**1.46.    Insider** means an "insider" of Debtor, as defined in Section 101(31) of the Bankruptcy Code.

**1.47.    Interest** means the interest of any Holder of an equity security of Debtor, within the meaning of Bankruptcy Code Section 101(16), represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership or membership interest in Debtor, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest, including a partnership, limited liability company or similar interest in Debtor.

**1.48.    Lien** means a "lien" as defined in § 101(37) of the Bankruptcy Code.

**1.49.    Local Bankruptcy Rules** means the Local Bankruptcy Rules for the Eastern District of New York.

**1.50.    New Equity** means a single class of equity interests in the Reorganized Debtor to be authorized, issued, or reserved on the Effective Date pursuant to the Creditor Plan, and as provided in the Disclosure Statement

**1.51.    Person** means any individual, corporation, partnership, joint venture, association, limited liability company, joint stock company, trust, unincorporated organization, government or agency or political subdivision thereof or any other Entity.

**1.52.    Petition Date** means May 3, 2019, the date on which Debtor's chapter 11 bankruptcy petition was filed with the Bankruptcy Court.

**1.53.    Plan Proponents** means Diatomite and the Cipollones, the proponents of this Joint Creditor Plan of Reorganization.

**1.54.    Plan Proponent Administrative Expense Claim** means an Administrative Expense Claim for the costs and expenses toward confirmation of this Creditor Plan, or any other Administrative Expense Claim of the Plan Proponents, including Compensation and Reimbursement Claims, that they are entitled to assert.

**1.55.    Plan Supplement** means all documents, forms of documents, schedules and exhibits to this Creditor Plan to be executed, delivered, assumed, and/or performed in conjunction with consummation of this Creditor Plan on the Effective Date.

**1.56.    Priority Tax Claim** means any Claim of a governmental unit pursuant to Bankruptcy Code Sections 502(i) and 507(a)(8); provided, however, that any Claims for penalties asserted by governmental units shall not be Priority Tax Claims.

**1.57.   Professional** means any professional firm or professional Person retained by Debtor in connection with the Chapter 11 Case pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.58.   Proof of Claim or Interest** means a written statement conforming substantially to the appropriate official form and Bankruptcy Rule 3001, describing the basis and amount of a Claim or Interest, together with supporting documentation evidencing such Claim or Interest, which complies with applicable provisions of this Creditor Plan, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any orders of the Bankruptcy Court.

**1.59.   Property** means Debtor's sole asset—a 977-acre parcel of undeveloped land located within the environmentally-protected Fones Cliffs area in Richmond County, Virginia.

**1.60.   Pro Rata Share** means, as to a particular Holder of a particular Claim, the ratio that the amount of such Claim held by such claimholder bears to the aggregate amount of all Claims in the particular Class or category.  Such ratio shall be calculated as if all Claims in the particular Class or category asserted against Debtor are Allowed Claims as of the Effective Date, unless specifically provided otherwise in the Creditor Plan.

**1.61.   Rejection Damages Claim** means any Claim arising from, or relating to, the rejection of an executory contract or unexpired lease pursuant to Section 365(a) of the Bankruptcy Code by Debtor, as limited, in the case of a rejected unexpired lease, by Section 502(b)(6) of the Bankruptcy Code.

**1.62.   Related Persons** means, with respect to any Person, such Person's predecessors, successors, assigns and present and former affiliates (whether by operation of law or otherwise) and each of their respective members, partners, equity holders, officers, directors, employees, representatives, advisors, attorneys, auditors, agents, and professionals, in each case acting in such capacity, and any Person claiming by or through any of them.

**1.63.   Released Parties** means the Plan Proponents and any of its officers, directors, members, general partners, managers or employees (acting in such capacity), any professional person employed by it, or any of its other Related Persons.

**1.64.   Releasing Parties** means the Debtor and its Related Persons, and any Holder of a Claim or Interest (except the Plan Proponents) and their Related Persons, and all Persons who are entitled to assert Claims derivatively or through those Persons.

**1.65.   Reorganized Debtor** means the Debtor, as reorganized pursuant to and under the Creditor Plan, or any successor thereto by merger, consolidation, or otherwise on or after the Effective Date, including any transferee, assign, or successor of the Reorganized Debtor created to issue the New Equity as determined by the Debtor prior to the Effective Date.

**1.66.   Schedules** means the schedules of assets and liabilities and the statements of financial affairs filed under Docket No. 11 in the Debtor's Chapter 11 Case by Debtor pursuant to Bankruptcy Code Section 521 and Bankruptcy Rule 1007.

**1.67.   Secured Claim** means a Claim, or the portion of a Claim, secured by a valid and perfected Lien on collateral that is enforceable pursuant to applicable law and is not a Disputed Claim or otherwise subject to legal challenge.  For avoidance of doubt, the Cipollone Claim is deemed not to be a Secured Claim under this Creditor Plan.

**1.68.   Side Letter** means the Side Letter agreement, dated April 27, 2017 between Virginia True and Diatomite, executed in connection with the Diatomite Note.

**1.69.   Subordinated Claim** means any Claim or portion of any Claim subject to subordination under Bankruptcy Code Section 510 or any Claim held by an Insider that is not an Allowed Administrative Expense Claim.

**1.70.   Transfer Taxes** means any and all stamp, real estate transfer, mortgage recording, or other similar taxes or governmental assessments in the United States or imposed by any other governmental unit with respect to the transfer of a property or interest therein.

**1.71.   Unimpaired** means, with respect to a Claim or Interest, a Class of Claims or Interests that is not Impaired within the meaning of Bankruptcy Code Section 1124.

**1.72.   United States Trustee** means the United States Trustee for the Eastern District of New York.

**1.73.   United States Trustee Fees** means all fees and charges assessed against the Estate under Section 1930 of title 28 of the United States Code.

**1.74.   Voting Record Date** means the date first set for the hearing on preliminary approval of the Disclosure Statement.

## SECTION 2.  TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to Section 1123(a)(1) of the Bankruptcy Code, this Creditor Plan does not classify Administrative Expense Claims, Compensation and Reimbursement Claims, Priority Tax Claims, or United States Trustee Fees. Such Claims, to the extent they are Allowed, shall receive the treatment provided in this Section 2 in full satisfaction, release, and discharge thereof.

### 2.1.   Administrative Expense Claims

Except to the extent that a Holder of an Allowed Administrative Expense Claim agrees to a less favorable treatment or has been paid prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Administrative Expense Claim, each Holder of an Allowed Administrative Expense Claim shall be paid in full, in Cash, by the Disbursing Agent from Creditor Plan Funding (a) on the Effective Date or as soon thereafter as is reasonably practicable or (b) if an Administrative Expense Claim is Allowed after

the Effective Date, on the date such Administrative Expense Claim is Allowed or as soon thereafter as is reasonable practicable, or when due.

The Holder of an Administrative Expense Claim, other than (i) a Compensation and Reimbursement Claim, (ii) an Administrative Expense Claim that has been Allowed on or before the Effective Date, (iii) the Plan Proponent Administrative Expense Claim, or (iv) fees of the United States Trustee arising under 28 U.S.C. § 1930 and any applicable interest thereon, must file a request for payment of such Administrative Expense Claim, together with supporting documentation, so as to be received on or before the date that is 15 days after the Effective Date. Notwithstanding anything else contained herein or in the Creditor Plan, the Plan Proponent Administrative Expense Claim shall be deemed Allowed on the Effective Date and shall be paid pursuant to this Creditor Plan.

Unless there is an objection to a timely filed and properly served Administrative Expense Claim by the applicable objection deadline, or such Administrative Expense Claim has already been Allowed or disallowed, then such Administrative Expense Claim shall be deemed Allowed in the amount requested. Absent a settlement of an objection to an Administrative Expense Claim, the Bankruptcy Court shall determine whether such Administrative Expense Claim should be Allowed and, if so, in what amount.

Holders of Administrative Expense Claims are not entitled to vote on the Creditor Plan, as they are deemed to have accepted the Creditor Plan.

### 2.2.    Compensation and Reimbursement Claims

All final requests for payment of Claims of a Professional arising from services rendered on or before the Confirmation Date shall be filed no later than 21 days after the Confirmation Date. All requests for payment of Claims of a Professional arising from services rendered after the Confirmation Date shall be filed no later than 15 days after the Effective Date.

After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and any order of the Bankruptcy Court, the Allowed amounts of such accrued Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court.

Allowed Compensation and Reimbursement Claims of a Professional shall be paid in full, in Cash, by the Disbursing Agent from Creditor Plan Funding (a) as soon as is reasonably practicable following the later of (i) the Effective Date and (ii) the date upon which the order relating to any such Allowed Compensation and Reimbursement Claim is entered by the Bankruptcy Court or (b) upon such other terms as agreed by the Holder of such an Allowed Compensation and Reimbursement Claim.

The Plan Proponents estimate based on available disclosures in this case a total of $850,000 in Allowed Administrative Expense Claims and Allowed Compensation and Reimbursement Claims.  The Plan Proponents reserve all rights with respect to such claims.  Holders of Compensation and Reimbursement Claims are not entitled to vote on the Creditor Plan, as they are deemed to have accepted the Creditor Plan.

### 2.3.    Priority Tax Claims

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment or has been paid prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of and in exchange for release of each Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim shall be paid in full, in Cash, by the Disbursing Agent from Creditor Plan Funding as soon as is reasonably practicable following the later of (i) the Effective Date; or (ii) the date the Allowed Priority Tax Claim becomes an Allowed Claim.

On the Effective Date, any Liens securing any Allowed Priority Tax Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

Only one Priority Tax Claim was asserted against the Estate—a priority Claim for $39.75 by the New York State Department of Taxation and Finance (Proof of Claim No. 12). Holders of Priority Tax Claims are not entitled to vote on the Creditor Plan, as they are deemed to have accepted the Creditor Plan. Any Claims asserted by a governmental unit on account of any penalties and assessments, including the DEQ Claim, shall not be Priority Tax Claims and shall be treated as General Unsecured Claims.

### 2.4.    United States Trustee Fees

United States Trustee Fees incurred by the United States Trustee prior to the Effective Date and not yet paid shall be paid in full, in Cash, by the Disbursing Agent from Creditor Plan Funding on the Effective Date in accordance with the applicable schedule for payment of such fees, including any interest thereon. Until the Chapter 11 Case is closed by entry of a Final Order of the Bankruptcy Court, the Reorganized Debtor shall pay all additional United States Trustee Fees incurred in accordance with the applicable schedule for the payment of such fees, including any interest thereon from Creditor Plan Funding or other funds held by the Reorganized Debtor.

## SECTION 3.  CLASSIFICATION OF CLAIMS AND INTERESTS

The following table designates the Classes of Claims against and Interests in the Debtor's Estate, and specifies which of those Classes are (i) Impaired or Unimpaired by this Plan, (ii) entitled to vote to accept this Plan in accordance with Section 1126 of the Bankruptcy Code, (iii) deemed to reject this Plan, or (iv) deemed to accept this Plan. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest is an Allowed Claim or Interest in that Class and has not been paid, released, settled or otherwise satisfied prior to the Effective Date.

| Class | Description | Treatment | Entitled to Vote | Estimated Recovery under Creditor Plan |
|-------|-------------|-----------|------------------|----------------------------------------|
| --- | Administrative Expense Claims | Payment in full or consent to other treatment | No | 100% |

| Class | Description | Treatment | Entitled to Vote | Estimated Recovery under Creditor Plan |
|---|---|---|---|---|
| --- | Compensation and Reimbursement Claims | Payment in full or consent to other treatment | No | 100% |
| --- | Priority Tax Claims | Payment in full or consent to other treatment | No | 100% |
| --- | United States Trustee Fees | Payment in full or consent to other treatment | No | 100% |
| 1 | Secured Claims | Impaired – The Cipollone Claim is deemed Allowed as a Secured Claim in the reduced amount of $3 million, as further described herein. | Yes | 100% |
| 2(a) | General Unsecured Claims | Impaired | Yes | ~93% |
| 2(b) | Plan Proponents' Unsecured Claims | Impaired | Yes | N/A[1] |
| 3 | Subordinated Insider Claims | Impaired | No | 0% |
| 4 | Interests | Impaired | No | 0% |

## SECTION 4.  TREATMENT OF CLAIMS AND INTERESTS

The Allowed Claims and Interests in each Class shall receive the following treatment under the Creditor Plan in full satisfaction, release, and discharge thereof. As set forth herein, only members of Classes 2 and 3 are entitled to vote on this Creditor Plan.

---

[1] As further described herein, in exchange for the provision of the Creditor Plan Funding and in satisfaction of the Diatomite Claim, Diatomite will receive 100% of the New Equity.  As the Cipollone Claim is deemed an Allowed Secured Claim herein, Class 2(b) consists only of the Diatomite Claim.

### 4.1.    Secured Claims (Class 1)

Except to the extent that a Holder of an Allowed Secured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed Secured Claim has not been paid prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of such Allowed Secured Claim, each Holder of an Allowed Secured Claim shall be paid in Cash by the Disbursing Agent the full unpaid amount of such Allowed Secured Claim that is validly secured, as follows:

The Cipollone Claim shall be deemed Allowed as a Secured Claim in the amount of $3 million.  In exchange Diatomite's treatment as set forth in Class 2(b), Diatomite will advance funds as Creditor Plan Funding to pay $2 million Cash to the Cipollones and, additionally, the Reorganized Debtor shall provide a first priority mortgage and note on the Property for $1 million payable in one year, without interest, in full satisfaction of the Cipollone Claim and the Cipollone Note and Deed of Trust.

Any Allowed Secured Claim shall be paid without interest, *provided, however*, interest will begin to accrue on any unpaid sums one year after the Effective Date at the rate of 6% per annum.

The only other party that filed a Proof of Claim asserting a secured Claim was Robert C. Smith PLC (Proof of Claim No. 2).  The Debtor has objected to all three Claims filed by Robert C. Smith PLC (Proofs of Claim Nos. 2-4) and has indicated that it anticipates the outcome or resolution of the Claims objection will be that Robert C. Smith PLC will have a $100,000 unsecured Claim in the aggregate against the Estate.

Class 1 is Impaired and is entitled to vote to accept or reject this Creditor Plan.

### 4.2.    General Unsecured Claims (Class 2(a))

Except to the extent that a Holder of an Allowed General Unsecured Claim has agreed to a less favorable treatment of such Claim, and only to the extent that any such Allowed General Unsecured Claim has not been paid prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim, shall be paid as follows:

In exchange for Diatomite's treatment as set forth in Class 2(b), Diatomite will advance funds as Creditor Plan Funding and, after all senior Allowed Claims are paid in full, Holders of Allowed General Unsecured Claims in Class 2(a), excluding the Plan Proponents' Unsecured Claims (Class 2(b)), shall be paid their Pro Rata Share of the remaining portion of such Creditor Plan Funding up to the full Allowed amount of their Claims.

The following is a chart of the General Unsecured Claims and the anticipated treatment of those claims based on publicly available information in this case:[2]

---

[2]    Certain information in this chart is based on Debtor's own treatment of these Claims in Debtor's proposed plan.  *See* Disclosure Statement in Connection with Chapter 11 Plan of Reorganization Proposed by Debtor (Doc. No. 172).

| Claim/ Sched. No. | Claimant | Claim Amount | Anticipated Allowed Claim Amount |
|---|---|---|---|
| 1 | Department of Treasury/Internal Revenue Service | $4,800.00 | $4,800.00 |
| 2 | Robert C. Smith PLC | $201,338.21 | $100,000.00 |
| 3 | Robert C. Smith PLC | $555,680.07 | $ 0.00 |
| 4 | Robert C. Smith PLC | $555,680.07 | $0.00 |
| 5 | River Title & Escrow, LLC | $960.50 | $960.50 |
| 6 | Hirschler Fleischer, a Professional Corporation | $18,702.10 | $18,702.10 |
| 7 | McKenzieSnyder, Inc. | $11,297.50 | $11,297.50 |
| 11 | Greene and Company | $10,000.00 | $10,000.00 |
| 12 | NY State Department of Taxation and Finance | $2,024.94 | $2,024.94 |
| 13 | Commonwealth of Virginia | $200,000.00 | $200,000.00 |
| Sc. E/F 1 | Andrews Development Inc. | $5,000.00 | $5,000.00 |
| Sc. E/F 5 | ECS Mid Atlantic LLC | $2679.70 | $2,679.79 |
| Sc. E/F 9 | Jeff Howeth PC | $50,000.00 | $50,000.00 |
| Sc. E/F 10 | Reed Smith LLP | $23,591.25 | $23,591.25 |
| Sc. E/F 12 | Rubino & Company (*Waived*) | $23,000.00 | $0.00 |
|  |  |  |  |
| | **TOTALS** | $1,664,754.34 | $429,056.08 |

Class 2(a) is Impaired, and members of Class 2(a) are entitled to vote to accept or reject this Creditor Plan.

### 4.3.    Plan Proponents' Unsecured Claims (Class 2(b))

Except to the extent that the Holders of the Plan Proponents' Unsecured Claims agreed to a less favorable treatment of the Plan Proponents' Unsecured Claims, and only to the extent that the Holders of the Plan Proponents' Unsecured Claims have not been paid prior to the Effective Date, in full and final satisfaction, settlement, release, and discharge of the Plan Proponents' Unsecured Claims, the Holders of the Plan Proponents' Unsecured Claims shall be paid as follows:

The Diatomite Claim shall be the only claim in Class 2(b).  In exchange for advancing funds as Creditor Plan Funding to pay: (i) all Allowed Administrative Expense Claims, Allowed Compensation and Reimbursement Claims, Allowed Priority Tax Claims, and United States Trustee Fees that are Allowed as of the Effective Date; (ii) distributions to the Holders of Allowed General Unsecured Claims (other than the Plan Proponents); and (iii) $2 million Cash to the

Cipollones, all as set forth in Sections 4.1 and 4.2 *supra*, Diatomite shall receive 100% of the New Equity of the Reorganized Debtor.

Diatomite, its assignee, of the Reorganized Debtor, as applicable, shall receive the Property free and clear of all Liens, claims, charges, encumbrances or interests of any kind or nature, but subject to the non-economic terms of the Consent Decree, if it is approved and implemented in full prior to the Effective Date.

Nothing herein shall impair, waive or otherwise effect any other Claims held by the Plan Proponents or any claims or causes of action that the Plan Proponents have or may have against any other Entity or Person relating to or arising in connection with the Diatomite Unsecured Claim (except as otherwise provided herein), all of which shall survive the Effective Date, Confirmation, and any actions taken in furtherance of this Creditor Plan.

Class 2(b) is Impaired, and the Class 2(b) members are entitled to vote to accept or reject this Creditor Plan.

### 4.4.    Subordinated Allowed Insider Claims (Class 3)

Holders of Allowed Subordinated Insider Claims will not receive any Distributions on account of such Subordinated Claims unless and until all Allowed Claims in Classes 1, 2(a), and 2(b) have been paid in full, including all pre- and post-judgment interest, in which case, each Holder of an Allowed Class 3 Subordinated Insider Claim shall receive such Holder's Pro Rata Share of any remaining funds in Creditor Plan Funding.

These Subordinated Insider Claims are Claims held by the Debtor's Insiders, *i.e.*, Fernandez and Kleinhendler, who are the sole owners, directors, and officers of Debtor. Fernandez's and Kleinhendler's Claims will be recharacterized as capital contributions under the Debtor's proposed Chapter 11 plan. At this time, the Plan Proponents do not anticipate any recoveries on account of Allowed Subordinated Insider Claims.

Class 3 is Impaired, is deemed to reject this Creditor Plan, and is not entitled to vote to accept or reject this Creditor Plan.

### 4.5.    Interests (Class 4)

After payment in full to all Creditors holding Allowed Claims has been made under this Creditor Plan, and appropriate amounts have been reserved for Disputed Claims, any excess Available Cash shall be distributed to the Holders of Allowed Interests in Debtor. At this time, the Plan Proponents do not anticipate that any Holder of an Allowed Interest will receive or retain any Interest in the Debtor, the Estate, or the Property. Each such Interest will be cancelled as of the Effective Date.

Class 4 is Impaired, is deemed to reject this Creditor Plan, and is not entitled to vote to accept or reject this Creditor Plan.

## SECTION 5.  ACCEPTANCE OR REJECTION OF THE CREDITOR PLAN

### 5.1.  Impaired Classes

Pursuant to Section 1126 of the Bankruptcy Code, each Impaired Class of Claims or Interests that will receive a Distribution pursuant to this Creditor Plan may vote separately to accept or reject this Creditor Plan.  Each Holder of an Allowed Claim in an Impaired Class as of the Voting Record Date shall receive a ballot and may cast a vote to accept or reject this Creditor Plan.

Classes 1, 2(a), and 2(b) are impaired and entitled to vote on the Plan.  Classes 3 and 4 are entitled only to the contingent right to receive Distributions after satisfaction in full of all other Classes of Allowed Claims, as set forth herein, which contingency may never occur.  As such, Classes 3 & 4 are deemed to have rejected the Creditor Plan in accordance with Section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject this Creditor Plan. Classes 3 & 4 are not expected to receive any Distributions under this Creditor Plan and are, therefore, conclusively presumed to have rejected this Creditor Plan pursuant to Section 1126(g) of the Bankruptcy Code and is not entitled to vote to accept or reject this Creditor Plan.

### 5.2.  Acceptance by a Class

A Class of Claims entitled to vote to accept or reject this Creditor Plan shall be deemed to accept this Creditor Plan if the Holders of Claims in such voting Class that hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Claims that vote in such Class vote to accept this Creditor Plan.

### 5.3.  Claims and Interests Not Entitled to Vote

Holders of Claims are not entitled to vote if, as of the Voting Record Date, the Claim (a) has been disallowed; (b) is the subject of a pending objection, whether adversary proceeding, contested matter, or similar proceeding; or (c)(i) was not listed on Debtor's Schedules or was listed on Debtor's Schedules as unliquidated, contingent or disputed, and (ii) a Proof of Claim was not filed or was filed for an unliquidated, contingent or disputed Claim, unless on or before the Voting Record Date the Bankruptcy Court enters a Final Order directing otherwise.  However, if a Claim is disallowed or Disputed in part, the Holder shall be entitled to vote the Allowed portion of the Claim.  Insiders are entitled to vote on the Creditor Plan subject to and in accordance with the provisions of this Creditor Plan and the Bankruptcy Code.

## SECTION 6.  IMPLEMENTATION OF THIS CREDITOR PLAN

### 6.1.  Implementation

The Plan Proponents shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of this Creditor Plan. The Confirmation Order shall contain appropriate provisions, consistent with Section 1142 of the Bankruptcy Code, directing Debtor and any other necessary party to perform any act, including the satisfaction of any lien, or the avoidance, subordination, or recharacterization of any Claim or Lien, that is necessary for the consummation of this Creditor Plan.

### 6.2.    General Settlement of Claims and Interests

As discussed further in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Creditor Plan, upon the Effective Date, the provisions of the Creditor Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, discharged, or otherwise resolved pursuant to the Creditor Plan.  The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtor and its Estate.  Distributions made to Holders of Allowed Claims in any Class are intended to be and shall be final.

### 6.3.    Continued Corporate Existence

Subject to any restructuring transactions as permitted under this Section 6 or otherwise provided in the Creditor Plan, the Debtor shall continue to exist after the Effective Date as a separate corporation with all the powers of a corporation pursuant to laws of the state of Virginia and pursuant to the certificates of incorporation and bylaws in effect prior to the Effective Date, except to the extent such certificate of incorporation or bylaws are amended by or in connection with the Creditor Plan or otherwise, and, to the extent such documents are amended, such documents are deemed to be amended pursuant to the Creditor Plan and require no further action or approval (other than any requisite filings required under applicable state, provincial, or federal law).

### 6.4.    Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Creditor Plan or in any agreement, instrument, or other document incorporated in the Creditor Plan, on the Effective Date, all property in the Estate, including the Property, all Causes of Action, and any property acquired by the Debtor pursuant to the Creditor Plan shall vest in the Reorganized Debtor, free and clear of all liens, Claims, charges, or other encumbrances.  On and after the Effective Date, except as otherwise provided in the Creditor Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

### 6.5.    Sources for Creditor Plan Distributions

The Creditor Plan shall be funded by the Creditor Plan Funding.  These funds shall be utilized to satisfy payments consistent with the terms of this Creditor Plan.

### 6.6.    Transfer Taxes

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property pursuant to the Creditor Plan and the making or delivery of an instrument of transfer of property or otherwise, pursuant to or in connection with the Creditor Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax or governmental assessment in the United States or by any other governmental unit, and the Confirmation Order shall direct and be deemed to direct the appropriate federal, state or local (domestic or foreign) governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to or in connection with such transfers of property without the payment of any such tax or governmental assessment. Such exemption specifically applies, without limitation, to any transfer, express or implied, of the Property contemplated by this Creditor Plan.

### 6.7.    Preservation of Causes of Action

Except as otherwise provided in the Creditor Plan, or in any contract, instrument, release or other agreement entered into or effected in connection with or pursuant to the Creditor Plan, in accordance with Section 1123(b) of the Bankruptcy Code, any and all Estate Claims that were owned by the Debtor or the Estate as of the Effective Date, including all Avoidance Actions, shall vest in the Estate on the Effective Date, and the Reorganized Debtor shall have the exclusive right to pursue and enforce such Claims and causes of action. Notwithstanding the foregoing, in consideration for acting as the Plan Proponents, no such Claims or causes of action shall be brought against Diatomite, the Cipollones, and/or their Related Persons.

### 6.8.    Execution of Documents

A.    On or after the Effective Date, the Plan Proponents and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Creditor Plan.

B.    Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Reorganized Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate, or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Creditor Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

### 6.9.    Filing of Documents

Pursuant to Sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Creditor Plan, and any and all notices of

satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Creditor Plan.

### 6.10. Cancelling of Existing Securities and Agreements

Except (i) as otherwise expressly provided in the Creditor Plan, (ii) with respect to executory contracts or unexpired leases that have been assumed and assigned by Debtor, (iii) for purposes of evidencing a right to distributions under the Creditor Plan, or (iv) with respect to any Claim that is reinstated and rendered unimpaired under the Creditor Plan (if any), on the Effective Date in accordance with the Creditor Plan, all instruments evidencing any Claims against Debtor or Interest in Debtor shall be deemed automatically cancelled without further act or action under any applicable agreement, law, regulation, order, or rule and the obligations of Debtor thereunder shall be discharged.

### 6.11. Exemption from Registration Requirements

Pursuant to section 1145 of the Bankruptcy Code, the issuance of the New Equity, as contemplated by the Creditor Plan, is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities. The New Equity issued by the Reorganized Debtor pursuant to section 1145 of the Bankruptcy Code (a) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (b) are freely tradable and transferable by any initial recipient thereof that (i) is not an "affiliate" of the Reorganized Debtor as defined in Rule 144(a)(1) under the Securities Act, (ii) has not been such an "affiliate" within ninety (90) calendar days of such transfer, (iii) has not acquired the Securities from an "affiliate" within one year of such transfer, and (iv) is not an entity that is an "underwriter" as defined in subsection (b) of section 1145 of the Bankruptcy Code.

To the extent Securities were offered prior to the filing of this Plan, such Securities were offered in reliance on the exemption provided by section 4(a)(2) of the Securities Act.

Any transfer agent shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal opinion regarding whether the New Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no person may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including, for the avoidance of doubt, whether the New Equity is exempt from registration and/or eligible for book-entry delivery, settlement, and depository services.

### 6.12. Directors and Officers of the Reorganized Debtor

The directors and officers of the Reorganized Debtor shall be identified before the Effective Date. To the extent any such director or officer is an "insider" as defined in section 101(31) of the Bankruptcy Code, the nature of any compensation as of the Effective Date to be paid to such director or officer will also be disclosed.

## SECTION 7.  DISTRIBUTIONS

### 7.1.  Disbursing Agent

The Disbursing Agent shall distribute all Cash or other property to be distributed under the Creditor Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Creditor Plan. Pending the final distribution of all sums distributable under the terms of the Creditor Plan, the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

### 7.2.  Distribution Record Date

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Interests as maintained by Debtor, or its agents, shall be deemed closed, and there shall be no further changes in the record Holders of any of the Claims or Interests.  The Reorganized Debtor and the Plan Proponents shall have no obligation to recognize any ownership transfer of the Claims or Interests occurring on or after the Distribution Record Date.  The Reorganized Debtor and the Plan Proponents, or any party responsible for making Distributions, shall be entitled to recognize and deal for all purposes under this Creditor Plan only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 7.3.  Date of Distributions

Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed as of the Effective Date shall be made on the Effective Date or as soon thereafter as is reasonably practicable.  Except as otherwise provided herein, any Distributions and deliveries to be made hereunder with respect to Claims that are Allowed after the Effective Date shall be made as soon as is reasonably practicable after the date on which such Claim becomes Allowed.  Distributions made after the Effective Date to Holders of Allowed Claims shall be deemed to have been made on the Effective Date and, except as otherwise provided in this Creditor Plan, no interest shall accrue or be payable with respect to such Claims or any Distribution related thereto.  In the event that any payment or act under this Creditor Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 7.4.  No Distributions Pending Allowance

Notwithstanding any other provision of the Creditor Plan, no payment or distribution of any kind shall be made with respect to any portion of a Claim that is a Disputed Claim unless and until all objections to such Claim are resolved by Final Order. For the avoidance of doubt, any portion of a Claim that is an Allowed Claim shall be timely paid pursuant to the provisions of the Creditor Plan, and any Claim that is deemed an Allowed Claim pursuant to the terms of the Creditor Plan shall not be a Disputed Claim.

### 7.5.    Postpetition Interest on Claims

Except as may be otherwise expressly provided herein, postpetition interest shall not accrue or be paid on any Claims against Debtor, and no Holder of any such Claim against Debtor shall be entitled to payment or Distributions on account of interest accruing on or after the Petition Date.

### 7.6.    Powers of Disbursing Agent

The Disbursing Agent may (i) effect all actions and execute all agreements, instruments, and other documents necessary to carry out the provisions of this Creditor Plan; (ii) make all Distributions contemplated hereby; and (iii) perform such other duties as may be required of the Disbursing Agent pursuant to this Creditor Plan.

### 7.7.    Surrender of Instruments

Pursuant to Bankruptcy Code Section 1143, as a condition precedent to receiving any Distribution under this Creditor Plan, each holder of a certificated instrument must surrender such instrument held by it to the Disbursing Agent or its designee.  Any holder of such instrument that fails to (i) surrender the instrument or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the third anniversary of the Confirmation Date,  shall be deemed to have forfeited all rights and Claims and may not participate in any Distribution hereunder.

### 7.8.    Delivery of Distributions

If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Disbursing Agent shall have no obligation to determine the correct current address of such Holder, and no Distribution to such Holder shall be made unless and until the Disbursing Agent is notified, in writing, by the Holder of the current address of such Holder within 90 days of such Distribution, at which time a Distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code at the expiration of 90 days from the Distribution.  After such date, all unclaimed property or interest in property shall be contributed to Creditor Plan Funding and distributed in accordance with the terms of the Creditor Plan.

### 7.9.    Manner of Payment

Any Distributions to be made pursuant to this Creditor Plan shall be made by checks drawn on accounts maintained by the Reorganized Debtor or the Plan Proponents, as applicable, or by wire transfer as circumstances justify.

### 7.10.    Setoffs

Disbursing Agent, pursuant to the Bankruptcy Code (including Section 553 of the Bankruptcy Code), applicable bankruptcy or nonbankruptcy law, with the approval of the

Bankruptcy Court and upon no less than three days' notice to the applicable Holder of a Claim or Interest, or as may be agreed to by the Holder of a Claim or Interest, may, but shall not be required to, set off against any Allowed Claim or Interest and the Distributions to be made pursuant to this Creditor Plan on account of such Allowed Claim or Interest (before any Distribution is to be made on account of such Allowed Claim or Interest), any claims of any nature whatsoever that Debtor may have against the Holder of such Allowed Claim or Interest, provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim or Interest under the Creditor Plan shall constitute a waiver or release of any such claim the Estate may have against the Holder of such Claim or Interest.

### 7.11.    Allocation of Distributions Between Principal and Interest

To the extent that any Allowed Claim entitled to a Distribution under this Creditor Plan includes both principal and accrued but unpaid interest, such Distribution shall be allocated to the principal amount (as determined for federal income tax purposes) of the Claim first, and then to accrued but unpaid interest.

### 7.12.    Distributions Free and Clear

Except as otherwise provided in this Creditor Plan, any Distribution or transfer made under this Creditor Plan, including, without limitation, Distributions to any Holder of an Allowed Claim, shall be free and clear of any Liens, Claims, encumbrances, charges and other interests, and no other Entity shall have any interest, whether legal, beneficial or otherwise, in property distributed or transferred pursuant to this Creditor Plan.

## SECTION 8.  PROCEDURES FOR DISPUTED CLAIMS

### 8.1.    Allowance of Claims and Interests

Except as expressly provided herein, or in any order entered in the Chapter 11 Case prior to the Effective Date, including the Confirmation Order, no Claim or Interest shall be deemed Allowed unless and until such Claim or Interest is deemed Allowed under this Creditor Plan or the Bankruptcy Code or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11 Case allowing such Claim or Interest.

### 8.2.    Objections to Claims

On and after the Effective Date, the Reorganized Debtor or the Plan Proponents shall be entitled to file objections to all Claims and Interests that are otherwise not deemed Allowed Claims or Interests, including Claims listed on Debtor's Schedules, under this Creditor Plan, or otherwise. Any objections to Claims shall be served and filed on or before the later of (i) 180 days after the Effective Date or (ii) such later date as may be fixed by the Bankruptcy Court after reasonable notice and opportunity to object.  All fees and expenses incurred by the Plan Proponents, the Reorganized Debtor, or their professionals on and after the Effective Date in connection with the filing and prosecuting of objections shall be paid out of Available Cash.

### 8.3.    Estimation of Claims

The Reorganized Debtor or the Plan Proponents may (but are not required to) at any time request that the Bankruptcy Court estimate any Contingent Claim or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code for any reason, regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to such objection.  In the event that the Bankruptcy Court estimates any Contingent Claim or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.

### 8.4.    Distributions Relating to Disputed Claims

At such time as a Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall distribute to the Holder of such Claim the amount due to the Holder under this Creditor Plan.  To the extent that all or a portion of a Disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated *pro rata* to the Holders of Allowed Claims as set forth herein.

### 8.5.    Distributions after Allowance

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, a Distribution shall be made to the Holder of such Allowed Claim in accordance with the provisions of this Creditor Plan.  As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim the Distribution to which such Holder is entitled hereunder.

### 8.6.    Preservation of Rights to Settle Claims

Except as otherwise expressly provided herein, nothing contained in this Creditor Plan, the Plan Supplement, or in the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtor, the Reorganized Debtor, or the Plan Proponents may have under any provision of the Bankruptcy Code or any applicable nonbankruptcy law or rule, common law, equitable principle or other source of right or obligation, including, without limitation any and all claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim, and/or claim for setoff which seeks affirmative relief against Debtor, its officers, directors, or representatives.  This Section shall not apply to any claims sold, released, waived, relinquished, exculpated, compromised, or settled under this Creditor Plan or pursuant to a Final Order.  Except as expressly provided in this Creditor Plan, nothing contained in this Creditor Plan, the Plan Supplement, or in the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or equitable defense.  No Person or Entity may rely on the absence of a specific reference in this Creditor Plan or the Disclosure Statement to any cause of action against it as any indication that the Debtor will not pursue any and all available causes of action against them.

The rights of Debtor, the Plan Proponents, and the Reorganized Debtor to prosecute any and all causes of action against any Person or Entity are expressly reserved, except as otherwise expressly provided in this Creditor Plan.

### 8.7.    Disallowed Claims

All Claims held by Persons or Entities against whom or which Debtor has commenced a proceeding asserting a cause of action under Sections 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 548, 549 or 724(a) of the Bankruptcy Code shall be deemed disallowed Claims pursuant to § 502(d) of the Bankruptcy Code and Holders of such Claims shall not be entitled to vote to accept or reject this Creditor Plan.  Claims deemed disallowed pursuant to this Section 8.7 shall continue to be disallowed for all purposes until the Avoidance Action against such party has been settled or resolved by Final Order and any sums due to Debtor from such party have been paid.

## SECTION 9.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Plan Proponents are not aware of any applicable executory contracts or unexpired leases.  To the extent there are any, they are hereby rejected as of the Effective Date.

## SECTION 10.        CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

### 10.1.   Conditions Precedent

The occurrence of the Effective Date of this Creditor Plan is subject to the following conditions precedent:

A.    Bankruptcy Court approval of the Disclosure Statement in form and substance acceptable to the Plan Proponents;

B.    Entry of the Confirmation Order, as a Final Order, in form and substance acceptable to the Plan Proponents;

C.    All actions, documents, and agreements necessary to implement this Creditor Plan, including, without limitation, all actions, documents, and agreements necessary to implement transactions called for under this Creditor Plan, including funding of the Creditor Plan Funding, if any, having been effected or executed;

D.    The absence of any pending or threatened government action or any law that has the effect of or actually does prevent consummation of any transactions called for under this Creditor Plan; and

E.    There having been no modification or stay of the Confirmation Order or any other order that is a condition precedent to the effectiveness of this Plan.

### 10.2. Waiver of Conditions

Unless otherwise specifically provided in this Creditor Plan, the conditions set forth in Section 10.1 of this Creditor Plan may be waived in whole or in part by the Plan Proponents without notice to any other parties in interest or the Bankruptcy Court and without a hearing.

### 10.3. Effect of Failure of Conditions

If the conditions precedent specified in Section 10.1 hereof have not been satisfied or waived by the Plan Proponents within 120 days after the Confirmation Date, which period may be extended by the Plan Proponents, then (i) the Confirmation Order shall be vacated; (ii) no Distributions under this Creditor Plan shall be made; (iii) the Debtor and all Holders of Claims and Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred; and (iv) all of Debtor's obligations with respect to Claims and Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against Debtor or any other Person or Entity or to prejudice in any manner the rights of Debtor or any other Person or Entity in any further proceedings involving Debtor or otherwise.

## SECTION 11. EFFECT OF CONFIRMATION

### 11.1. Binding Effect

On the Effective Date, and effective as of the Effective Date, this Creditor Plan shall be binding upon Debtor, the Reorganized Debtor, the Plan Proponents, and all present and former Holders of Claims against and Interests in Debtor, and their respective Related Persons, regardless of whether any such Holder of a Claim or Interest has voted or failed to vote to accept or reject this Creditor Plan and regardless of whether any such Holder of a Claim or Interest is entitled to receive any Distribution under the Creditor Plan.

### 11.2. Discharge of Claims and Termination of Interests

To the fullest extent provided under Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in this Creditor Plan, the Distributions, rights, and treatment that are provided in this Creditor Plan shall be in full and final satisfaction, settlement, release, and discharge, as of the Effective Date, of all Claims, Interests, and causes of action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Estate, Debtor, or any of its assets, regardless of whether any property shall have been distributed or retained pursuant to this Creditor Plan on account of such Claims and Interests, including demands, liabilities, and causes of action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim or Interest based upon such Claim, debt, right, or Interest is filed or deemed filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such Claim, debt, right, or Interest is Allowed

pursuant to Section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted this Creditor Plan.  The Confirmation Order shall be a judicial determination of the discharge of all Claims and Interests subject to the Effective Date occurring, except as otherwise expressly provided in this Creditor Plan.  This Creditor Plan is a liquidating plan and, as provided in Section 1141(d)(3) of the Bankruptcy Code, the confirmation of a plan does not discharge a debtor if the plan provides for the liquidation of all or substantially all of the property of the estate.

### 11.3.    Compromise and Settlement of Claims, Interests, and Controversies

Pursuant to Section 363 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided pursuant to this Creditor Plan, the provisions of this Creditor Plan shall constitute a good faith compromise of all Claims, Interests, and controversies relating to the contractual, legal, and subordination rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Interest, or any Distribution to be made on account of such Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of Debtor, the Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

### 11.4.    Injunction

**Except as otherwise expressly provided in this Creditor Plan, the Confirmation Order or a separate order of the Bankruptcy Court, all Persons and Entities who have held, hold or may hold Claims against or Interests in the Debtor, are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtor on account of any such Claim or Interest; (c) creating, perfecting or enforcing any encumbrance of any kind against the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest; (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or against the property or interests in property of the Debtor on account of any such Claim or Interest; and (e) commencing or continuing in any manner any action or other proceeding of any kind with respect to any Claims and causes of action which are retained pursuant to this Plan. Such injunction shall extend to successors of the Debtor.**

### 11.5.    Terms of Injunctions or Stays

Except as otherwise provided in this Creditor Plan, to the extent permitted by applicable law and subject to the Bankruptcy Court's post-confirmation jurisdiction to modify the injunctions and stays under this Creditor Plan, (a) all injunctions with respect to or stays against an action against property of Debtor's Estate arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code, and in existence on the Confirmation Date, shall remain in full force and effect until such property is no longer property of Debtor's Estate; and (b) all other injunctions and stays arising under or entered during the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of (i) the

date that the Chapter 11 Case is closed pursuant to a Final Order of the Bankruptcy Court or (ii) the date that the Chapter 11 Case is dismissed pursuant to a Final Order of the Bankruptcy Court.

### 11.6.  Injunction Against Interference with Creditor Plan

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and Interests and other parties in interest, along with their respective Related Persons, including present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Creditor Plan by Debtor, the Plan Proponents, the Reorganized Debtor, and their respective affiliates, employees, advisors, officers and directors, agents, and other Related Persons.

### 11.7.  Debtor Releases

**EXCEPT AS OTHERWISE PROVIDED FOR IN THE CREDITOR PLAN, ON THE EFFECTIVE DATE, THE DEBTOR SHALL BE DEEMED TO HAVE RELEASED THE PLAN PROPONENTS AND THEIR RELATED PERSONS AND PROFESSIONALS FROM ANY AND ALL CLAIMS, CAUSES OF ACTIONS, AND OTHER LIABILITIES ARISING DURING THE CHAPTER 11 CASE BEFORE THE EFFECTIVE DATE FROM ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO, OR ARISING OUT OF THE CHAPTER 11 CASE AND RELATED PROCEEDINGS, INCLUDING, BUT NOT LIMITED TO, FILING OF THE CHAPTER 11 CASE, ADMINISTRATION OF THE CHAPTER 11 CASE, FORMULATION, NEGOTIATION, PREPARATION, DISSEMINATION, APPROVAL, EXECUTION, ADMINISTRATION, CONFIRMATION, IMPLEMENTATION, OR CONSUMMATION OF, AS WELL AS THE SOLICITATION OF VOTES FOR, THE CREDITOR PLAN (INCLUDING ALL DISTRIBUTIONS THEREUNDER), THE DISCLOSURE STATEMENT, AND THE PLAN SUPPLEMENT; PROVIDED, HOWEVER, THAT THE DEBTOR SHALL NOT BE DEEMED TO HAVE RELEASED ANY SUCH ENTITY OR PERSON FROM LIABILITY FOR GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.**

For avoidance of any doubt, the release and discharge provisions contained herein and in the Creditor Plan do not include any claims that the parties may have against Debtor's principals that relate to their own acts and not based on actions of the Debtor, including, without limitation, the pending non-bankruptcy litigation brought by Diatomite and its principal, Allan Applestein, against the Debtor's principal, Howard Kleinhendler, asserting malpractice, elder abuse, and related claims and actions commenced by the Cipollones against the Debtor's principals.

### 11.8.  Releases by Holders of Claims and Interests

**EACH HOLDER OF A CLAIM AGAINST OR INTEREST IN THE DEBTOR (WHETHER OR NOT ALLOWED), AND EACH PERSON OR ENTITY PARTICIPATING IN EXCHANGES AND DISTRIBUTIONS UNDER OR PURSUANT TO THIS CREDITOR PLAN, FOR ITSELF AND ITS RESPECTIVE SUCCESSORS, ASSIGNS, TRANSFEREES, CURRENT AND FORMER OFFICERS, DIRECTORS, AGENTS AND EMPLOYEES, OR OTHER RELATED PERSONS, IN EACH CASE IN THEIR CAPACITY AS SUCH, SHALL BE DEEMED TO HAVE RELEASED ANY AND**

**ALL CLAIMS AND CAUSES OF ACTION AGAINST (I) DEBTOR; (II) THE REORGANIZED DEBTOR; (III) THE PLAN PROPONENTS; (IV) THEIR RELATED PERSONS ARISING PRIOR TO THE EFFECTIVE DATE; PROVIDED, HOWEVER, NOTHING IN THIS SECTION SHALL BE CONSTRUED TO RELEASE OR EXCULPATE ANY PERSON OR ENTITY FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR FRAUD.**

For avoidance of any doubt, the release and discharge provisions contained herein and in the Creditor Plan do not include any claims that the parties may have against Debtor's principals that relate to their own acts and not based on actions of the Debtor, including, without limitation, the pending non-bankruptcy litigation brought by Diatomite and its principal, Allan Applestein, against the Debtor's principal, Howard Kleinhendler, asserting malpractice, elder abuse, and related claims and actions commenced by the Cipollones against the Debtor's principals.

### 11.9.   Exculpation

To the fullest extent permissible under applicable law, except as otherwise provided in the Creditor Plan or the Confirmation Order, upon the Effective Date, in consideration of sums to be distributed to or on behalf of the Holders of Claims and Interests under the Creditor Plan, the Creditor Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Released Parties, on the one hand, and the Releasing Parties on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, their Creditors or Interest Holders ever had or now have against the Released Parties through the Closing Date in connection with their Claim or Interests (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to Sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, or any claims based on the negotiation, submission and confirmation of the Creditor Plan); provided however, that the foregoing releases shall not operate to waive or release any Released Party on account of liability that is judicially determined pursuant to a Final Order to have resulted from such Released Party's fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any). Nothing contained in this Section 8.5 shall limit the liability of professionals pursuant to Rule 1.8(h)(1) of the New York State Rules of Professional Conduct. Neither the Debtor nor its Related Persons shall receive any release provided for herein.

Pursuant to Section 1123(b) of the Bankruptcy Code for good and valuable consideration, on and after the Effective Date, the Released Parties and each of their professionals are deemed released by the Debtor from any and all claims, obligations, rights, suits, damages, causes of action, remedies and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtor, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that the Debtor or the Estate would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtor, the Chapter 11 Case, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Creditor Plan, the business or contractual arrangements between the Debtor and any of the foregoing releases, the restructuring of Claims

and Interests before or during the Chapter 11 Case, the negotiation, formulation or preparation of the Creditor Plan or related agreements, instruments or other documents, or upon any other act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date. Neither the Debtor nor its Related Persons shall receive any release provided for herein.

These provisions do not operate as a release of any rights or remedies of Debtor or the Plan Proponents in connection with the Adversary Proceeding.

**11.10.  Release of Liens**

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to this Creditor Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged.

**SECTION 12.          RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Chapter 11 Case for, among other things, the following purposes:

A.      to hear and determine motions and/or applications for the assumption or rejection of executory contracts or unexpired leases and the allowance, classification, priority, compromise, estimation, or payment of Claims resulting therefrom;

B.      to determine any motion, adversary proceeding, application, contested matter, or other litigated matter pending on or commenced after the Confirmation Date;

C.      to ensure that Distributions to Holders of Allowed Claims are accomplished as provided herein;

D.      to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;

E.      to enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated;

F.      to issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Creditor Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

G.      to hear and determine any application to modify this Creditor Plan in accordance with applicable provisions of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Creditor Plan, the Disclosure

Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

H.    to hear and determine all applications under Sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

I.    to hear and determine requests for payment of Administrative Expense Claims;

J.    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Creditor Plan, the Confirmation Order, any transactions or payments contemplated hereby or under any agreement, instrument, or other document governing or relating to any of the foregoing;

K.    to hear, determine and adjudicate litigation involving the Estate Claims;

L.    to take action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate this Creditor Plan or to maintain the integrity of this Creditor Plan following consummation;

M.    to hear disputes arising out of, and to enforce orders approving alternative dispute resolution procedures to resolve, personal injury, employment litigation, or similar claims pursuant to Section 105(a) of the Bankruptcy Code;

N.    to determine such other matters and for such other purposes as may be provided in the Confirmation Order;

O.    to hear and determine matters concerning state, local, or federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code (including any requests for expedited determinations under Section 505(b) of the Bankruptcy Code);

P.    to hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

Q.    to enter a Final Order closing the Chapter 11 Case; and

R.    to hear and determine any rights, claims, or causes of action held by or accruing to Debtor pursuant to the Bankruptcy Code or any applicable federal statute or legal theory.

## SECTION 13.        MISCELLANEOUS PROVISIONS

### 13.1.    Payment of Statutory Fees

All fees payable pursuant to 28 U.S.C. § 1930 and any applicable interest thereon that are due and payable as of the Effective Date shall be paid from Creditor Plan Funding on the Effective Date or as soon thereafter as is reasonably practicable.  All such fees and any applicable interest

thereon that become due and payable after the Effective Date shall be paid when such fees become due and payable. All such fees and any applicable interest thereon shall continue to become due and payable until the entry of a Final Order closing the Chapter 11 Case or conversion or dismissal of the Chapter 11 Case, whichever is earlier.

### 13.2. Substantial Consummation

This Creditor Plan shall be deemed to be substantially consummated within the meaning of Section 1101 and pursuant to Section 1127(b) of the Bankruptcy Code upon the commencement of Effective Date Distributions to be made under this Creditor Plan on the Effective Date.

### 13.3. Operations Between the Confirmation Date and the Effective Date

During the period from the Confirmation Date through and until the Effective Date, the Debtor shall continue to operate as a Debtor in Possession, under the management of the officers and directors of the Reorganized Debtor, subject to the provisions herein and the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.

### 13.4. Amendments

### 13.4.1. Modifications to Creditor Plan and Plan Supplement

This Creditor Plan and/or the Plan Supplement may be amended, modified, or supplemented by the Plan Proponents in the manner provided for by Section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to Section 1125 of the Bankruptcy Code, provided that notice and an opportunity to object shall be provided with respect to any material post-confirmation modifications to this Creditor Plan. In addition, after the Confirmation Date, the Plan Proponents may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Creditor Plan, the Plan Supplement, or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes and effects of this Creditor Plan.

### 13.4.2. Other Amendments

The Plan Proponents may make appropriate technical adjustments and modifications to this Creditor Plan or the Plan Supplement prior to the Effective Date without further order or approval of the Bankruptcy Court.

### 13.5. Revocation or Withdrawal of the Creditor Plan

The Plan Proponents reserve the right to revoke or withdraw this Creditor Plan prior to the Effective Date. If the Plan Proponents take such action, this Creditor Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed to be a waiver or release of any claims by or against the Plan Proponents, Debtor, or any other Person or to prejudice in any manner the rights of the Plan Proponents or any Person in further proceedings involving Debtor.

### 13.6.    Severability

If, prior to the entry of the Confirmation Order, any term or provision of this Creditor Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Creditor Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Creditor Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 13.7.    Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of New York, without giving effect to the principles of conflicts of laws, shall govern the rights, obligations, construction, and implementation of this Creditor Plan and the transactions consummated or to be consummated in connection therewith.

### 13.8.    Time

Bankruptcy Rule 9006 shall apply to all computations of time periods prescribed or allowed by this Creditor Plan, unless otherwise set forth herein or provided by the Bankruptcy Court.

### 13.9.    Binding Effect of Creditor Plan

Upon the occurrence of the Effective Date, the terms of this Creditor Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on the Plan Proponents, Debtor, and any and all Holders of Claims and Interests (irrespective of whether any such Holders of Claims and Interests voted to accept or reject this Creditor Plan or are deemed to accept or reject this Creditor Plan), all Persons or Entities that are parties to or are subject to any settlements, compromises, releases, exculpations, discharges, or injunctions described in this Creditor Plan, each Person or Entity acquiring or retaining property under this Creditor Plan, and any and all non-Debtor parties to executory contracts or unexpired leases with Debtor.

### 13.10.    Entire Agreement

On the Effective Date, this Creditor Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into this Creditor Plan.

### 13.11.  Section 1125(e) Good Faith Compliance

The Plan Proponents and their Related Persons shall be deemed to have acted in good faith under Section 1125(e) of the Bankruptcy Code.

All notices, requests, and demands in the Chapter 11 Case shall be in writing and, unless otherwise provided herein, shall be deemed to have been duly given or made when actually delivered or, if by facsimile transmission, when received and telephonically confirmed to the below recipients:

|  |  |
|---|---|
| If to the Plan Proponents: | Joseph Pack, Esq. |
|  | Pack Law, P.A. |
|  | 51 Northeast 24th Street, Suite 108 |
|  | Miami, Florida 33137 |
|  |  |
|  | *Counsel for Diatomite* |
|  |  |
|  | Avrum J. Rosen, Esq. |
|  | Law Offices of Avrum J. Rosen, PLLC |
|  | 38 New Street |
|  | Huntington, N.Y.  11743 |
|  |  |
|  | *Co-Counsel for the Cipollones* |
|  |  |
| If to Debtor: | Douglas J. Pick, Esq. |
|  | Pick & Zabicki LLP |
|  | 369 Lexington Avenue, 12th Floor |
|  | New York, New York 10017 |

Notice shall be given to the above parties and their successors.  Any Person may change the address to which notices are to be sent for purposes of the Creditor Plan by sending written notice pursuant to this provision to the Plan Proponents.

*[Remainder of Page Intentionally Left Blank]*

Dated: August 31, 2022
      Brooklyn, New York

                    **DIATOMITE CORPORATION**
                    **OF AMERICA**
                    2501 Monument Ave.
                    Richmond, Virginia 23220

By:   *Steven Dohan*
         Steven Dohan
         Co-Trustee for Allan H. Applestein,
         President of Diatomite Corporation of America

By:   *Andrea Bivens*
         Andrea Bivens
         Co-Trustee for Allan H. Applestein,
         President of Diatomite Corporation of America

                    **THE CIPOLLONES**

By:   *Anthony Cipollone*
         Anthony Cipollone

By:   *Domenick Cipollone*
         Domenick Cipollone