**VIRGINIA:**

## IN THE CIRCUIT COURT OF RICHMOND COUNTY

| | | |
|---|---|---|
| MICHAEL ROLBAND, Director of the Department of Environmental Quality, | ) ) ) | |
| and | ) ) | |
| STATE WATER CONTROL BOARD | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: CL18-122 |
| VIRGINIA TRUE CORPORATION, | ) ) | |
| Defendant. | ) | |

## <u>CONSENT DECREE</u>

WHEREAS Plaintiffs Michael Rolband, Director of the Department of Environmental Quality, and the State Water Control Board (collectively, "<u>Plaintiffs</u>") have filed a Complaint in this matter asserting alleged violations of the State Water Control Law, the Virginia Stormwater Management Act, the Virginia Erosion and Sediment Control Law, the Virginia Stormwater Management Program Regulations, the Erosion and Sediment Control Regulations, and the General Virginia Pollutant Discharge Elimination System Permit for Discharges of Stormwater from Construction Activities (collectively, the "<u>Allegations</u>") against Defendant Virginia True Corporation ("<u>Defendant</u>," together with Plaintiffs, the "<u>Parties</u>");

WHEREAS Defendant denies the Allegations and any claims of wrongdoing asserted in the Complaint;

WHEREAS Defendant nonetheless requested, and with Plaintiffs entered into negotiations intended to resolve Plaintiffs' claims and thereby avoid the burden and expense to all Parties of litigation;

WHEREAS as a result of those negotiations the Parties achieved a conceptual framework of a settlement in principle and then negotiated the specific terms of a judicial consent decree in the general form of this Consent Decree;

WHEREAS after certain key terms had been substantially negotiated, Defendant filed a voluntary chapter 11 bankruptcy petition (the "Petition") on May 3, 2019, in the U.S. Bankruptcy Court for the Eastern District of New York, Brooklyn Division (the "Bankruptcy Court"), assigned petition number 1-19-42769-nhl (the "Bankruptcy Case");

WHEREAS the Parties, as evidenced by the signatures that follow, have consented to the entry of this consent decree ("Consent Decree") without trial of any issues;

WHEREAS the Parties acknowledge that the terms of this Consent Decree must be approved by the Bankruptcy Court pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure, and as evidenced by the signatures that follow, the Parties represent that the Parties have received approval by order of the Bankruptcy Court prior to presenting this Consent Decree to this Court for entry; and

WHEREAS the Parties recognize, and this Court finds by entering this Consent Decree, that the Parties have negotiated this Consent Decree in good faith, that implementation of this Consent Decree will avoid prolonged and complicated litigation between the Parties, and that the terms of this Consent Decree are fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, upon the pleadings, without adjudication or admission of any issue of fact or law, and upon consent and agreement of the Parties, it is hereby ORDERED, DECREED, and ADJUDGED as follows:

## I.    DEFINITIONS

Whenever the terms listed below are used in this Consent Decree, the following definitions shall apply:

(a)     "2014 Permit" means the General VPDES Permit for Discharges of Stormwater from Construction Activities (VAR10) for the Permitted Site that was issued on July 1, 2014, expiring on June 30, 2019.

(b)     "Bankruptcy Case" has the meaning set forth in the recitals above.

(c)     "Bankruptcy Court" has the meaning set forth in the recitals above.

(d)     "Board" means the State Water Control Board, as described in Va. Code § 62.1-44.7.

(e)     "Complaint" means the initial pleading filed in the Circuit Court of Richmond County styled *David K. Paylor, Director, Virginia Department of Environmental Quality and State Water Control Board v. Virginia True Corporation*, Case No.: CL 18-122.

(f)     "Construction General Permit" means the 2019 General VPDES Permit for Discharges of Stormwater from Construction Activities (VAR10) for the Permitted Site or any duly adopted amendment to the General VPDES Permit for Discharges of Stormwater from Construction Activities under which Defendant seeks authorization from the Board to discharge to surface waters of the Commonwealth.

(g)     "Court" means the Circuit Court for Richmond County, Virginia.

(h)     "Department" and "DEQ" means the Virginia Department of Environmental Quality, as described in Va. Code § 10.1-1183.

(i)     "Director" means the Director of the Virginia Department of Environmental Quality, as described in Va. Code § 10.1-1185.

(j)     "Environmental Consultant" means the third party consultant who reviews on a quarterly basis the best management practices for the Permitted Site, as described in more detail in Paragraph IV(c) below.  At minimum, the Environmental Consultant must have completed the

3-day "Plan Reviewer for Stormwater Management" course offered by the DEQ and the 2-day "Inspector for Stormwater Management" course offered by the DEQ. Alternatively, the Environmental Consultant may possess equivalent qualifications as approved in writing by the Plaintiffs.

(k)     "Erosion and Sediment Control Plan" means the Virginia True Erosion and Sediment Control Plan dated April 4, 2018, and approved by Richmond County by letter from T. Richard English, Jr. dated April 9, 2018, and any approved modification thereto.

(l)     "Final Stabilization" has the same meaning as defined in 9 VAC 25-880-1.

(m)     "Land Disturbance" or "Land Disturbing Activity" means a man-made change to the land surface on the Permitted Site that potentially changes the runoff characteristics of the Permitted Site, including clearing, grading, or excavation, except that the terms shall not include those exemptions specified in Va. Code § 62.1-44.15:24.

(n)     "Notice of Violation" or "NOV" means a Notice of Alleged Violation under Va. Code § 62.1-44.15.

(o)     "Permitted Site" means the portion of the Property that is subject to the Erosion and Sediment Control Plan and the Stormwater Management Plan.

(p)     "Personnel" means the employees, contractors, and subcontractors performing Land Disturbing Activity, Site Stabilization or implementing the Plans at the Permitted Site.

(q)     "Petition" refers to the voluntary petition filed by Defendant in the Bankruptcy Case, and has the same meaning set forth in the recitals above.

(r)     "Plans" means the Erosion and Sediment Control Plan and the Stormwater Management Plan, whether collectively or separate.

(s)     "PRO" means the Piedmont Regional Office of the DEQ located in Glen Allen,

Virginia.

(t)        "Program Administrator" or "Administrator" means the administrator from the VESCP Authority for the Permitted Site.

(u)        "Property" means the real property located in Richmond County, Virginia, and owned by Virginia True.  The term Property includes but is not limited to real property comprising the Permitted Site.

(v)        "Stabilized" means land has been treated to withstand normal exposure to natural forces without incurring erosion damage.  *See* 9 VAC 25-880-1.

(w)        "State Water Control Law" means Chapter 3.1 (§ 62.1-44.2, *et seq*.) of Title 62.1 of the Virginia Code.

(x)        "State Waters" means all water, on the surface and under the ground, wholly or partially within or bordering the Commonwealth of Virginia or within its jurisdiction, including wetlands.  *See* Va. Code § 62.1-44.3.

(y)        "Stormwater" means precipitation that is discharged across land surface or through conveyances to one or more waterways and that may include stormwater runoff, snow melt runoff, and surface runoff and drainage.  *See* Va. Code § 62.1-44.15:24.

(z)        "Stormwater Compliance Manager" means the individual responsible for coordinating oversight of compliance with the Erosion and Sediment Control Plan, the Stormwater Management Plan, and the Construction General Permit at the Permitted Site, as described in more detail in Paragraph IV(b) below.  At minimum, the Stormwater Compliance Manager shall have completed the 3-day "Plan Reviewer for Stormwater Management" course offered by the DEQ and the 2-day "Inspector for Stormwater Management" course offered by the DEQ.  Alternatively, the Stormwater Compliance Manager may possess equivalent qualifications as approved in writing

by the Plaintiffs.

(aa)    "Stormwater Management Plan" means the Stormwater Management Plan dated May 31, 2018 and approved by the DEQ by letter from Kyle Ivar Winter dated June 21, 2018, which is also referred to as DEQ SWM PRO-18-068, and any approved modification thereto.

(bb)    "Supplemental Environmental Project" or "SEP" has the same meaning set forth in Va. Code § 10.1-1186.2.  The Parties acknowledge and agree that as used herein these terms relate to the pre-Petition enforcement action against Defendant.

(cc)    "VESCP Authority" means Richmond County, the authority approved by the Board to operate a Virginia Erosion and Sediment Control Program for the jurisdiction where the Permitted Site is located.

(dd)    "Virginia Stormwater Management Act" means Article 2.3 (§ 62.1-44.15:24, *et seq.*) of Chapter 3.1 of Title 62.1 of the Virginia Code.

(ee)    "Virginia True" means Defendant Virginia True Corporation, owner of the Property and Permitted Site authorized to conduct business in Virginia pursuant the State Corporation Commission (SCC ID 08166605), and its affiliates, partners and subsidiaries.

(ff)    "VPDES" means the Virginia Pollutant Discharge Elimination System.

(gg)    "VSMP Authority" means the DEQ, which is the authority approved by the Board to operate the Virginia Stormwater Management Program for the jurisdiction where the Permitted Site is located.

(hh)    "VSMP Regulations" mean the Virginia Stormwater Management Program regulations, 9 VAC 25-870-10, *et seq*.

## II.    JURISDICTION AND VENUE

The Parties agree that this Court has jurisdiction over the subject matter herein and over the Parties.  The Parties agree that venue is proper in this Court.  The Parties acknowledge that any

amendments to this Consent Decree may require further approval by the Bankruptcy Court in accordance with Rule 9019 of the Federal Rules of Bankruptcy Procedure if both: (1) Virginia True is the owner of the Property, and (2) the Bankruptcy Case is still pending.

### III.    PARTIES

The obligations of this Consent Decree apply to and are binding upon Plaintiffs and Defendant, and any of their respective successors, assigns, or other entities or persons otherwise bound by law including any entity or person to whom coverage under the Construction General Permit is transferred, until such time as coverage under the Construction General Permit is terminated in accordance with the State Water Control Board's regulations, or such obligation is waived, amended or modified in accordance with this Consent Decree.  Except as otherwise provided here, the Consent Decree shall not create any rights in any party other than the Parties to this Consent Decree.  Any subsequent owner of the Property shall succeed to the Consent Decree and shall as property owner have the right to request waiver, modification or amendment of this Consent Decree.

### IV.    COMPLIANCE PROGRAM

(a)    **Permitted Site Compliance**.  To the extent not previously provided, within thirty (30) days of the entry of this Consent Decree, Defendant will provide confirmation that the Permitted Site is in compliance with the Erosion and Sediment Control Plan, the Stormwater Management Plan, and the Construction General Permit.  Defendant agrees to remain in compliance with the Erosion and Sediment Control Plan, the Stormwater Management Plan, and the Construction General Permit for as long as each such plan or permit remains in effect.  Should the Property be sold and the Construction General Permit be transferred, Defendant shall be released from continuing obligations under this Section IV upon the closing on any sale or other transfer of the Property and on the submission of the Virginia Department of Environmental

Quality General VPDES Permit for Discharges of Stormwater from Construction Activities (VAR10) Transfer of Ownership Agreement 2019, and any purchaser and/or assignee of Defendant will step into Defendant's shoes and shall be bound by Paragraphs IV(a), (b), (c) and (d). The Parties further agree that any purchaser of the Property and any assignees of Defendant shall step into Defendant's shoes with respect to the Erosion and Sediment Control Plan, the Stormwater Management Plan, and the Construction General Permit as of the date of the closing of any sale or transfer of the Property by Defendant.

(b)     **Stormwater Compliance Manager**.  While the Permitted Site is being Stabilized, until Final Stabilization is achieved and approved by the Department, and to the extent any Land Disturbing Activity is taking place on the Property, Defendant, at its expense, will retain a Stormwater Compliance Manager for the duration of this Consent Decree.  To the extent not previously provided, within ninety (90) days of the date of this Consent Decree, Defendant will provide copies of the Stormwater Compliance Manager's relevant certificates of competence identified in 9 VAC 25-850-40 and referenced in the definition above for "Stormwater Compliance Manager."  The Stormwater Compliance Manager will be responsible for coordinating oversight of compliance with the Erosion and Sediment Control Plan, the Stormwater Management Plan, and the Construction General Permit at the Permitted Site.  In addition, for the duration of the Consent Decree, the Stormwater Compliance Manager will conduct periodic meetings with Personnel performing Land-Disturbing Activities, engaged in Stabilization, or plan implementation for the Permitted Site.  These periodic meetings must occur in advance of any new Land Disturbing Activity, at least once per week while any Land Disturbing Activity is taking place, and at least once per month while the Permitted Site is being Stabilized, until Final Stabilization is achieved and approved by the Department.  All periodic meetings will be

documented in the Site Reports described in Paragraph IV(d).

(c)     **Environmental Consultant**.  While the Permitted Site is being Stabilized, until Final Stabilization is achieved and approved by the Department, and to the extent any Land Disturbing Activity is taking place on the Property, Defendant, at its expense will retain a third party Environmental Consultant for the duration of this Consent Decree to review, on a quarterly basis, that the best management practices for the Permitted Site are in accordance with the Erosion and Sediment Control Plan, the Stormwater Management Plan, and the Construction General Permit.  To the extent not previously provided, within ninety (90) days of the date of this Consent Decree, Defendant will provide copies of the Environmental Consultant's relevant certificates of competence identified in 9 VAC 25-850-40 and referenced in the definition above for "Environmental Consultant."   The Parties agree that Defendant, through its Environmental Consultant, has submitted quarterly reports of the Environmental Consultant's review (the "Quarterly Review") for review and approval to the Plaintiffs and the Program Administrator. Quarterly Review reports shall be submitted on or before the first day of each quarter (*e.g.,* January 1, April 1, July 1, and October 1) for the duration of this Consent Decree while any Land Disturbing Activity is taking place, and while the Permitted Site is being Stabilized, until Final Stabilization is achieved and approved by the Department.  Defendant will make the Quarterly Review reports of the Environmental Consultant available on-line for public review at such website address as Defendant may designate.

(d)     **Site Reports**.  While the Permitted Site is being Stabilized, until Final Stabilization is achieved and approved by the Department, Defendant will submit periodic reports for the Permitted Site (the "Site Reports") for the duration of this Consent Decree.  The Site Reports must include: (1) a summary of work performed on the Permitted Site since the previous Report; (2) a

description of work that is anticipated to occur on the Permitted Site for the next reporting period; (3) an update of the current state of Stabilization for the Permitted Site; (4) issues identified at the Permitted Site; and (5) photographs that are representative of the Permitted Site activities, including Stabilization. The Parties agree that Defendant has provided Site Reports and will continue to provide Site Reports to the VSMP Authority and the Program Administrator, through the duration of this Consent Decree until Final Stabilization or until such time as coverage under the Construction General Permit is terminated. Defendant agrees to make the Site Reports available on-line for public review at such website address as Defendant may designate through the duration of this Consent Decree. Defendant will provide the Site Reports weekly, or at less frequent periodic interval if agreed to, in writing, between Virginia True (or its successors and assigns, including any purchasers of the Property) and the VSMP Authority.

## V.   PENALTIES AND PAYMENT OF COSTS

(a)    **Civil Penalty**. Defendant will be assessed a civil penalty to resolve the disputes relating to the pre-Petition enforcement action in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000.00), with such amount being a compromise of the amounts sought by Plaintiffs in the Complaint. Within sixty (60) days after the date of entry of this Consent Decree, Defendant will pay Seventy-Five Thousand and 00/100 Dollars ($75,000.00) to Plaintiffs (the "Cash Portion") in accordance with Paragraph V(b). The Parties agree that Defendant may, but is not required to, satisfy the remainder of the civil penalty through its contribution to the Supplemental Environmental Project (the "SEP Portion") in accordance with Section VI. If Defendant's costs for the SEP Portion are less than One Hundred Twenty-Five Thousand and 00/100 Dollars ($125,000.00), Defendant will supplement its Cash Portion payment in accordance with Paragraph V(b), so that the SEP Portion and the Cash Portion of the civil penalty set forth in this Consent Decree equal or exceed Two Hundred Thousand and 00/100 Dollars ($200,000.00).

(b)      **Method of Payment**.  Any payments made to Plaintiffs pursuant Paragraph V(a), whether with respect to the Cash Portion or the SEP Portion, shall be by check, certified check, money order, or cashier's check payable to the "Treasurer of Virginia," delivered to:

> Receipts Control
> Department of Environmental Quality
> Post Office Box 1104
> Richmond, Virginia 23218

Any payment made pursuant to the terms of this Consent Decree must indicate that the payment is being made in accordance with the requirements of this Consent Decree.

## VI.    SUPPLEMENTAL ENVIRONMENTAL PROJECT

In accordance with Va. Code § 10.1-1186.2, and to resolve disputes relating the pre-Petition enforcement action, Defendant may, but is not required to, coordinate with the Friends of the Rappahannock to implement an oyster reef restoration project in the Rappahannock River.  The location of the reef restoration project shall have a geographic nexus to the Property.  If Defendant opts to make contributions to the SEP, within thirty (30) days of the date of this Consent Decree, Defendant will provide Plaintiffs with a copy of documentation from Friends of the Rappahannock describing the oyster reef restoration project and the Friends of the Rappahannock's intent to accept payments in accordance with the table below to fully or partially fund the oyster reef restoration project (the "SEP Portion Payments").  Administrative costs incurred by Friends of the Rappahannock associated with the project cannot exceed 10% of the SEP Portion Payments.

| Due Date | Amount |
|---|---|
| Within ninety (90) days from date of entry of this Consent Decree | $25,000.00 |
| On or before April 1, 2023 | $25,000.00 |
| On or before July 1, 2023 | $25,000.00 |
| On or before October 1, 2023 | $25,000.00 |
| On or before January 1, 2024 | $25,000.00 |

Defendant will submit proof to Plaintiffs that Defendant made each of the SEP Portion

Payments within ten (10) days of each such SEP Portion Payment, along with a written verification from the Friends of the Rappahannock that the SEP Portion Payments are allocated to the oyster reef restoration project proposed by the Friends of the Rappahannock.

In the event Virginia True publicizes the SEP or SEP results, Virginia True will state in a prominent manner that the SEP is part of a settlement of a pre-Petition enforcement matter. Alternatively, Defendant may remit the entire Civil Penalty to the Treasurer of Virginia, within 60 days of the entry of this Consent Decree, as provided in Paragraph V(b).

To the extent Defendant pays the entire $200,000 civil penalty directly to Plaintiffs, neither Defendant nor its successors shall be required to also make any SEP Portion Payments or otherwise fulfill the provisions of this Section VI.

## VII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

(a)    **Claims Resolved.**  This Consent Decree resolves Plaintiffs' pre-Petition civil claims against Virginia True for the violations alleged in the Complaint, as well as any additional alleged violations documented in the Department's Notices of Violation dated February 15, 2018, April 4, 2018, and August 3, 2018, and the Department's Virginia Water Protection Inspection Report dated November 7, 2018, all in the compromised amounts described hereinabove.

(b)    **Plaintiffs' Reservation of Rights.**  The Parties reserve all legal and equitable remedies to enforce the provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the rights of Plaintiffs to obtain penalties or injunctive relief under any applicable law or regulation including but not limited to the State Water Control Law or its implementing regulations except as expressly stated in Paragraph VII(a).

(c)    **Not a Permit.**  This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local law or regulation.  Virginia True is responsible for achieving and maintaining compliance with all applicable federal, state, and local law, regulation, permits, and

approvals of any kind.  Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to such law, regulations, permits, or approvals, except as stated in Paragraph VII(a) or as otherwise set forth herein.

## VIII.    TERMINATION

This Consent Decree shall remain in effect until: (1) the Construction General Permit is terminated by DEQ pursuant to the State Water Control Board's regulations and (2) Defendant pays the civil penalty as specified in Section V.  Upon termination of the Construction General Permit and payment of the civil penalty, the Plaintiffs shall promptly file a stipulation terminating this Consent Decree with a copy to Defendant and any subsequent owner of the Property.

Termination of this Consent Decree, or any obligation imposed by this Consent Decree, shall not relieve Defendant from its obligation to comply with any statute, regulation, permit condition, plan, order, certificate, certification, standard, or requirement otherwise applicable.

## IX.    GENERAL PROVISIONS

(a)    **Entire Agreement**.  This Consent Decree represents the entire agreement and understanding between the Parties, and supersedes any and all prior oral and written agreements, orders and understandings.  The Parties acknowledge that there are no inducements, promises, representations, agreements, or understandings relating to the subject matter of this Consent Decree other than those expressly contained in this Consent Decree.

(b)    **Headings**.  Headings in this Consent Decree are provided for convenience only and shall not limit, expand, modify or otherwise affect the meaning of any provision of the Consent Decree.

(c)    **Modification**.  No provision of this Consent Decree may be waived, amended or modified in any respect whatsoever, except by written agreement signed by the Parties or their successors.

(d)    **Severability**.  If any provision of this Consent Decree is held to be invalid, void or unenforceable, all other provisions of this Consent Order nevertheless will remain in full force and effect.

(e)    **No Admission of Liability and Reservation of Rights**.  This Consent Decree is entered into by the Parties without any adjudication or finding of violation or liability of Defendant by the Court, Board, Department, Director, PRO, VESCP Authority or VSMP Authority. Defendant, by its consent or otherwise, does not admit fault or liability to Plaintiffs or to any third party/ies.  This Consent Decree is intended by the Parties to constitute a consensual resolution of the Allegations and Complaint without any finding that would form the basis of any enforcement orders or actions against Virginia True.  Except as expressly provided in this Consent Decree, Defendant reserves all defenses and all rights and remedies, legal and equitable, available to it in any action brought by any governmental or quasi-governmental actor.  The execution of this Consent Decree is not an admission of liability by Defendant, nor is it an admission or denial of the factual allegations arising out of the transactions or occurrences alleged in the Complaint or relating to the Allegations.

(f)    **Full Authority**.  The Parties represent, through their signatures below, that they have full authority to enter into this Consent Decree, that they are competent and over the age of majority, and that they have obtained Bankruptcy Court approval of this Consent Decree prior to presenting the Consent Decree to this Court for entry.

(g)    **Final Judgment**.  Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the Parties.

(h)    **Notices**.  Unless otherwise specified herein, whenever written notifications, communications, or submittals are required by this Consent Decree, such notifications,

communications, or submittals shall be made to the individuals specified below, or to such other individuals as may be designated by a Party on written notice to the other Parties:

**As to Plaintiffs**:

Director, Enforcement Division
Virginia Department of Environmental Quality
P.O. Box 1105
Richmond, VA 23218

**As to Defendant:**

Edward Mullen, Esq.
Reed Smith LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1900
Richmond, VA 23219

And

Douglas J. Pick, Esq.
Pick & Zabicki LLP
369 Lexington Avenue, 12th Floor
New York, NY 10017

(i)      **Governing Law**.  This Consent Decree shall be interpreted, enforced and governed in accordance with the laws of the Commonwealth of Virginia, regardless of any conflicts-of-law principles.

Entered: _____ __, 2022

_____
CIRCUIT COURT JUDGE

WE ASK FOR THIS:

_____

Jason S. Miyares
Attorney General of Virginia

Charles H. Slemp, III
Chief Deputy Attorney General

Leslie A.T. Haley
Deputy Attorney General

*Katherine E. Kulbok (VSB No. 90853)
Assistant Attorney General
*Counsel of Record

Office of the Attorney General
202 North 9th Street
Richmond, VA 23219
(804) 225-3643 – telephone
(804) 786-2650 – facsimile
kkulbok@oag.state.va.us
*Counsel for Plaintiffs*

SEEN AND AGREED:

_____

Alison Ross Ellis (VSB No. 75564)
REED SMITH LLP
Riverfront Plaza - West Tower
901 East Byrd Street, Suite 1900
Richmond, VA 23219-4069
Telephone:  (804) 344-3400
Facsimile:  (804) 344-3410
aellis@reedsmith.com
*Counsel for Defendant Virginia True Corporation*